1

2

UNITED STATES DISTRICT COURT

3

NORTHERN DISTRICT OF ILLINOIS

4

5    CONG TAN,

6                              Plaintiff,

7

8                              v.

9    XIANGHUO

10                             Defendant.

11

**DECLARATION OF QIANWU YANG IN SUPPORT OF MOTION TO DISSOLVE TRO**

12

13

14

15

16

17

18

19

20

DECLARATION OF QIANWU YANG
IN SUPPORT OF MOTION TO
DISSOLVE TRO

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

I, Qianwu Yang, declare as follows:

1. I am over the age of 18 and am fully competent to make this Declaration. I am a member of SHM Law Firm and have also been admitted to practice law in China for over 18 years. I am counsel for Defendant Xianghuo. I make this declaration upon personal knowledge and, if called to testify, could and would testify competently to the facts set forth herein.

2. Since at least 2017, U.S. monetary judgments have generally been enforceable in China under the principle of reciprocity, as set forth in Art. 299 of the Civil Procedure Law of the People's Republic of China (as amended in 2023):

> "If, after examination in accordance with international treaties concluded or acceded to by the People's Republic of China, or based on the principle of reciprocity, it is determined that such judgments or rulings do not violate the fundamental principles of the laws of the People's Republic of China and do not harm the sovereignty, security, or public interests of the country, the court shall rule to recognize their validity; and if enforcement is required, the court shall issue an enforcement order and enforce it in accordance with the relevant provisions of this law."

3. On May 1, 2015, the United States District Court for the Nothern District of Illinois, East Division recognized a Chinese judgment, *See Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, No. 12 CV 1851, slip op. at 15-19 (N.D. Ill. May 1, 2015). Attached hereto as Exhibit A is a true and correct copy of the subject judgment along with its machinetranslated version, *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*

DECLARATION OF QIANWU YANG IN
SUPPORT OF MOTION TO DISSOLVE
TRO

1

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

4.      On June 30, 2017, the Wuhan Intermediate People's Court recognized and enforced the U.S. judgment EC062608 issued by the Superior Court of California, County of Los Angeles. Attached hereto as Exhibit B is a true and accurate copy of this judgment along with its machine-translated version, *Liu Li v. Tao Li & Tong Wu*, (2015) E Wuhan Zhong Ji Min Shang Wai Chu No.26.

5.      On September 17, 2018, the Shanghai No.1 Intermediate People's Court recognized and enforced the monetary part of the Judgment No. 12C9931 issued by the United States District Court for the Northern District of Illinois, East Division. *See Nalco Co. v. Chen*, No. 12 C 9931, slip op. at 2 (N.D. Ill. Oct. 20, 2015) ("Final judgment is hereby entered in favor of Nalco in the amount of $2,044,592.27, plus interest at the rate of 9%.") Attached hereto as Exhibit C is a true and accurate copy of this judgment along with its machine-translated version, *Nalco Company LLC v. David Tchen*, (2017) Hu 01 Xie Wai Ren No.16.

6.      On September 23, 2020, the Ningbo Intermediate People's Court recognized and enforced the U.S. Judgement No. 2018177 issued by the Superior Court of California, County of Stanislaus. Attached hereto as Exhibit D is a true and accurate copy of this judgment along with its machine-translated version, *Wen Xiaochuan v. Huang Kefeng & WBV International LLC*, (2018) Zhe 02 Xie Wai Ren.

7.      On March 4, 2022, the Guangzhou Intermediate People's Court recognized and enforced the U.S. Judgement No.CV17-7149-MWF (RAOx) issued by the United

States District Court for the Central District of California. *See Mingan Chen v. Cal. Inv. Immigration Fund, LLC*, No. CV-17-7149-MWF (RAOx), 2018 U.S. Dist. LEXIS 31821 (C.D. Cal. Feb. 27, 2018). Attached hereto as Exhibit E is a true and accurate copy of this judgment along with its machine-translated version, *Jiang Hui et al. v. Fang Zeng*, (2019) Yue 01 Xie Wai Ren 58.

8.     On March 7, 2022, the Guangzhou Intermediate People's Court recognized and enforced the monetary part of the U.S. Judgement No. BC661793 issued by the Superior Court of California, County of Los Angeles. Attached hereto as Exhibit F is a true and accurate copy of this judgment along with its machine-translated version, *Yeqing Xia v. Fang Zeng*, (2019) Yue 01 Xia Wai Ren 22.

9.     On March 4, 2022, the Guangzhou Intermediate People's Court recognized and enforced the U.S. Judgement No.CV-17-08936-MWF (RAOx) issued by the United States District Court for the Central District of California. See *Anqin Wang v. Cal. Inv. Immigration Fund, LLC*, No. CV-17-08936-MWF (RAOx), 2018 U.S. Dist. LEXIS 222294 (C.D. Cal. Apr. 24, 2018). Attached hereto as Exhibit G is a true and accurate copy of this judgment along with its machine-translated version, *Anqin Wang v. Fang Zeng*, (2019) Yue 01 Xie Wai Ren 03.

10.     The cases listed above demonstrate that U.S. monetary judgments have been enforceable in China since at least 2017; however, the list is not exhaustive. This conclusion is further supported by academic research, including William S. Dodge and

Wenliang Zhang, *Reciprocity in China–U.S. Judgments Recognition*, 53 Vanderbilt Journal of Transnational Law 1541 (2021), available at https://scholarship.law.vanderbilt.edu/vjtl/vol53/iss5/2 (last visited July 16, 2025).

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2025.

*/s/Qianwu Yang*

Qianwu Yang

# Exhibit A

*Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GLOBAL MATERIAL TECHNOLOGIES, INC.,

      Plaintiff,

    v.

DAZHENG METAL FIBRE CO. LTD.,
DAZHENG METAL FIBRE CO. LTD. d/b/a
ChuanGuPing a/k/a TRU GROUP, and
DONG JUE MIN,

      Defendants.

No. 12 CV 1851

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Global Material Technologies makes and sells metallic-wool products. Beginning in the 1990s, GMT began to obtain a large portion of its metallic fibers from Dahzeng Metal Fibre Co. (DNZ), a Chinese company. The two companies were initially on good terms and maintained a close business relationship. Eventually, however, the relationship disintegrated, and the parties became embroiled in a series of lawsuits in the United States and abroad.

GMT first sued DNZ in China for breach of contract. Two days later, GMT sued DNZ, as well as DNZ's president and one of its supposed affiliates, in the Middle District of Tennessee. In the Tennessee litigation, GMT claimed that the defendants had, among other things, stolen GMT's trade secrets and violated the United Nations Convention on Contracts for the International Sale of Goods. The Tennessee action was ultimately transferred to the Northern District of Illinois, but

in the interim, the Chinese trial court rendered its judgment on GMT's claims (and DNZ's counterclaims) in China. The Chinese court ordered both parties to pay damages, though GMT was ordered to pay more than DNZ. Each party appealed, but the trial court's ruling was largely affirmed by the Chinese intermediate court.

In the present suit, defendants filed counterclaims seeking recognition and enforcement of the Chinese judgment. Defendants also asserted (in answer to GMT's current complaint) that both of GMT's remaining claims are barred by *res judicata*. Defendants filed a motion for judgment on the pleadings, which GMT opposes. For the reasons discussed below, Defendants' motion is granted in part and denied in part.

## I.    Legal Standard

A motion for judgment on the pleadings may be granted only if there are no material issues of fact and the moving party is entitled to judgment as a matter of law. *See Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987) (citation omitted); *cf. Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993) (citing *Karaganis*, 811 F.2d at 358). All facts must be construed, and all inferences drawn, in the non-movant's favor. *See Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014)). In considering a motion for judgment under Federal Rule of Civil Procedure 12(c), the district court may rely on the pleadings, documents attached to or critical to (and referred to in) the pleadings, or information subject to judicial notice. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012)

(discussing review of motions under Fed. R. Civ. P. 12(b)(6)) (citations omitted); *Lodholtz*, 778 F.3d at 639 (explaining that the same standards govern Rules 12(b)(6) and 12(c)) (citing *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014)).

## II.  Facts

### A.  GMT's Business Relationship with DNZ

GMT is an Illinois-based company that manufactures metallic-wool products. *See* [38] at 1 ¶ 1; *id.* at 2 ¶ 8; [149] at 1 ¶ 1; *id.* at 2 ¶ 8.[1] DNZ, a Chinese company based in Zhuhai, China, supplied GMT with steel fibers from 1996 to 2010. *See* [160] at 1 ¶ 179; *id.* at 2 ¶ 183. For a time, the two companies maintained a close business relationship: GMT's president attended meetings by DNZ's board of directors, and GMT maintained a 25% ownership interest in DNZ. *See* [38] at 3 ¶¶ 12, 17; [149] at 3 ¶¶ 12, 17. Annual transactions between the two companies at one time exceeded one million dollars. *See* [38] at 6 ¶ 32; [160] at 5 ¶ 32. But the relationship eventually soured, and the two parties (who no longer do business together, *see* [38] at 6 ¶ 33; [149] at 5 ¶ 33) became entangled in multiple lawsuits.

---

[1] Citations to the record are designated by the document number as reflected on the district court's docket, enclosed in brackets; referenced page numbers are from the CM/ECF header placed at the top of filings. The facts related in this opinion are taken from the parties' pleadings in this case (and answers thereto), as well as from translations of court documents pertaining to the parties' civil suit in China.

In certain instances, the parties assert that they lack sufficient information to form a belief about the truth of an allegation made by the other party. *See, e.g.*, [149] at 2 ¶ 8 (stating that defendants "lack knowledge or information sufficient to form a belief as to the truth of [plaintiff's] allegations" concerning GMT's purported manufacture of metallic-wool products). Although such responses generally have the legal effect of a denial, *see* Fed. R. Civ. P. 8(b)(5), I assume, for the limited purpose of relating background information immaterial to the resolution of the current motion, that these allegations are true.

## B.    GMT's Suit in China

On February 26, 2011, GMT sued DNZ in the Zhuhai People's Court of Guangdong Province, China. *See* [160] at 4 ¶ 190; *see also* GMT's "Civil Complaint" (as translated), [172-2] at 8–15. In its Chinese complaint, GMT brought against DNZ a series of contract-based claims, alleging that DNZ had violated the parties' agreement by shipping to GMT (or its customers) products suffering from severe quality issues, products that otherwise did not conform to GMT's specific purchase orders, and products that GMT simply had not ordered at all.

### 1.    The Parties' Claims in China

According to GMT, in June 2008 DNZ began to send steel-wool shipments that contained rusted fibers. *See* [172-2] at 10. The problematic shipments stemmed from the same invoice (No. RJCT0), *see id.* at 9, and triggered a series of back-and-forth communications between the two companies, *see id.* at 10—resulting, said GMT, in DNZ's agreement to: (1) pay the cost of sorting the rusty fibers from the usable ones; (2) accept the return of the rusted product; and (3) reimburse GMT for the shipment of said product back to DNZ (and all other related costs or expenses), *see id.* GMT did inspect all 752,000 pounds or so of the RJCT0 shipments, identified and separated out 268,568 pounds supposedly damaged by rust, and returned the latter (at GMT's own expense) to DNZ in China. *See id.* But DNZ never refunded GMT for the returned product, and never reimbursed GMT for any of its sorting- or shipping-related costs. *See id.*

4

Meanwhile, claimed GMT, DNZ had begun to disregard GMT's purchase orders completely, shipping to GMT large quantities of products that did not meet GMT's specifications (and about which customers had started to complain). *See id.* at 13. An inspection by GMT revealed that, of the 13,170 pounds sent to GMT under invoice No. 1192011—whose shipments spanned from April to October 2008—only 1,975 of them (approximately 15%) actually met GMT's requirements. *See id.* Similar issues resurfaced in July 2010, when GMT discovered more non-conforming goods in shipments related to a different invoice (No. 1172011). *See id.* at 11. One month later, one of GMT's customers found rust in yet another of DNZ's shipments (invoice No. 1172011-2). *See id.* According to GMT, DNZ admitted the presence of rust in the latter shipment, and admitted the non-conformity of certain goods (as to invoice No. 1172011), but refused to reimburse GMT for any of the products or to accept their return. *See id.* at 11–13.

GMT sued DNZ in China, requesting compensatory damages for DNZ's alleged breaches of contract, as well as an injunction requiring DNZ to accept the return of the faulty or non-conforming goods still in GMT's possession. *See id.* at 8. DNZ, for its part, denied any wrongdoing and alleged that GMT had fabricated the "quality" issues as a scheme to avoid paying DNZ for its shipments. *See* Civil Judgment of The People's Court of Jinwan District, Zhuhai City, Guangdong Province, The People's Republic of China (as translated), [172-3] at 29. According to DNZ, it was GMT—not DNZ—who had breached the parties' contract: first by amassing over nine hundred thousand dollars' worth of unpaid balances, and next

5

by failing for several years to purchase quantities at or above the agreed annual minimum. *See id.* at 30. DNZ filed corresponding counterclaims, requesting that GMT be ordered to pay: (1) its outstanding balance of $996,503.77; (2) 15% of the value of all purchase-quantity deficiencies (as allegedly required by the contract); and (3) various related damages. *See id.* at 30–31.

### 2. *The Trial Court's Judgment*

On September 8, 2011, the Chinese court of first instance (for simplicity, the "trial court") held a public hearing before a three-judge panel. *See* [160] at 5 ¶ 196; [172-3] at 26, 38. Both parties were represented by counsel. *See* [172-3] at 26. The court considered the parties' arguments and evidence, and issued its ruling on March 9, 2012. *See generally* [172-3] (as translated).

After determining that Chinese law applied to the parties' breach-of-contract claims, *see id.* at 33, the trial court granted in part and denied in part GMT's request for damages for the allegedly-rusty product shipments in invoice No. RJCT0. The court first concluded that GMT had not met its burden of proof as far as demonstrating that the products were in fact rusted, since: (1) the e-mail messages in which DNZ had allegedly admitted to the existence of the rust did not actually show any such admission; (2) a customs inspection by Chinese officials (performed when GMT returned, by DNZ's agreement, the supposedly faulty goods) failed to show that there was any rust; and (3) GMT submitted no independent proof of rust, such as testing or inspection results from a third party. *See id.* at 34. But GMT was not entirely out of luck, as DNZ had agreed to accept the return of

the RJCT0 products—indeed, DNZ had taken back the supposedly-rusty goods, and had managed to resell them to another buyer. *See id.* The court determined that DNZ therefore should refund GMT for that batch of product (valued at $154,494), and should reimburse GMT for the cost of shipping those goods back to DNZ (an additional $52,475). But because there was no actual proof of rust, the court ruled that DNZ was not liable for any other costs incurred by GMT in inspecting, sorting, or repackaging those shipments. *See id.*

As to GMT's claims concerning shipments under other invoices (Nos. 1192011, 1172011, and 1172011-2, as discussed above), the trial court again rejected GMT's argument that there had been any quality issues with those shipments. Once again, GMT's evidence failed to show any admission by DNZ that such issues in fact existed, and without any third-party test results demonstrating that there was indeed a problem, GMT had not met its burden of proof. *See id.* The court was similarly unpersuaded by GMT's contention that DNZ was liable for shipping goods that did not conform exactly to GMT's purchase orders. DNZ was off the hook for that one, said the court, because GMT had in the past accepted extra-order goods from DNZ. *See id.* at 35. Moreover, the parties had agreed to a maximum quantity of goods to be delivered by DNZ each year, and DNZ's total shipments to GMT were far below this upper limit. *See id.*

Turning to DNZ's counterclaims (which sought payment of GMT's allegedly outstanding balance of $996,503, as well as 15% of the value of GMT's supposed purchase-quantity shortfalls), the trial court again found in DNZ's favor. The court

7

first determined that DNZ had proven that it had, as claimed, shipped goods to GMT totaling $12,097,677.34 in value. *See id.* Since the contract called for delivery of purchased goods on an "FOB" basis,[2] DNZ, as the seller, was responsible for addressing export-related requirements. *See id.* In order to clear the goods for export, DNZ would have had to file with the Chinese customs office a myriad of documents, including contracts, invoices, or other papers identifying the type, quantity, and price (unit and total) of the goods to be shipped. *See id.* The customs office would verify this information—which, if the goods were cleared for export, would also appear on the customs-declaration form issued by that office. *See id.* Several copies of the form are typically made, of which one may be used to file a claim for an export-tax rebate. *See id.*

In the case before the Chinese trial court, DNZ submitted as proof of its shipments to GMT (and of the value thereof) copies of GMT's official customs-declaration forms as issued by the Chinese customs bureau, as well as invoices used by DNZ to claim export-tax rebates. *See id.* The tax invoices included not only the quantity and price of the exported goods (which matched the figures shown on the customs declarations), but the relevant contract number and name of the

---

[2] "FOB" (or "F.O.B.") stands for "free on board," which refers to a mechanism of contracting that allocates delivery-related rights and duties between the buyer and seller of goods. *See* Black's Law Dictionary 781 (10th ed. 2014). Typically, free-on-board provisions require that the seller take responsibility (and bear corresponding risks) for delivering the goods only to the transporter, who is selected and arranged for by the buyer. The seller's delivery obligations end when the goods are delivered into the transporter's possession, at which point the buyer takes over any risk of loss, as well as any shipping or transportation costs. *See id.* If the goods must be exported, clearance for export is the seller's responsibility. *See id.* The Chinese trial court's explanation of the doctrine confirms that "F.O.B." in China means the same as it does in the United States. *See* [172-3] at 35.

"consignee" (*i.e.*, buyer): GMT. Thus, said the court, the tax invoices proved that GMT was the recipient of the exported goods declared in the customs forms, and the one set of forms corroborated the other in proving that DNZ had indeed shipped to GMT goods in the amount (and value) DNZ had claimed. *See id.*[3] Since those documents indicated that DNZ had supplied to GMT goods totaling $12,097,677.34 in value, GMT was liable for that amount—that is, to the extent it could not prove that it had already paid for what it had received. But the court found that GMT did not know, and could not prove, how much it had already paid. *See id.* at 35–36.

As evidence that GMT had paid most of the twelve-million-dollar balance, GMT pointed to foreign-exchange collection forms ("Form for Collection, Verification and Settlement of Export Proceeds in Foreign Exchange") submitted by DNZ. *See id.* at 36. Some of those forms proved payment, said GMT, because the word "settled" appeared on those documents. *See id.* But the trial court was unpersuaded by this evidence because, according to DNZ, the "settlement" notations reflected not GMT's proper payment, but a strategy by DNZ to avoid paying additional taxes in light of GMT's delinquency. *See id.* If foreign-exchange payments were not collected within a certain period of time, exported goods would be taxed as though they had been sold domestically (*i.e.*, at a higher rate). *See id.* To avoid the additional tax burden, DNZ claimed that it applied *other* payments to the otherwise-unsettled transactions with GMT, such that the overdue payments in question were still, in

---

[3] There were also foreign-exchange settlement receipts, which showed that GMT had paid for, and DNZ had collected payment for, at least some of the goods. *See* [172-3] at 35.

fact, outstanding. *See id.* In light of DNZ's explanation, and without any evidence from GMT that it had already paid for the twelve million dollars' worth of goods it had received, the court found that GMT was liable to DNZ for any outstanding balance. As DNZ admitted that GMT had already paid $11,101,173.57 toward the relevant shipments, the court held that GMT was liable only for the remainder ($966,503.77). *See id.* at 35–36.

But with GMT's delay in payment came additional losses for DNZ. Lost interest on the payments, for one, as well as losses related to fluctuations in the exchange rate between U.S. and Chinese currencies. *See id.* at 36. Additional taxes were imposed on some of the sales, too (since, as discussed above, delays in collecting foreign payments can and did result in exported goods being taxed at the higher domestic rate). Because these losses were caused by GMT's delay, the court found GMT liable for these additional damages, as well. *See id.* at 36–37.

As for DNZ's second counterclaim—that GMT should be liable for 15% of the value of any purchase-quantity shortfalls—the court found for GMT. The trial court determined that over the course of the parties' business relationship, GMT had often failed to order the minimum annual quantities as set forth in the contract, but DNZ had nonetheless continued to supply goods under that agreement, without objection. *See id.* at 37. Thus, the court concluded, it could be inferred from the parties' behavior that they had tacitly agreed to modify the terms of the contract. GMT, as a result, was not liable for "insufficient" purchasing. *See id.*

10

### 3. *The Appeal in China*

The judgment of the Chinese trial court was entered on March 9, 2012. *See* [160] at 5 ¶ 194. Each party filed an appeal with the Intermediate People's Court of Zhuhai City. *See id.* at 9 ¶ 207; *see also* "Notification of Case Acceptance," Intermediate People's Court of Zhuhai City (as translated), [172-4] at 3. Among other things, GMT was unhappy with the ruling that it must pay $966,503.77 in outstanding balances (and related damages), and asked the intermediate court to vacate certain portions of the lower court's order. *See* Civil Judgment of The Intermediate People's Court of Zhuhai City, Guangdong Province (as translated), [172-5] at 41. DNZ was dissatisfied with the part of the order denying damages for GMT's alleged purchase-order shortfalls, and asked on appeal that that decision be set aside. *See id.* at 47.

The court of appeals agreed in large part with the trial court, affirming the majority of the latter's conclusions. *See generally* [172-5]. The intermediate court did make one adjustment, however. In the proceeding below, the trial court had held GMT liable for damages related to the approximate $966,500 in payments delinquent under the contract. These related damages included lost interest and damages from variations in the currency-exchange rate. On appeal, GMT argued that even if it were liable for such damages (though it claimed it was not), the trial court had calculated them incorrectly. *See id.* at 43. Whereas the parties' contract called for GMT's payment within 90 days of any bill of lading, the lower court had relied on DNZ's list of overdue payments, and some of those payment periods were

11

listed as being fewer than 90 days. *See id.* (In defense of its original submissions—and of the trial court's calculations as based on those submissions—DNZ argued that the "pay by" requirement had been orally altered by the parties, first to 60 days, then to 45. *See id.* at 51.)

The court of appeals concluded that GMT was liable for the related damages, but agreed that they had been calculated incorrectly. The parties' written agreement had provided that all payments should be made within 90 days; and although DNZ argued that the written contract had been modified by oral agreement, the intermediate court rejected this argument because DNZ had offered no proof in support. *See id.* at 52. The lower court's reliance on DNZ's representations of shorter payment periods was therefore improper, and an adjustment down required. *See id.*

### C. GMT's Lawsuit in the United States

On February 28, 2011 (two days after GMT filed its claim in China), GMT sued DNZ in the United States District Court for the Middle District of Tennessee. *See* [1]. Also named as defendants in the United States action were Tru Group, an alleged subsidiary of DNZ, and Dong Jue Min, DNZ's president. *See id.* at 3 ¶ 16; *id.* at 4 ¶ 30. On defendants' motion, the action was transferred from Tennessee to the Northern District of Illinois. *See* [67] (ordering transfer under 28 U.S.C. § 1404(a)).

In its U.S. complaint (amended before transfer, *see* [38]), GMT again included allegations that DNZ had shipped to GMT rusted products, products suffering from other (unspecified) quality problems, and products that failed to conform to GMT's

12

purchase orders and requirements. *See id.* at 12–15. But GMT also alleged other actions by DNZ concerning the use of GMT's confidential information. The two companies, GMT alleged, originally had a close working relationship, *see id.* at 3 ¶ 15; and when times were good, GMT shared with DNZ (through DNZ's directors and shareholders, including Dong Jue Min) a great deal about the former's business approach—among other things, its pricing strategies, customer list, customer-specific product specifications, and internal operating procedures. *See id.* at 3–4 ¶¶ 18–19. GMT admitted that it had supplied this information voluntarily, but with the explicit understanding that DNZ would neither communicate the information to third parties nor use it to GMT's detriment. *See id.* at 6 ¶ 26. But, according to GMT, that is precisely what DNZ did. GMT claimed that through its subsidiary, Tru Group (and possibly other such companies), DNZ contacted GMT's current and prospective customers, and offered them a pricing scheme derived from GMT's own confidential pricing structure. *See id.* at 4 ¶ 19; *id.* at 8–9 ¶ 45.

GMT brought as part of its domestic action four claims against defendants DNZ, Tru Group, and Dong Jue Min: (1) intentional interference with business relations; (2) violation of the Uniform Trade Secrets Act;[4] (3) civil conspiracy; and (4) violation of the United Nations Convention on Contracts for the International Sale of Goods (CISG). *See id.* at 16–19. The interference and conspiracy claims were

---

[4] Both Tennessee and Illinois have enacted versions of the Uniform Act. *See* TENN. CODE ANN. § 47-25-1701 *et seq.*; 765 ILL. COMP. STAT. 1065/1 *et seq.*

dismissed in a ruling by Judge Dow. *See* [136] at 16–17. The trade-secrets and CISG claims remain pending.

Defendants filed two counterclaims, seeking recognition of the Chinese judgment (as entered by the intermediate court in Zhuhai) under the Illinois Uniform Foreign-Country Money Judgments Recognition Act, and enforcement of that judgment in the United States. *See* [149] at 24–27. In their answer to GMT's complaint, defendants also asserted that both of GMT's remaining claims are precluded by *res judicata*. *See id.* at 20 ¶¶ 170–174. Defendants move for judgment on the pleadings as to their counterclaims, as well as to their affirmative defense of claim preclusion. *See generally* [163], [163-1].

## III. Analysis

### A. Judicial Notice of the Chinese Judgment

District courts may take judicial notice of a foreign judgment. *See Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 696 (7th Cir. 2009) (citing *Hilton v. Guyot*, 159 U.S. 113, 205–06 (1895); *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 411–12 (6th Cir. 2006); *United States v. Garland*, 991 F.2d 328, 332–34 (6th Cir. 1993)). The significance of a foreign judgment, however, depends on its meaning; thus, an accurate translation is also required. *See id.*; *see also* Fed. R. Civ. P. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Attached to defendants' counterclaims here were original-language copies of several documents related to

14

the proceedings in China—the complaint, the judgments of the Chinese trial and appellate courts, and the intermediate court's acceptance of appeal—and English translations of the same. *See* [149] at 22–23 ¶¶ 190, 195; *id.* at 24 ¶¶ 199, 201; *see also* [149-2] (complaint); [149-3] (trial-court judgment); [149-4] (acceptance of appeal); [149-5] (intermediate-court judgment). Although GMT initially contested the authenticity of the translations, defendants later filed re-translations to which GMT does not object. *See* Transcript of March 12, 2015 Proceedings, [200] at 4. I therefore take judicial notice of the Chinese proceedings and judgment, as related in the revised translations. *See* [172-2] at 8–14; [172-3] at 26–38; [172-4] at 3; [172-5] at 35–54.

### B.   Recognition and Enforcement of the Chinese Judgment

Defendants seek recognition and enforcement of the Chinese intermediate court's judgment under the Illinois Uniform Foreign-Country Money Judgments Recognition Act. *See* [163-1] at 7; [181] at 12. The Recognition Act permits, as its title implies, recognition of a judgment rendered by a "foreign country,"[5] where the judgment: (1) grants or denies recovery of a sum of money; and (2) is final, conclusive, and enforceable under the law of that foreign country. *See* 735 ILCS 5/12-663(a). It is the burden of the party seeking recognition—here, defendants—to establish that the Act applies. *See id.* at 5/12-663(c). If entitled to recognition, the

---

[5] The Act defines "foreign country" as a government other than: the United States; a state, district, commonwealth, territory, or insular possession of the United States; or any government whose decisions are otherwise entitled to full faith and credit under the United States Constitution. *See* 735 ILCS 5/12-662. China is a foreign country as defined by the Act.

15

foreign-country judgment is conclusive between the parties to the same extent as would be a judgment rendered by another state entitled to full faith and credit, and it is enforceable to the same extent as would be a judgment rendered in Illinois. *See id.* at 5/12-667. A request for recognition may be raised as a counterclaim in a pending suit, as defendants have done here. *See id.* at 5/12-666(b).

In the Chinese action, the trial court both granted and denied recovery by the litigants of various sums of money. DNZ was ordered to reimburse GMT for certain expenditures (related to the RJCT0 shipments), while GMT was ordered to pay some $966,000 in outstanding balances, as well as related damages. So the first requirement for recognition is satisfied. The second requirement for recognition— that the foreign judgment be final and enforceable under the laws of the foreign country—is also met. GMT agrees that the judgment of the Chinese intermediate court is final and enforceable in China, as it cannot be appealed there. *See* [160] at 9 ¶ 208. Thus, the Chinese judgment is presumptively entitled to recognition under the Act.

The Recognition Act provides that a foreign judgment meeting the above two criteria "shall" be recognized unless: (1) the foreign court did not have jurisdiction (personal or subject-matter), *see* 735 ILCS 5/12-664(b)(2)–(3); or (2) the foreign judicial system under which the judgment was rendered does not generally provide impartial tribunals or "procedures compatible with the requirements of due process," *id.* at 5/12-664(b)(1). As used in the Act, "compatible with due process" means "fundamentally fair" or adhering to principles of basic fairness. *See Society of*

16

*Lloyd's v. Ashenden*, 233 F.3d 473, 477 (7th Cir. 2000) (citations omitted); *see also id.* (distinguishing the "international concept of due process" from its American counterpart). If either element is present, the domestic court cannot recognize the foreign judgment. *See* 735 ILCS 5/12-664(b). If, however, neither of these elements is present, the domestic court must recognize the foreign judgment unless it is shown that the specific proceeding at issue was otherwise problematic for one or more reasons as set forth in the Act—for example, the proceeding was incompatible with due process (*i.e.*, it was fundamentally unfair), *see id.* at 5/12-664(c)(8); *Ashenden*, 233 F.3d at 477; the judgment, or cause of action on which it was based, was repugnant to United States public policy or the public policy of Illinois, *see* 735 ILCS 5/12-664(c)(3); or the judgment was rendered "in circumstances that raise substantial doubt about the integrity of the rendering court" as to that judgment, *id.* at 5/12-664(c)(7). If any such reason is shown, the court may in its discretion decline to recognize the judgment; but non-recognition is not compelled. *See id.* at 5/12-664(c) (stating that the court "need not" recognize the foreign-country judgment). It is the burden of the party opposing recognition—here, GMT—to show that a ground for non-recognition exists. *See id.* at 5/12-664(d).

GMT has not raised any issues that would compel non-recognition of the Chinese judgment in this case. GMT admits in its answer to DNZ's counterclaim that the Chinese court had both personal and subject-matter jurisdiction. *See* [160] at 10 ¶ 209. And GMT does not allege that the Chinese judicial system as a whole is biased and incompatible with principles of basic fairness. Non-recognition,

17

therefore, is not mandatory. *See* 735 ILCS 5/12-664(b). The court may nonetheless decline to recognize the foreign judgment (under Section 664(c)) if GMT can show that the particular proceeding at issue was problematic. This is the argument on which GMT hangs its hat: the Chinese judgment should not be recognized, says GMT, because the foreign proceedings in this instance were not fair or impartial, and the rendering court's integrity in this case was suspect. *See* [160] at 5–7 ¶¶ 194, 196, 200; *id.* at 9–11 ¶¶ 208–12; *id.* at 13–14 ¶¶ 217–19. GMT contends that the fairness (or not) of the Chinese proceedings is a question of fact that cannot be resolved on the pleadings, so judgment cannot be awarded to DNZ at this stage of the litigation. *See* [167] at 11; [175] at 2–3, 7–10. The determination of whether a particular proceeding was fair does involve certain considerations that are best treated as factual matters. *Gabbanelli*, 575 F.3d at 697 (citations omitted). I do not address any such factual issues here.

At bottom, what GMT seeks is an examination by a United States court of how exactly the Chinese court approached GMT's lawsuit abroad—and whether, with respect to certain aspects of that approach, the proceedings were fair enough to GMT. This kind of "retail" inspection is generally disfavored, as it frustrates the very purpose of the Recognition Act: to provide "a streamlined, expeditious method for collecting money judgments rendered by courts in other jurisdictions." *Ashenden*, 233 F.3d at 477; *see also id.* ("The process of collecting a judgment is not meant to require a second lawsuit . . . ." (citing *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill.2d 307, 533 N.E.2d 1080, 1083 (1989); *Resolution Trust Corp. v. Ruggiero*, 994 F.2d

18

1221, 1226 (7th Cir. 1993))). A retail approach is especially inappropriate where, as here, the party now opposing recognition is the same party who filed suit abroad—and the same party who, had they won in the foreign proceeding, would have tried to enforce that judgment in the United States, *see* Transcript of March 12, 2015 Proceedings, [200] at 9. Recall, too, that GMT did not come away from the proceedings in China empty-handed. GMT won in the Chinese trial court a judgment for more than $200,000. And, besides affirming that judgment, the court of appeals modified DNZ's judgment against GMT—in GMT's favor. This is not a situation in which the prior proceeding was so obviously biased or unfair that a dissection of the kind sought by GMT is warranted. The Recognition Act is based on the principle of international comity, which reflects a general respect for the decisions of foreign judiciaries, *see, e.g.*, *United States v. Kashamu*, 656 F.3d 679, 683 (7th Cir. 2011). It was not meant as a tool for gaining second chances at a (more) favorable judgment. Thus, the focus in this instance ought not to rest on the details of the individual proceeding in China, and nor does the statute require such parsing. The focus, rather, should be on the procedures afforded by the Chinese judicial system as a whole.

But as noted above, GMT has not alleged that the Chinese judicial system in general provides biased courts or unfair procedures. Indeed, that GMT would have tried to enforce a more favorable Chinese judgment, had it obtained one, merely confirms that GMT has no creditable objection to how judicial proceedings are usually conducted in China. Even if GMT had pleaded systemic defects, whether a

particular judicial system is fundamentally biased or unfair is not a question of fact; it is a question "about the law of a foreign nation"—and so, in answering this question, the district court may consult "any relevant material or source." *Ashenden*, 233 F.3d at 477 (citing Fed. R. Civ. P. 44.1; *Pittway Corp. v. United States*, 88 F.3d 501, 504 (7th Cir. 1996); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2446 (1995)). Although given an opportunity to do so, *see* Transcript of September 18, 2014 Proceedings, [178] at 7—and although it is GMT's burden to identify any grounds for non-recognition, *see* 735 ILCS 5/12-664(d)—GMT has not provided any materials suggesting that the Chinese judicial system is problematic in such a way as to preclude recognition of (that is, to mandate *non*-recognition of) the foreign judgment in this case.

Accordingly, the judgment of the Chinese intermediate court is enforceable under the Recognition Act. Defendants' motion for recognition and enforcement of the judgment of the Chinese intermediate court is therefore granted.

## C. Claim Preclusion

If entitled to recognition under the Act, a foreign judgment is conclusive between the parties to the same extent as would be a judgment rendered by a state entitled to full faith and credit. *See* 735 ILCS 5/12-667(1). Under Article IV of the United States Constitution, Illinois must give to the judgment of a sister state the same preclusive or *res judicata* effect that the issuing court would give it. *See Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 193 Ill.2d 560, 565 (2000) (citing *Durfee v. Duke*, 375 U.S. 106, 109 (1963); *Hays v. La. Dock Co.*, 117 Ill.App.3d 512,

20

517 (1983); *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guaranty Ass'n*, 455 U.S. 691 (1982)). So the question here is, what preclusive effect would Chinese law give to the judgment of the Chinese intermediate court? *Cf. Kashamu*, 656 F.3d at 683 (noting that, under principles of international comity, United States courts should apply the foreign court's concept of collateral estoppel in deciding what weight to give that court's ruling).[6]

Defendants contend that Chinese principles of *res judicata* bar GMT from proceeding with either of its remaining claims. *See* [163-1] at 8–9. To support their argument, defendants rely on the declaration of Jacques deLisle, a law professor and director of the Center for East Asian Studies at the University of Pennsylvania, *see id.*; Declaration of Jacques deLisle, [163-2] at 2 ¶ 1. Since the question of whether Chinese *res judicata* operates to preclude GMT's claims is a question of foreign law, Rule 44.1 of the Federal Rules of Civil Procedure permits consideration of Mr. deLisle's statements. *See Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 628 (7th Cir. 2010) (citing Fed. R. Civ. P. 44.1). However, as expert declarations may sometimes "add[] an adversary's spin," *see id.* at 629, I also consider whether, and to what extent, the materials on which deLisle relies in fact support his assertions.

---

[6] Defendants also contend that federal and Illinois claim-preclusion standards bar GMT's claims in this case. *See* [163-1] at 9–15 (discussing the elements of federal claim preclusion); [181] at 20 (discussing claim-preclusion doctrine in Illinois). Neither is relevant here. As explained above, the operative question is whether and to what extent the law in China would give preclusive effect to the judgment rendered there. That Chinese principles of *res judicata* may share certain similarities with those employed domestically, as defendants urge, does not convert the governing standard to an American one. It is Chinese claim-preclusion law that matters here.

21

According to Mr. deLisle, the Civil Procedure Law in China provides that Chinese courts will not accept a new lawsuit if the suit is filed when a judgment has already become legally effective in the same case. *See* [163-2] at 5–6 ¶ 12 (citing Civil Procedure Law art. 111(5) (2007), as amended art. 124(5) (2012)). A new suit is "the same case" as a prior case, says deLisle, if it arises from the same facts or underlying dispute. *See id.* at 6 ¶ 14. The case law supports this contention—at least with respect to disputes arising from the same set of facts. In *EOS Engineering Corp. v. Xinjiang Electricity Production Co.*, 2004 SUP. PEOPLE'S CT. GAZ. 10 (Sup. People's Ct. 2003), for example, the Supreme People's Court of China (China's highest court, *see* [163-2] at 6) precluded a party from filing a second tort action against the same defendant because both suits were based on the same facts, *see* [172-12] at 3.[7] It made no difference that the causes of action differed slightly; the suits were based on the same facts, and were against the same defendants—and so, under Article 111(5), the plaintiff's only recourse was to appeal the existing judgment or petition for a retrial. *See id.*; *see also Fenghua Buyun Co. v. Shanghai Worldbest Co.*, 2006 SUP. PEOPLE'S CT. GAZ. 6 (Sup. People's Ct. 2005), [172-13] at 4 (enforcing the same rule against re-litigating the same matter, where "the same matter" means that the "essence of [the two] claims" is the same).[8]

---

[7] The publicly-available version of this opinion includes an English translation. *See generally* [172-12].

[8] The publicly-available version of this opinion includes an English translation. *See generally* [172-13].

The CISG claim stems from the same set of facts as GMT's breach-of-contract claim in China. In the Chinese action, GMT alleged that DNZ was liable for shipping to GMT (or its customers) rusted goods and goods sent in disregard of—or otherwise not in conformance with—GMT's purchase orders. This is precisely what GMT alleges here in support of its CISG claim. *See* [38] at 12–14, 18–19. True, the causes of action are not identical. GMT's action in China claimed breach of contract, its suit here a contravention of an international treaty on the sale of goods. But the underlying facts overlap almost entirely, and the essence of the two claims is decidedly the same.

The parties, however, are somewhat different. In China, GMT sued only DNZ, while here, GMT sues not only DNZ, but also its president (Dong Jue Min) and subsidiary (Tru Group). Is the CISG claim still barred? In *Eos Engineering*, for example, the Chinese Supreme Court stated that retrial was precluded on the "same facts *and defendants*." [172-12] at 3 (emphasis added). But other authority suggests that the parties need not be identical for *res judicata* to prevent the second suit. In *Beijing Golden Holiday Travel Agency Co., Ltd. v. Ctrip Computer Technology (Shanghai) Co., Ltd. et al* (Sup. People's Ct. 2007), the Supreme Court of China confronted a case in which the plaintiff had sued the same defendant twice, for essentially the same behavior (false advertising). *See* [172-15] at 15 (as translated).[9] But in addition to the original defendant, "Ctrip" or "Ctrip Computer,"

---

[9] The publicly-available version of this opinion does not include an English translation. *See* [172-15] at 2–8. Defendants have provided a translation prepared by an independent interpretation service, *see* 172 at 2 n. 4; [172-15] at 9–17, to which GMT does not object.

the second suit had also named as defendants several other businesses, *see id.*; *see also id.* at 9–10 ("Ctrip Commerce," "Beijing Ctrip," and Hebei Comfort International Airline Services Co., Ltd.). Despite the added parties, the court confirmed that the second suit could not proceed because the original defendant— Ctrip—was still a party, and Ctrip was the one supposedly responsible for the alleged misconduct. *See id.* at 15.

The situation here is not dissimilar. GMT sued only DNZ in China, and now adds in its United States litigation additional defendants. But the allegations underlying the CISG claim—which, as discussed above, is essentially the same as the breach-of-contract claim filed abroad—concern only DNZ's conduct. *See* [38] at 12–14 (discussing only DNZ, not Tru Group or Dong Jue Min, in connection with the purported shipment of rusted, non-conforming, and unordered goods). DNZ appears as a defendant in both actions, and DNZ is the party allegedly responsible for the misconduct at issue in both claims. GMT is therefore barred under the Chinese concept of claim preclusion from proceeding with its CISG claim.

Defendants assert that GMT is likewise barred from bringing its trade-secrets claim in the current suit, because GMT cannot "split" this claim from its contract claim and file suit on each one independently. Both claims arise from facts surrounding the parties' business relationship, say defendants, so if GMT wanted to sue defendants for misappropriation of trade secrets, GMT was obligated to bring that claim with its contract claim in China. *See* [163-1] at 11–13. But defendants' argument rests solely on domestic principles of claim preclusion. *See id.* Defendants

have not established, as is their burden, that Chinese law would prevent GMT from bringing its trade-secrets claim at a later time.

According to Mr. deLisle, Chinese law recognizes a cause of action for misappropriation of trade secrets that is similar to the cause of action available in the United States. *See* [163-2] at 11–12 ¶ 24. And, says deLisle, Chinese law also rejects efforts at claim-splitting—that is, plaintiffs are generally precluded from litigating not only those claims that have already been raised and adjudicated in an earlier action, but also any claims that *could* have been raised in the earlier suit. *See id.* at 9 ¶ 20 (citing Interpretation of the Supreme People's Court on Problems regarding the Ascertainment of Compensation Liability for Emotional Damages in Civil Torts (Sup. People's Ct. 2001), art. 6, [172-10]). But the authority on which Mr. deLisle relies does not adequately support the proposition that Chinese law in general forbids claim-splitting, or, if it does, what the boundaries of the rule actually are. The cited material, a judicial proclamation by the Supreme Court of China, states only that "[t]he people's court shall not accept cases . . . claiming emotional damages based on facts relating to a previous lawsuit" where the party did not claim such damages in the earlier suit. [172-10] at 3.[10] Thus, it seems that in China (much as in the United States), claims for damages arising from emotional distress must be brought simultaneously with claims seeking compensation for any underlying injuries. *See id.* at 2 (stating that the court will accept claims for

---

[10] The publicly-available version of this document includes an English translation. *See generally* [172-10].

25

emotional damages stemming from "infringement" of one's "right of health [or] right of body"). But GMT is not seeking here any emotional damages arising from an earlier-suffered, already-adjudicated injury; and there is no reason to presume that the above principle extends to all types of legal claims and lawsuits. GMT seeks damages for the theft of its proprietary information, and defendants have presented no materials from which it may be reasonably concluded that, under Chinese law, GMT was compelled to file this claim along with its breach-of-contract claim.

Even if it were true that Chinese law requires litigants to bring all related claims simultaneously, the extent to which such claims must be related remains unclear. If, for example, the test in China is simply whether the plaintiff *could have alleged* in the first suit a second cause of action—because, for example, the plaintiff already had information relevant to the second claim—then GMT's trade-secrets claim would now be barred. GMT filed suit in the United States (originally in Tennessee) only two days after filing suit in China, and included in the Tennessee complaint allegations accusing defendants of using GMT's confidential and proprietary information. *See, e.g.*, [1] at 5 ¶¶ 31, 36–37. GMT easily could have added those same allegations to its Chinese complaint. But if, on the other hand, the test for relatedness depends instead on whether certain facts underlying the one claim are also needed to prove the other, defendants face a much steeper climb. In China, GMT complained only about the shipment of faulty, non-conforming, and unordered goods; the purported use of GMT's confidential or proprietary information simply did not come up. And nor does GMT's trade-secrets claim appear

26

to rely at all on proving that DNZ shipped rusted or unordered product. Because defendants have not established that Chinese principles of *res judicata* bar GMT from moving forward with its trade-secrets claim, this claim may proceed.

## IV. Conclusion

For the reasons discussed above, defendants' motion for judgment on the pleadings, [163], is granted in part and denied in part. The motion is granted insofar as defendants seek recognition and enforcement of the judgment rendered by the Chinese intermediate court. The CISG claim is precluded. The motion is denied as to preclusion of GMT's trade-secrets claim.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 5/1/15

# Exhibit B

*Liu Li v. Tao Li & Tong Wu*

# 申请人刘利与被申请人陶莉、童武申请承认和执行外国法院民事判决一案民事裁定书

**审理法院：** 湖北省武汉市中级人民法院

**案　　号：** （2015）鄂武汉中民商外初字第 00026 号

**案　　由：** 申请承认和执行外国法院民事判决、裁定

**裁判日期：** 2017 年 06 月 30 日

**湖北省武汉市中级人民法院**

**民事裁定书**

（2015）鄂武汉中民商外初字第 00026 号

申请人：刘利，女，汉族，1979 年 6 月 15 日出生，住湖南省岳阳市岳阳楼区湖滨农垦集团公司一分场宿舍 90 号。

委托诉讼代理人：陈观林，湖南金球律师事务所律师。

被申请人：陶莉，女，汉族，1986 年 11 月 6 日出生，住湖北省武汉市江汉区唐家墩路 15 号武汉菱角湖万达广场 B.C 区 7 栋 4 层 A 室。

委托诉讼代理人：陈航，湖北山河律师事务律师。

被申请人：童武，男，汉族，1977 年 9 月 12 日出生，住湖北省武汉市江汉区唐家墩路 15 号武汉菱角湖万达广场 B.C 区 7 栋 4 层 A 室。

委托诉讼代理人：陈航，湖北山河律师事务律师。

申请人刘利与被申请人陶莉、童武申请承认和执行外国法院民事判决一案，本院于 2015 年 10 月 19 日受理后，依法组成合议庭，于 2015 年 12 月 25 日、2016 年 3 月 15 日组织听证会对该申请进行了审查。申请人刘利和其委托诉讼代理人陈观林，被申请人陶莉、童武的共同委托诉讼代理人陈航到庭参加听证会。本案现已审查终结。

申请人刘利申请称：申请人与被申请人于 2013 年 09 年 22 日签订股权转让协议，被申请人以 150000 美元的价格将其在美国 JIAJIAMANAGEMENTINC50%股权转让给申请人。在申请人依

约支付125000美元后，被申请人携款潜逃。申请人在当地报警未果后依法向美国加利福尼亚州洛杉矶县高等法院提起诉讼，该院于2015年7月24日作出第EC062608号判决，判令被申请人返还申请人125000美元及审判前（2013年9月25日至2015年5月25日）利息20818美元和审判成本1674美元，总共147492美元。该判决已经生效，被申请人未按判决履行。被申请人现居住在湖北省武汉市江汉区唐家墩路15号武汉菱角湖万达广场B.C区7栋4层A室并有可供执行的财产。美国法院作出的EC062608号判决不违反我国法律的基本原则和国家主权、安全、社会利益，为维护申请人的合法权益，特请求裁定：1、承认美国加利福尼亚州洛杉矶县高等法院第EC062608号判决在中华人民共和国境内具有法律效力；2、依美国加利福尼亚州洛杉矶县高等法院第EC062608号判决内容强制被申请人给付申请人125000美元及审判前（2013年9月25日至2015年5月25日）利息20818美元和审判成本1674美元，总共147492美元，计人民币940040.26元（以2015年9月12日汇率）和2015年5月25日至执行终结前的逾期利息；3、由被申请人承担本案执行费用。

被申请人陶莉和童武陈述意见称，1、美国加利福尼亚州洛杉矶县高等法院第EC062608号判决在中华人民共和国境内不具有法律效力，被申请人在美国法院诉讼时并未接到参加诉讼的通知；2、申请人与被申请人所签订的《股权转让协议》真实、合法、有效，被申请人不应当向申请人返还股权转让价款。为此，请求驳回申请人的申请。

经审查认定：被申请人陶莉与申请人刘利于2013年9月22日在美国签订《股权转让协议》一份，约定陶莉将其持有的在美国加利福尼亚州注册登记的JIAJIAMANAGEMENTINC50%股权转让给刘利。刘利先后在2013年9月22日、9月25日向被申请人付款12.5万美元。被申请人童武系被申请人陶莉的丈夫，申请人刘利提交的童武银行账户信息显示其银行账户在2013年9月14日至10月16日期间有12.5万美元的进账。后申请人刘利以两被申请人利用虚假股权转让事由获取其12.5万美元钱款为由，在2014年7月17日向美国加利福尼亚州洛杉矶县高等法院提起诉讼，案件编号EC062608。2014年10月7日，美国Rolan送达公司就被申请人陶莉、童武在美国境内的个人信息、联系地址等出具调查报告。申请人刘利在美国的委托律师按调查报告所载两被申请人地址邮寄送达诉讼资料未果。2015年1月8日，美国加利福尼亚州洛杉矶县高等法院法官WilliamD.Stewart作出公告命令，决定该案相关传票、通知通过在《圣盖博谷论坛》（SANGABRIELVALLEYTRIBUNE）上刊登公告方式送达。该送达公告随后于2015年

1月15日、1月22日、1月29日和2月5日连续四次在《圣盖博谷论坛》上刊登。2015年7月24日，加利福尼亚州洛杉矶县高等法院法官WilliamD.Stewart作出缺席判决，该法庭认为两被申请人已按程序收到传票，而未出庭回应申请人之起诉，构成缺席。因此，法庭就本案所涉事项判决被申请人陶莉和童武连带偿还申请人刘利12.5万美元并承担判决前利息20818美元（自2013年9月25日至2015年5月25日，按日息34.24美元计算），且应支付费用1674美元，判决金额共计147492美元。申请人刘利在美国的委托律师在判决当日就上述判决办理了判决登记通知手续。申请人提交的《首例中国法院判决在美国得到承认与执行案》（载《中国法律期刊》2010年1月）报道记载，湖北省高级人民法院作出的湖北葛洲坝三联实业股份有限公司、湖北平湖旅游船有限公司诉美国罗宾逊直升机有限公司产品侵权纠纷案民事判决，已获美国法院承认与执行。

本院认为：

本案系申请承认和执行外国法院判决纠纷案件。《中华人民共和国民事诉讼法》第二百八十一条规定，外国法院作出的发生法律效力的判决、裁定，需要中华人民共和国人民法院承认和执行的，可以由当事人直接向中华人民共和国有管辖权的中级人民法院申请承认和执行，也可以由外国法院依照该国与中华人民共和国缔结或者参加的国际条约的规定，或者按照互惠原则，请求人民法院承认和执行。第二百八十二条规定，人民法院对申请或者请求承认和执行的外国法院作出的发生法律效力的判决、裁定，依照中华人民共和国缔结或者参加的国际条约，或者按照互惠原则进行审查后，认为不违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，裁定承认其效力，需要执行的，发出执行令，依照本法的有关规定执行。违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，不予承认和执行。本案中，被申请人陶莉、童武在湖北省武汉市内拥有房产，本院作为被申请人财产所在地和经常居住地法院，对本案依法享有管辖权。

申请人刘利在向本院递交申请承认和执行申请书时，已向本院提交经证明无误的美国加利福尼亚州洛杉矶县高等法院作出的编号EC062608判决副本及中文译本，符合申请承认和执行外国法院判决的形式要件。因美国同我国之间并未缔结也未共同参加相互承认和执行民事判决的国际条约，申请人的申请应否予以支持应依据互惠关系原则进行审查。经审查，申请人提交的证据已证实美国有承认和执行我国法院民事判决的先例存在，可以认定双方之间存在相互承

申请人刘利与被申请人陶莉、童武申请承认和执行外国法院民事判决一案民事裁定书

认和执行民事判决的互惠关系。同时，上述美国加利福尼亚州洛杉矶县高等法院判决系对申请人与被申请人之间有关股权转让的合同关系作出，承认该民事判决并不违反我国法律的基本原则或者国家主权、安全、社会公共利益。对两被申请人辩称的未接到美国法院参加诉讼通知的辩称理由，经审查，上述判决中已明确记载该案判决系缺席判决，且申请人已向本院提交了对被申请人进行调查、法院准许公告送达命令、报纸刊登的送达公告等证明文件，可以确定美国加利福尼亚州洛杉矶县高等法院已对两被申请人进行了合法传唤，对两被申请人的该项辩称理由不予支持。对两被申请人主张的有关《股权转让协议》真实、合法、有效，不应当向申请人返还股权转让价款的辩称主张，因本案属于司法协助案件，并不涉及对双方实体权利义务关系的审查，在相关美国法院已就此作出判决的情况下，对被申请人的该项辩称主张本院亦不予以支持。因此，对申请人提出承认和执行美国法院判决的请求，本院予以支持。对申请人主张的2015 年 5 月 25 日美国法院判决日至执行终结前的逾期利息，不属于申请承认和执行外国法院判决的范畴，本案中不予支持。

经合议庭评议，依照《中华人民共和国民事诉讼法》第一百五十四条第一款第（十一）项、第二百八十一条、第二百八十二条，《最高人民法院关于适用<中华人民共和国民事诉讼法〉的解释》第五百四十三条第一款、第五百四十六条第一款的规定，裁定如下：

一、承认并执行美国加利福尼亚州洛杉矶县高等法院第 EC062608 号判决；

二、驳回申请人刘利的其他请求。

本案申请费人民币 100 元，由被申请人陶莉、童武负担。

审判长　赵千喜

审判员　余　杰

审判员　熊艳红

二〇一七年六月三十日

书记员　徐　蕾

Civil ruling on the case in which the applicant Liu Li and the respondents Tao Li and Tong Wu applied for recognition and enforcement of a foreign court civil judgment

Applicant Liu Li and Respondents Tao Li and Tong Wu apply for recognition and enforcement of a foreign court civil judgment

# Civil ruling in a case

Trial Court: Wuhan Intermediate People's Court, Hubei Province

Case No.: (2015) E Wuhan Zhong Min Shang Wai Chu Zi No. 00026

Case: Application for recognition and enforcement of civil judgments and rulings of foreign courts

Date of judgment: June 30, 2017

Wuhan Intermediate People's Court, Hubei Province

Civil ruling

(2015) Hubei Wuhan Zhongmin Shangwai Chuzi No. 00026

Applicant: Liu Li, female, Han nationality, born on June 15, 1979, living in Hubin Farm Reclamation Group, Yueyanglou District, Yueyang City, Hunan Province

No. 90, dormitory of the first branch of the regiment.

Attorney-in-fact: Chen Guanlin, lawyer of Hunan Golden Ball Law Firm.

Respondent: Tao Li, female, Han nationality, born on November 6, 1986, living at No. 15, Tangjiadun Road, Jianghan District, Wuhan City, Hubei Province.

Room A, 4th Floor, Building 7, BC Zone, Wanda Plaza, Lingjiao Lake, Wuhan.

Attorney-in-fact: Chen Hang, lawyer of Hubei Shanhe Law Firm.

Respondent: Tong Wu, male, Han nationality, born on September 12, 1977, living at No. 15, Tangjiadun Road, Jianghan District, Wuhan City, Hubei Province.

Room A, 4th Floor, Building 7, BC Zone, Wanda Plaza, Lingjiao Lake, Wuhan.

Attorney-in-fact: Chen Hang, lawyer of Hubei Shanhe Law Firm.

In 2015, this court filed a case in which the applicant Liu Li and the respondents Tao Li and Tong Wu applied for recognition and enforcement of a foreign court civil judgment.

After the case was accepted on October 19, 2015, a collegial panel was formed in accordance with the law to organize hearings on December 25, 2015 and March 15, 2016.

The application was reviewed by the court. Applicant Liu Li and his attorney Chen Guanlin, and respondents Tao Li and Tong Wu jointly

The attorney-in-fact, Chen Hang, attended the hearing. The case has now been reviewed and concluded.

Applicant Liu Li claimed that the applicant and the respondent signed an equity transfer agreement on September 22, 2013.

The applicant transferred 50% of its equity in JIAJIAMANAGEMENTINC in the United States to the applicant at a price of US$150,000.

Civil ruling on the case in which the applicant Liu Li and the respondents Tao Li and Tong Wu applied for recognition and enforcement of a foreign court civil judgment

After paying about $125,000, the respondent absconded with the money. After the applicant reported the case to the police locally but to no avail, he filed a lawsuit in California, USA.

The Los Angeles County Superior Court of the State of California filed a lawsuit, and the court issued a judgment No. EC062608 on July 24, 2015, ordering the defendant

Request the applicant to return USD 125,000 and interest before the trial (September 25, 2013 to May 25, 2015)

The total amount of the judgment is US$147,492, and the trial cost is US$1,674. The judgment has come into effect, but the respondent has not complied with the judgment.

The applicant currently lives in Room A, 4th Floor, Building 7, BC Zone, Wuhan Lingjiao Lake Wanda Plaza, No. 15 Tangjiadun Road, Jianghan District, Wuhan City, Hubei Province

The judgment EC062608 made by the US court does not violate the basic principles of Chinese law and the sovereignty of the state.

In order to safeguard the legitimate rights and interests of the applicant, we hereby request a ruling: 1. Recognize the Los Angeles County

The Los Angeles County Superior Court's judgment No. EC062608 is legally binding within the territory of the People's Republic of China; 2.

The judgment of the Los Angeles County Superior Court No. EC062608 compels the respondent to pay the applicant $125,000 and the pre-trial

(September 25, 2013 to May 25, 2015) Interest $20,818 and trial costs $1,674, a total of $147,492

USD, RMB 940,040.26 (based on the exchange rate on September 12, 2015) and the period from May 25, 2015 to the end of the execution

overdue interest; 3. The respondent shall bear the execution costs of this case.

Respondents Tao Li and Tong Wu stated that: 1. Los Angeles County Superior Court of California, United States, No. EC062608

The judgment of No. 1 has no legal effect in the territory of the People's Republic of China. The respondent did not receive any notice to participate in the lawsuit when he sued in the U.S. court.

2. The Equity Transfer Agreement signed between the Applicant and the Respondent is authentic, legal and valid, and the Respondent should not

The equity transfer price should be returned to the applicant. Therefore, we request that the applicant's application be rejected.

After review, it was determined that the respondent Tao Li and the applicant Liu Li signed the Equity Transfer Agreement in the United States on September 22, 2013.

A contract stipulating that Tao Li would transfer 50% of the equity of JIAJIAMANAGEMENTINC, a company registered in California, USA, to

Liu Li paid the respondent USD 125,000 on September 22 and September 25, 2013.

Tong Wu is the husband of the respondent Tao Li. The bank account information of Tong Wu submitted by the applicant Liu Li shows that his bank account was

From September 14 to October 16, the applicant Liu Li received USD 125,000 in cash.

On July 17, 2014, the Los Angeles County High Court in California, USA, filed a transfer application with the plaintiff.

The court filed a lawsuit with the case number EC062608. On October 7, 2014, Rolan of the United States served the company with the applicant Tao

The applicant Liu Li's attorney in the United States issued an investigation report on the personal information and contact addresses of Li and Tong Wu in the United States.

The mailing of the litigation materials to the two defendants' addresses listed in the investigation report was unsuccessful. On January 8, 2015, the California

Judge William D. Stewart of the Los Angeles County Superior Court issued a public order, deciding that the subpoenas and notices related to the case should be issued in the St.

The notice was delivered by posting it on the Sangabrielvalley Tribune.

Machine Translated by Google

Civil ruling on the case in which the applicant Liu Li and the respondents Tao Li and Tong Wu applied for recognition and enforcement of a foreign court civil judgment

It was published in the San Gabriel Valley Tribune four times in a row on January 15, January 22, January 29 and February 5.

On the 24th of this month, Judge William D. Stewart of the Los Angeles County Superior Court in California issued a default judgment, stating that

The two respondents had received the summons according to the procedure, but did not appear in court to respond to the applicant's lawsuit, which constituted default.

The court ruled that the respondents Tao Li and Tong Wu should jointly repay the applicant Liu Li US$125,000 and bear the pre-judgment interest of US$20,818.

Yuan (from September 25, 2013 to May 25, 2015, calculated at a daily interest rate of US$34.24), and the fees payable are 1674

The total amount of the judgment is US$147,492. The applicant Liu Li's attorney in the United States handled the above judgment on the day of the judgment.

The applicant submitted the "First Case of Recognition and Enforcement of a Chinese Court Judgment in the United States" (published in the

According to a report in the China Law Journal (January 2010), the Hubei Provincial High People's Court ruled that Hubei Gezhouba Sanlian Industrial Co., Ltd.

Co., Ltd., Hubei Pinghu Tourist Boat Co., Ltd. v. Robinson Helicopter Co., Ltd., a civil judgment on a product infringement dispute.

It has been recognized and enforced by the U.S. courts.

This Court holds that:

This case involves a dispute over the application for recognition and enforcement of a foreign court judgment.

Article 11 provides that a judgment or ruling made by a foreign court that has legal effect must be recognized by the People's Court of the People's Republic of China.

For cases involving the recognition and enforcement of a judgment, the parties may directly apply to the Intermediate People's Court of the People's Republic of China that has jurisdiction over the judgment.

A foreign court may adjudicate in accordance with the provisions of an international treaty concluded or acceded to by that country and the People's Republic of China, or on the principle of reciprocity.

Article 282 provides that the People's Court shall make an application or request for recognition and enforcement of the

Judgments and rulings rendered by foreign courts that have legal effect shall, in accordance with international treaties concluded or acceded to by the People's Republic of China,

Or after reviewing in accordance with the principle of reciprocity, it is considered that it does not violate the basic principles of the laws of the People's Republic of China or the sovereignty, security,

If the decision is in the national or social public interest, the ruling shall recognize its validity; if it needs to be enforced, an execution order shall be issued and it shall be enforced in accordance with the relevant provisions of this Law.

Any decision that violates the basic principles of the laws of the People's Republic of China or the national sovereignty, security, or social public interests shall not be recognized or enforced.

In this case, the respondents Tao Li and Tong Wu own real estate in Wuhan City, Hubei Province. This court is the place where the respondents' property is located and where the

The court of the place of habitual residence has jurisdiction over this case in accordance with the law.

When the applicant Liu Li submitted his application for recognition and enforcement to this court, he submitted to this court the certified

A copy of the judgment No. EC062608 issued by the Superior Court of Los Angeles County, California and its Chinese translation, which is eligible for application for recognition and enforcement

Formal requirements for foreign court judgments. Because the United States and my country have not concluded or jointly participated in the mutual recognition and enforcement of civil judgments

The applicant's application should be supported according to the principle of reciprocity.

The evidence has proved that there is a precedent in the United States recognizing and enforcing civil judgments of Chinese courts. It can be determined that there is mutual recognition between the two parties

Civil ruling on the case in which the applicant Liu Li and the respondents Tao Li and Tong Wu applied for recognition and enforcement of a foreign court civil judgment

At the same time, the above-mentioned Los Angeles County Superior Court judgment of the United States California is a reciprocal relationship between the recognition and enforcement of civil judgments.

The contractual relationship between the applicant and the respondent on the equity transfer was made, and recognizing the civil judgment does not violate the basic principles of Chinese law.

or national sovereignty, security, or social public interests.

The reasons for the defense are that upon review, the above judgment has clearly stated that the judgment in this case was a default judgment, and the applicant has submitted a statement of appeal to this court.

The respondent's investigation, the court's order for service by public notice, the service notice published in the newspaper, and other supporting documents can confirm that the United States

The Los Angeles County Superior Court of California has legally summoned the two respondents and

The two respondents' claims that the Equity Transfer Agreement was authentic, legal and valid should not be supported by the applicant.

The defense of returning the equity transfer price is that this case is a judicial assistance case and does not involve the substantive rights and obligations of the two parties.

In the case where the relevant U.S. court has already made a ruling on this issue, this court will not consider the respondent's argument.

Therefore, this court supports the applicant's request for recognition and enforcement of the U.S. court judgment.

The overdue interest from the date of the judgment of the U.S. court on May 25, 2015 to the date of the execution is not included in the application for recognition and enforcement of the foreign court judgment.

The scope of the judgment is not supported in this case.

After deliberation by the collegial panel, in accordance with Article 154, paragraph 1, item (11) of the Civil Procedure Law of the People's Republic of China,

Articles 281 and 282 of the "Decision of the Supreme People's Court on the Application of the Civil Procedure Law of the People's Republic of China"

The following ruling is made in accordance with the provisions of Article 543, paragraph 1, and Article 546, paragraph 1, of the Interpretation of the

1. Recognize and enforce Judgment No. EC062608 of the Superior Court of Los Angeles County, California, United States;

2. Reject the other requests of the applicant Liu Li.

The application fee for this case is RMB 100, which shall be borne by the respondents Tao Li and Tong Wu.

Presiding Judge Zhao Qianxi

Judge Yu Jie

Judge Xiong Yanhong

June 30, 2017

Secretary Xu Lei

# Exhibit C

*Nalco Company LLC v. David Tchen*

# 陈大维（David T Chen）与纳尔科公司有限责任公司（NALCO COMPANY LLC）申请承认和执行外国法院民事判决、裁定案民事裁定书

审理法院：　上海市第一中级人民法院

案　　号：　（2017）沪 01 协外认 16 号

案　　由：　申请承认和执行外国法院民事判决、裁定

裁判日期：　2018 年 09 月 17 日

上海市第一中级人民法院

民事裁定书

（2017）沪 01 协外认 16 号

申请人：纳尔科公司有限责任公司（NalcoCompanyLLC），住所地美利坚合众国特拉华州威尔明顿市橙色大街 1209 号公司信托中心（CorporationTrustCenter，1209OrangeStreet，CityofWilmington，Delaware19801，USA）。

授权代表：迈克尔．P．墨菲，助理秘书。

委托诉讼代理人：王晓萌，上海市方达（北京）律师事务所律师。

委托诉讼代理人：张一男，上海市方达（北京）律师事务所律师。

被申请人：陈大维（DAVIDTCHEN），男，1949 年 12 月 4 日出生，美利坚合众国国籍。

委托诉讼代理人：狄青，君合律师事务所上海分所律师。

委托诉讼代理人：陈鲁明，君合律师事务所上海分所律师。

申请人纳尔科公司有限公司（以下简称"纳尔科公司"）诉被申请人陈大维承认和执行外国法院民事判决一案，本院于 2017 年 8 月 14 日立案受理，并依法组成合议庭进行了审查，组织当事人进行了询问，现已审查终结。

纳尔科公司申请称，纳尔科公司注册于美国特拉华州，陈大维是美国公民。2007 年初，案外人 Z 公司（NInc，后更名为 M，以下简称"Z 公司"）与陈大维及案外人胡某在上海市浦东新区共同投资设立 Y 公司（以下简称"目标公司"），其中，Z 公司与陈大维的持股比例分

陈大维（David T Chen）与纳尔科公司有限责任公司（NALCO COMPANY LLC）申请承认和执行外国法院民事判决、裁定案民事裁定书

别为 55%和 40%。

2010 年初，由于经营情况恶化，目标公司在 W 公司（以下简称"W 公司"）申请贷款额度授信，W 公司同意向目标公司发放最高不超过人民币 3,000 万元的贷款。同时，纳尔科公司向 W 公司出具了一封担保函，承诺为目标公司的信用贷款提供担保。对此，纳尔科公司与陈大维有单独签署了一份赔偿补偿协议（eement，以下简称"《补偿协议》"），约定若目标公司未能按时向 W 公司归还贷款，导致纳尔科公司为此承担担保责任，陈大维将立即无条件地向纳尔科公司支付其代替目标公司向 W 公司还贷金额的 40%及相关利息（年利率 9%），作为补偿。随后 W 公司向目标公司发放了贷款人民币 3,000 万元。目标公司到期后未能偿还上述贷款本息，纳尔科公司于 2012 年 1 月 13 日代陈大维向 W 公司偿还了上述款项，承担了担保责任。

由于陈大维拒绝履行《补偿协议》，纳尔科公司于 2012 年 11 月 7 日在美国位于伊利诺伊州杜佩奇县的第十八司法管辖区巡回法院（istrict，DupageCounty，Illinois）对陈大维提起诉讼，要求其支付上述补偿金及相关利息，案号为 12C9931。其后于 2012 年 12 月 13 日，该案件被转移至美国联邦地方法院伊利诺伊州北部东区分庭（以下简称"案涉美国法院"）进行审理。陈大维参加了该案所有程序，聘请了律师作为代理人，并提出了相关抗辩，同时对纳尔科公司和 Z 公司提出了反诉请求。案涉美国法院于 2015 年 10 月 20 日作出了最终的判决：（1）作出简易判决，就陈大维反诉请求的第 2 项，支持反诉被告 Z 公司。（2）作出最终判决，支持纳尔科公司请求的本金 2,044,592.27 美元及年息 9%的利息。（3）由于本案没有其他待决事项，而且最终判决是通过本判决而被作出，所以纳尔科公司有关执行已决部分判决的申请已经没有必要。纳尔科可以根据联邦民事诉讼规则第 62（a）条的规定，在本判决作出后经过 14 天，请求执行，除非陈大维交付保证金或因提起上诉而获得暂停执行的裁定。陈大维随后向美国联邦第七巡回法院提起上诉，而后又于 2016 年 2 月 16 日撤回上诉。据此，根据美国联邦民事诉讼法的规定，美国法院判决书于 2015 年 11 月 4 日正式生效。

申请人依据我国《民事诉讼法》第 282 条规定，向我院提出申请如下：1、依法裁定并承认美国联邦地方法院伊利诺伊州北部东区分庭就纳尔科公司诉陈大维一案（案号：12C9931）作出的判决书。2、根据美国法院判决书，执行被申请人等值于以下数额的财产：（1）被申请人向申请人支付金额为 2,044,592.27 美元的补偿款，暂按 2017 年 4 月 28 日中国银行发布的美元对人民币汇率 1：6.9131 计算，计人民币 14,134,470.82 元；（2）被申请人向申请人

支付上述款项的利息，按年利率 9%计算，自应付未付之日（即 2012 年 1 月 13 日）起至实际
付款之日止,暂记至 2017 年 4 月 28 日为 987,538.07 美元,以当日美元对人民币汇率 1:6.9131
计算，计人民币 6，826，949.43 元。以上两项金额暂记人民币 20，961，420.25 元。审理中，
申请人放弃申请承认该美国判决书第一项及第三项内容，仅申请承认美国判决书第二项内容，
并据以支付上述款项。

　　申请人认为：一、被申请人在我院辖区拥有可供执行的财产并居住，根据《民事诉讼法》
第 224 条规定，我院对于本案享有管辖权。二、中国和美国之间存在互惠关系，满足承认和执
行的条件。1、中美之间存在法律互惠。我国《民事诉讼法》规定了"互惠原则"的适用，存
在承认美国判决的法律基础。同时，美国大多数法域均通过了《统一外国金钱判决承认法案》
（UniformForeign-t），案涉美国法院所在伊利诺伊州也通过了上述法案。根据该法案，中国
法院作出的、关于金钱支付的判决通常能够在美国大多数州的法院得到承认。2、中美之间存
在事实互惠。美国法院已经在多个中案件承认了并执行了中国法院作出的判决。

　　被申请人答辩称：一、中国和美国不存在互惠关系。（一）美国没有适用于全国的承认和
执行中国法院判决相关的联邦法律。《统一外国金钱判决承认法案》实际上只是立法建议，目
前美国 50 个州，仅有 32 个州和美属维尔京群岛引入该法案。在剩余的州，中国法院判决则可
能无法得到类似的承认和执行。（二）此前美国法院承认和执行中国法院判决的案例，均为依
据州法判决，仅能说明美国部分州可以承认和执行中国法院判决。（三）即便在通过立法可以
承认和执行中国法院判决的州，其对于能够被承认和执行中国法院判决的要求也远比中国的相
关法律严格，这些州和中国在法律上无法构成互惠关系。（四）认定中美已经存在互惠关系，
将严重违反对等原则，危及中国的司法主权。（五）申请人的美国律师针对中国法律发表意见，
完全超出了其有资格提供法律服务的范围，既不符合其律师执业规范，亦违反了相关中国法律
规定，其法律依据依法不应被采信。二、美国判决系经英美法项下特有的简易判决程序作出，
其在程序和实体方面均不符合中国法律的基本原则，不应得到承认和执行。（一）程序方面，
美国判决违背了辩论原则等民事诉讼基本原则。（二）实体方面，美国判决未充分考虑相关事
实，判决结果违反诚实信用等基本原则。三、美国判决目前正在美国执行，本案不符合需要在
中国执行的条件，且在中国同时执行将极大损害被申请人的基本权利。（一）美国判决没有在
中国境内申请承认和执行的必要。（二）中美两国的相关司法判决均印证承认和执行的必要性

为是否承认和执行外国法院判决必须具备的要素。四、本案美国判决未对本案事实进行全部审查，不符合中国法律基本原则。五、本院已受理与本案具有关联的诉讼案件，不应再承认和执行相关的美国判决。

本院经审查认定，纳尔科公司于 2012 年 11 月 7 日在美国位于伊利诺伊州杜佩奇县的第十八司法管辖区巡回法院对陈大维提起诉讼，案号为 12C9931。其后于 2012 年 12 月 13 日，该案件被转移至美国联邦地方法院伊利诺伊州北部东区分庭进行审理。陈大维参加了该案所有程序，聘请了律师作为代理人，并提出了相关抗辩，同时对纳尔科公司和 Z 公司提出了反诉请求。案涉美国法院于 2015 年 10 月 20 日作出了最终的判决：（1）作出简易判决，就陈大维反诉请求的第 2 项，支持反诉被告 Z 公司。（2）作出最终判决，支持纳尔科公司请求的本金 2，044，592.27 美元及年息 9%的利息。（3）由于本案没有其他待决事项，而且最终判决是通过本判决而被作出，所以纳尔科公司有关执行已决部分判决的申请已经没有必要。纳尔科可以根据联邦民事诉讼规则第 62（a）条的规定，在本判决作出后经过 14 天，请求执行，除非陈大维交付保证金或因提起上诉而获得暂停执行的裁定。陈大维随后向美国联邦第七巡回法院提起上诉，而后又于 2016 年 2 月 16 日撤回上诉。据此，根据美国联邦民事诉讼法的规定，美国法院判决书于 2015 年 11 月 4 日正式生效。

本案主要的争议为：1、是否可以依据互惠原则，承认和执行案涉美国法院判决？2、本案审查美国诉讼案件的程序依据？

关于争议焦点一，本院认为，我国《民事诉讼法》第二百八十二条规定，人民法院对申请或者请求承认和执行的外国法院作出的发生法律效力的判决、裁定，依照中华人民共和国缔结或者参加的国际条约，或者按照互惠原则进行审查后，认为不违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，裁定承认其效力，需要执行的，发出执行令，依照本法的有关规定执行。由于我国和美国没有缔结或者参加有关承认和执行法院判决、裁定的国际条约，故对案涉美国判决应否予以承认和执行，应在互惠基础上，对该判决是否违反我国法律的基本原则或者国家主权、安全、社会公共利益进行审查。被申请人陈大维虽主张对涉案判决不应承认和执行，但其并未提供充分证明承认和执行涉案判决将会违反我国法律的基本原则或者危害我国国家主权、安全及社会公共利益。考虑到美国法院曾多次承认和执行我国法院作出的民商事判决，我国法院可以基于互惠原则，对涉案美国法院民事判决予以承认和执行。

陈大维（David T Chen）与纳尔科公司有限责任公司（NALCO COMPANY LLC）申请承认和执行外国法院民事判决、裁定案民事
裁定书

关于争议焦点二，本院认为，本案对美国案件审理程序的审查应适用法院地法，即美国法律，而不应适用我国法律。被申请人未缺席美国案件的审理过程，并委托律师提出抗辩及反诉。案涉美国法院判决适用"简易判决"（或称即决判决）的程序作出，符合美国法的规定，被申请人对此亦无异议，故被申请人以该"简易判决"不符合中国法律为由要求拒绝承认和执行，无法律依据，不应支持。

本案中，申请人已向本院提交了经证明无误的美国联邦地方法院伊利诺伊州北部东区分庭作出的民事判决的副本及中文译本。被申请人及其代理律师参加了美国案件所有程序，提出了相关抗辩并对申请人提出了反诉请求。案涉美国法院于 2015 年 10 月 20 日作出最终判决，并与 2015 年 11 月 4 日正式生效。承认和执行案涉美国未违反我国法律的基本原则或者危害我国国家主权、安全及社会公共利益。本案中，可以基于互惠原则，对涉案美国法院民事判决予以承认和执行。

依照《中华人民共和国民事诉讼法》第二百八十一条、二百八十二条、《最高人民法院关于适用<中华人民共和国民事诉讼法>的解释》第五百四十三条之规定，裁定如下：

承认并执行美国联邦地方法院伊利诺伊州北部东区分庭，于 2015 年 10 月 20 日作出的 12C9931 号判决第二项之内容。

案件申请费人民币 146，607.10 元，由被申请人陈大维负担。

审判长　黄　英

审判员　杨　苏

审判员　任明艳

二〇一八年九月十七日

书记员

David T Chen v. NALCO COMPANY LLC, Application for Recognition and Enforcement of a Foreign Court Civil Judgment or Ruling, Civil Ruling

# David T Chen and NALCO COMPANY

## LLC) applies for recognition and enforcement of civil judgments and rulings of foreign courts

Trial Court: Shanghai No. 1 Intermediate People's Court

Case No.: (2017) Hu01 Xiewairen No. 16

Case: Application for recognition and enforcement of civil judgments and rulings of foreign courts

Date of judgment: September 17, 2018

Shanghai No.1 Intermediate People's Court

Civil ruling

(2017) Hu01 Xiewai Certification No. 16

Applicant: Nalco Company LLC, domiciled in the State of Delaware, United States of America.

Corporation Trust Center, 1209 Orange Street, Wilmington

City of Wilmington, Delaware 19801, USA).

Authorized Representative: Michael P. Murphy, Assistant Secretary.

Attorney-in-fact: Wang Xiaomeng, lawyer at Shanghai Fangda (Beijing) Law Firm.

Attorney-in-fact: Zhang Yinan, lawyer of Shanghai Fangda (Beijing) Law Firm.

Respondent: DAVID TCHEN, male, born on December 4, 1949, nationality of the United States of America.

Attorney-in-fact: Di Qing, lawyer of Jun He Law Firm Shanghai Branch.

Attorney-in-fact: Chen Luming, lawyer of JunHe Law Firm Shanghai Branch.

Applicant Nalco Company, Ltd. (hereinafter referred to as "Nalco Company") sued the respondent Chen Dawei for recognition and enforcement of foreign

The court accepted the case on August 14, 2017 and formed a collegial panel to review the case.

The parties involved have been questioned and the review has now been concluded.

Nalco filed an application stating that it was registered in Delaware, USA, and that Chen Dawei was a US citizen.

The non-party Z Company (NInc, later renamed M, hereinafter referred to as "Z Company") and Chen Dawei and the non-party Hu Mou in Pudong, Shanghai

Dongxin District jointly invested in the establishment of Y Company (hereinafter referred to as the "Target Company"), in which Z Company and Chen Dawei held shares in

David T Chen v. NALCO COMPANY LLC, Application for Recognition and Enforcement of a Foreign Court Civil Judgment or Ruling, Civil Ruling

55% and 40% respectively.

In early 2010, due to the deterioration of its operating conditions, the target company applied for a loan from W Company (hereinafter referred to as "W Company")

W Company agreed to provide the target company with a loan of no more than RMB 30 million.

A letter of guarantee was issued to W Company, promising to provide a guarantee for the target company's credit loan.

Weiyou signed a separate compensation agreement (hereinafter referred to as the "Compensation Agreement"), stipulating that if the target company

If Chen Dawei fails to repay the loan to W Company on time, causing Nalco to assume the guarantee responsibility, Chen Dawei will immediately and unconditionally repay the loan to Nalco.

Erke Company paid 40% of the loan amount repaid by it on behalf of the target company to W Company and the related interest (annual interest rate of 9%) as compensation.

Subsequently, W Company issued a loan of RMB 30 million to the target company. The target company failed to repay the loan principal upon maturity.

On January 13, 2012, Nalco Company repaid the above amount to W Company on behalf of Chen Dawei and assumed the guarantee responsibility.

As Chen Dawei refused to perform the Compensation Agreement, Nalco Company filed a lawsuit in Illinois, USA on November 7, 2012.

The Eighteenth Judicial Circuit Court of Dupage County, Illinois, has filed a complaint against David Chen

The lawsuit was filed against the company, demanding the company to pay the above compensation and related interests, with the case number being 12C9931.

The case was transferred to the United States District Court for the Northern Eastern District of Illinois (hereinafter referred to as the "US Court") for further proceedings.

Chen Dawei participated in all procedures of the case, hired a lawyer as his agent, and raised relevant defenses.

Erco and Company Z filed a counterclaim. The US court involved in the case made a final judgment on October 20, 2015:

(1) A summary judgment was made in favor of the counterclaim defendant, Company Z, on Item 2 of Chen Dawei's counterclaim. (2) A final judgment was made.

The court supports Nalco's request for the principal of $2,044,592.27 and interest at an annual rate of 9%. (3) Since there is no other pending case in this case,

The final judgment was made through this judgment, so Nalco's application for execution of the final judgment

Nalco may, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure,

14 days to apply for execution, unless Chen Dawei pays a bond or obtains a suspension order by appeal.

The court appealed to the United States Seventh Circuit, but withdrew the appeal on February 16, 2016.

According to the provisions of the Federal Civil Procedure Code, the U.S. court judgment officially came into effect on November 4, 2015.

The applicant has made the following application to our court in accordance with Article 282 of the Civil Procedure Law of the People's Republic of my country: 1.

Adjudicated in the United States District Court for the Northern Eastern District of Illinois in the case of Nalco Company v. David Chen (Case No. 12C9931)

2. According to the judgment of the U.S. court, the following amounts of property of the respondent shall be executed: (1)

The applicant shall be paid a compensation of USD 2,044,592.27, which shall be temporarily based on the amount of USD 2,044,592.27 issued by the Bank of China on April 28, 2017.

The amount is RMB 14,134,470.82, calculated based on the exchange rate of US dollar to RMB 1:6.9131; (2) the respondent pays the applicant

David T Chen v. NALCO COMPANY LLC, Application for Recognition and Enforcement of a Foreign Court Civil Judgment or Ruling, Civil Ruling

The interest on the above amount shall be calculated at an annual rate of 9% from the date of payment (i.e. January 13, 2012) to the actual

As of the date of payment, it is temporarily recorded as US$987,538.07 as of April 28, 2017, based on the US dollar to RMB exchange rate of 1:6.9131 on that day.

Calculated, the total is RMB 6,826,949.43. The above two amounts are temporarily recorded as RMB 20,961,420.25.

 The applicant waives the application for recognition of the first and third items of the U.S. judgment and only applies for recognition of the second item of the U.S. judgment.

And pay the above amount accordingly.

The applicant believes that: 1. The respondent owns property available for execution and resides in the jurisdiction of our court. According to the Civil Procedure Law

Article 224 provides that our court has jurisdiction over this case.

1. There is legal reciprocity between China and the United States. my country's Civil Procedure Law stipulates the application of the "principle of reciprocity".

At the same time, most jurisdictions in the United States have passed the Uniform Foreign Money Judgment Recognition Act.

  The state of Illinois, where the US court in the case is located, also passed the above-mentioned law. According to the law, China

Judgments made by the court regarding monetary payments are usually recognized by courts in most states of the United States.

In factual reciprocity, U.S. courts have recognized and enforced judgments made by Chinese courts in a number of cases.

The respondent argued that: 1. There is no reciprocal relationship between China and the United States. 1. The United States does not have a national recognition and

Federal law on the enforcement of Chinese court judgments. The Uniform Foreign Money Judgment Recognition Act is actually only a legislative proposal.

Of the 50 states in the United States, only 32 states and the U.S. Virgin Islands have introduced the law. In the remaining states, Chinese court decisions can be

(ii) All previous cases where the US courts recognized and enforced the judgments of Chinese courts were based on

According to state law judgments, it only means that some states in the United States can recognize and enforce Chinese court judgments.

States that recognize and enforce Chinese court judgments have much higher requirements for being able to recognize and enforce Chinese court judgments than China.

The relevant laws are strict, and these states and China cannot legally have a reciprocal relationship. (IV) It is determined that China and the United States already have a reciprocal relationship.

This will seriously violate the principle of reciprocity and endanger China's judicial sovereignty. (V) The applicant's US lawyer expressed his opinion on Chinese law.

This is completely beyond the scope of legal services that he is qualified to provide, which is not in line with his professional standards as a lawyer, and also violates relevant Chinese laws.

The provisions of this Law shall not be accepted in accordance with the law. 2. The judgment in the United States was made through the unique summary judgment procedure under Anglo-American law.

It does not conform to the basic principles of Chinese law in terms of both procedure and substance and should not be recognized or enforced.

The US judgment violated the basic principles of civil litigation, such as the principle of debate. (II) In terms of substance, the US judgment did not fully consider the relevant

In fact, the judgment violates the basic principles of good faith.

The conditions for enforcement in China, and simultaneous enforcement in China will greatly damage the fundamental rights of the respondent.

The necessity of applying for recognition and enforcement in China. (II) Relevant judicial decisions in China and the United States have confirmed the necessity of recognition and enforcement

David T Chen v. NALCO COMPANY LLC, Application for Recognition and Enforcement of a Foreign Court Civil Judgment or Ruling, Civil Ruling

The US judgment in this case did not fully examine the facts of the case.

5. This court has already accepted a lawsuit related to this case and should not recognize and enforce it.

The relevant US judgment.

After review, this court determined that Nalco Corporation on November 7, 2012, in the United States, located in DuPage County, Illinois,

The Eighth Judicial Circuit filed a lawsuit against Chen Dawei, case number 12C9931.

The case was transferred to the United States District Court for the Northern Eastern District of Illinois for trial.

It hired a lawyer to represent it, raised relevant defenses, and filed a counterclaim against Nalco and Z Company.

The US court in the case made a final judgment on October 20, 2015: (1) It made a summary judgment on Chen Dawei's counterclaim.

(2) A final judgment was made in favor of Nalco's request for the principal amount of $2,044,000.

592.27 dollars and interest at 9% per annum. (3) Since there are no other matters pending in this case and the final judgment is passed by this judgment

Therefore, Nalco's application for enforcement of the res judicata judgment is no longer necessary. Nalco can sue under the Federal

According to Rule 62(a) of the Rules of Civil Procedure, the execution of this judgment shall be requested within 14 days after the date of the judgment unless Chen Dawei delivers

The bond may be suspended due to the appeal. Chen Dawei then appealed to the United States Federal Seventh Circuit Court.

Then he withdrew his appeal on February 16, 2016. Based on this, according to the provisions of the U.S. Federal Civil Procedure Law, the U.S. court ruled that

The book officially came into effect on November 4, 2015.

The main disputes in this case are: 1. Can the judgment of the US court involved in the case be recognized and enforced based on the principle of reciprocity? 2.

What is the procedural basis for reviewing U.S. litigation cases?

Regarding the first point of dispute, this court believes that Article 282 of the Civil Procedure Law of the People's Republic of my country stipulates that the people's court shall

or a foreign court's judgment or ruling which has become legally effective and for which recognition and enforcement is requested, in accordance with the

or an international treaty to which it is a party, or after review based on the principle of reciprocity, it is considered that it does not violate the basic laws of the People's Republic of China.

If the case is in violation of the principle of national sovereignty, security, or social public interest, the ruling shall recognize its validity. If it is necessary to enforce it, an execution order shall be issued.

The relevant provisions of this Law shall apply. Since my country and the United States have not concluded or participated in any treaty concerning the recognition and enforcement of court judgments and rulings,

International treaties, so whether the US judgment in the case should be recognized and enforced should be based on reciprocity and whether the judgment violates my country's

The basic principles of law or national sovereignty, security, and social public interests shall be reviewed.

The judgment should not be recognized and enforced, but it did not provide sufficient evidence to prove that recognizing and enforcing the judgment in question would violate the basic principles of Chinese law.

or endanger my country's national sovereignty, security and social public interests. Considering that the US courts have repeatedly recognized and enforced the judgments of the Chinese courts

For civil and commercial judgments made by the United States courts, Chinese courts can, based on the principle of reciprocity, recognize and enforce the civil judgments of the United States courts involved in the case.

David T Chen v. NALCO COMPANY LLC, Application for Recognition and Enforcement of a Foreign Court Civil Judgment or Ruling, Civil Ruling

Regarding the second focus of dispute, this court believes that the review of the trial procedure of the US case in this case should be subject to the law of the forum, that is, the law of the United States.

The respondent did not miss the trial of the US case and entrusted a lawyer to file a defense and counterclaim.

The judgment of the US court in the case was made using the procedure of "summary judgment" (or summary judgment), which is in line with the provisions of US law.

The Petitioner had no objection to this, so the Respondent requested that the recognition and enforcement of the "summary judgment" be refused on the grounds that it did not comply with Chinese law.

It has no legal basis and should not be supported.

In this case, the applicant has submitted to this Court a certified copy of the United States District Court for the Northern Eastern District of Illinois

The respondent and his attorney participated in all proceedings of the U.S. case and submitted

The US court in question made a final judgment on October 20, 2015, and

It officially came into effect on November 4, 2015. The recognition and enforcement case involved the United States not violating the basic principles of Chinese law or endangering my country's

In this case, the civil judgment of the US court involved can be judged on the basis of the principle of reciprocity.

Recognition and enforcement.

In accordance with Articles 281 and 282 of the Civil Procedure Law of the People's Republic of China and the

In applying Article 543 of the Interpretation of the Civil Procedure Law of the People's Republic of China, the following ruling is made:

Recognize and enforce the judgment of the United States District Court for the Northern Eastern District of Illinois dated October 20, 2015

The content of the second paragraph of Judgment No. 12C9931.

The case application fee of RMB 146,607.10 shall be borne by the respondent Chen Dawei.

Presiding Judge Huang Ying

Judge Yang Su

Judge Ren Mingyan

September 17, 2018

Clerk

# Exhibit D

*Wen Xiaochuan v. Huang Kefeng & WBV International LLC*

# 温晓川、黄科峰、ＷＢＶＩｎｔｅｒｎａｔｉｏｎａｌＬＬＣ申请承认与执行法院判决、仲裁裁决案件其他民事裁定书

审理法院：　浙江省宁波市中级人民法院

案　　　号：　（2018）浙 02 协外认 6 号

案　　　由：　申请承认与执行法院判决、仲裁裁决案件

裁判日期：　2020 年 09 月 23 日

浙江省宁波市中级人民法院

民事裁定书

（2018）浙 02 协外认 6 号

温晓川、黄科峰、ＷＢＶＩｎｔｅｒｎａｔｉｏｎａｌＬＬＣ申请承认与执行法院判决、仲裁裁决案件其他民事裁定书

中华人民共和国

浙江省宁波市中级人民法院

民事裁定书

（2018）浙 02 协外认 6 号

申请人：温晓川，男，1978 年 11 月 26 日出生，X 族，住中华人民共和国广东省珠海市香洲区。

委托诉讼代理人：黄加宁，北京德恒（杭州）律师事务所律师。

委托诉讼代理人：徐美倩，北京德恒（杭州）律师事务所律师。

被申请人：黄科峰，男，1978 年 6 月 25 日出生，X 族，住中华人民共和国浙江省宁波市北仑区。

温晓川、黄科峰、ＷＢＶＩｎｔｅｒｎａｔｉｏｎａｌＬＬＣ申请承认与执行法院判决、仲裁裁决案件其他民事裁定书

被申请人：ＷＢＶＩｎｔｅｒｎａｔｉｏｎａｌＬＬＣ。注册地：美利坚合众国加利福尼亚州斯坦尼斯洛斯郡莫德斯托法拉大道 3096 号（3096FarrarAve，Modesto，CountyofStanislaus，StateofCalifornia）。

法定代表人：黄科峰。

申请人温晓川与被申请人黄科峰、ＷＢＶＩｎｔｅｒｎａｔｉｏｎａｌＬＬＣ 申请承认和执行外国法院民事判决一案，本院于 2018 年 12 月 7 日受理后，依法组成合议庭，于 2020 年 1 月 8 日组织听证会对该申请进行了审查。申请人温晓川的委托诉讼代理人徐美倩到庭参加听证会。经本院合法传唤，黄科峰、ＷＢＶＩｎｔｅｒｎａｔｉｏｎａｌＬＬＣ 未到庭参加听证会。本案现已审查终结。

申请人温晓川申请称：WalGroup, LLC 为注册于美国加利福尼亚州洛杉矶郡的有限责任公司，温晓川为该公司的唯一股东。WBVInternationalLimited 为注册在中华人民共和国（以下简称中国）香港的公司，2018 年 6 月 15 日已登记解散。WBVInternationalLLC 为注册于美国加利福尼亚州斯坦尼斯洛斯郡的有限责任公司，目前该公司的状态为被冻结待清算解散。被申请人黄科峰系 WBVInternationalLimited、WBVInternationalLLC 公司的唯一股东。黄科峰曾于几年前想到美国做生意并找到温晓川寻求帮助，温晓川和 WBVInternationalLimited 于 2013 年 1 月共同成立公司 KMKPolymersLLC，注册资本 300000 美元，温晓川投资 105810 美元，持股比例为 35.27%，WBVInternationalLimited 持股比例为 64.73%。后双方一致同意申请人退出 KMKPolymersLLC，约定由被申请人向申请人退还股权投资款合计 110000 美元，但被申请人仅支付了 24325.49 美元，剩余 81484.51 美元投资款尚未支付。

此外，由于被申请人黄科峰刚到美国时缺乏信用度，为了 KMKPolymersLLC 公司的经营，申请人以 WalGroup, LLC 的名义于 2013 年 10 月 1 日向 Hermco, Inc. 租赁房屋场地用于 KMKPolymersLLC 公司的生产经营，并签订了租赁合同，申请人对该房屋租赁提供个人担保。申请人和 WalGroup,LLC 支付该房屋租金直到 2014 年 9 月，由于申请人要退出 KMKPolymersLLC 公司，双方约定自 2014 年 10 月起由被申请人黄科峰和 WBVInternationalLimited 向出租人支付租金，但被申请人并未按照约定向出租人支付租金，且由于不当使用对租赁房屋造成毁损。出租人 Hermco, Inc. 于 2014 年 12 月 30 日向法院提起诉讼，要求保证人温晓川和承租人 WalGroup, LLC 支付欠付租金 144365.44 美元。后双方于 2015 年 11 月 2 日达成和解协议，一致同意申请人和 WalGroup, LLC 分期向 Hermco, Inc. 支付租金 70000 美元。申请人承担保证

责任后向被申请人追索代其向 Hermco，Inc.支付的租金，但被申请人至今未予支付。

申请人和 WalGroup，LLC 于 2015 年 12 月 28 日向美国加利福尼亚州斯坦尼斯洛斯郡高等法院提起诉讼，要求被申请人黄科峰承担投资款 81484.51 美元、租金费用 70000 美元、律师费 3773.49 美元，合计损失赔偿为 155258 美元。美国加利福尼亚州斯坦尼斯洛斯郡高等法院于 2016 年 8 月 23 日作出 2018177 号缺席判决，判决黄科峰、WBVInternationalLimited、WBVInternationalLLC 向申请人支付损失费 155258 美元及诉讼费 490 美元，合计 155748 美元。该判决已经生效，被申请人未按判决履行。美国法院作出的 2018177 号判决不违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益，为维护申请人的合法权益，特请求裁定：1. 承认美国加利福尼亚州斯坦尼斯洛斯郡高等法院于 2016 年 8 月 23 日作出的 2018177 号判决在中华人民共和国境内具有法律效力；2. 根据美国加利福尼亚州斯坦尼斯洛斯郡高等法院第 2018177 号判决内容，强制被申请人给付申请人 155748 美元，计人民币 1081716.58 元（以 2018 年 11 月 21 日外汇汇率 6.9453 计）和自 2016 年 8 月 24 日起至执行终结前的逾期利息；3. 由被申请人承担本案申请和执行费用。

黄科峰、WBVInternationalLLC 未予答辩。

经审查认定：2015 年 12 月 28 日，申请人温晓川及其公司 WalGroup，LLC 作为原告向美国加利福尼亚州斯坦尼斯洛斯郡高等法院提起诉讼，要求黄科峰、WBVInternationalLimited、WBVInternationalLLC 承担投资款损失 81484.51 美元、租金 70000 美元、律师费 3773.49 美元，合计赔偿损失 155258 美元，案件编号为 2018177 号。该案原告的诉讼代理人为美国叶智良律师事务所叶智良律师。因被申请人黄科峰等于 2016 年 1 月 14 日收到法院传票及起诉状等材料后未作出答辩及回应，申请人温晓川等向法院申请缺席审判，并通过第三方主体叶智良律师事务所的 MarcosChinchilla 向被申请人黄科峰等送达了申请缺席审判的文件，并出具了送达证明。2016 年 8 月 23 日，美国加利福尼亚州斯坦尼斯洛斯郡高等法院作出缺席判决，判决被告黄科峰、WBVInternationalLimited、WBVInternationalLLC 共同向温晓川、WalGroup，LLC 支付损失费 155258 美元及诉讼费 490 美元，合计 155748 美元。8 月 26 日，申请人在美国的委托律师就上述判决办理了判决登记通知手续。后被申请人黄科峰等未履行该判决项下的金钱给付义务，申请人温晓川的债权未得到清偿。

经查，申请人温晓川与被申请人黄科峰均为中国公民，拥有中国国籍。被申请人

ＷＢＶＩｎｔｅｒｎａｔｉｏｎａｌＬＬＣ 是注册于美国加利福尼亚州的一家公司，黄科峰系该公司的唯一股东，现该公司的状态为被冻结、待清算解散。ＷＢＶＩｎｔｅｒｎａｔｉｏｎａｌＬｉｍｉｔｅｄ 公司已经注销。ＷａｌＧｒｏｕｐＬＬＣ 系申请人温晓川的一人有限公司。被申请人黄科峰的户籍所在地在浙江省宁波市，并在该市内拥有机动车辆。

本院认为，本案系申请承认和执行外国法院判决纠纷案件，根据《中华人民共和国民事诉讼法》第二百八十一条规定，外国法院作出的发生法律效力的判决、裁定，需要中华人民共和国人民法院承认和执行的，可以由当事人直接向中华人民共和国有管辖权的中级人民法院申请承认和执行，也可以由外国法院依照该国与中华人民共和国缔结或者参加的国际条约的规定，或者按照互惠原则，请求人民法院承认和执行。根据《中华人民共和国民事诉讼法》第二百八十二条规定，人民法院对申请或者请求承认和执行的外国法院作出的发生法律效力的判决、裁定，依照中华人民共和国缔结或者参加的国际条约，或者按照互惠原则进行审查后，认为不违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，裁定承认其效力，需要执行的，发出执行令，依照本法的有关规定执行。违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，不予承认和执行。本案中，被申请人黄科峰的户籍所在地及财产所在地均在浙江省宁波市，故本院对本案依法享有管辖权。

申请人温晓川在向本院递交申请承认和执行申请书时，已向本院提交经证明无误的美国加利福尼亚州斯坦尼斯洛斯郡高等法院作出的编号为 2018177 号判决副本及中文译本，符合承认和执行外国法院判决的形式要件。因美国和我国之间并未缔结也未共同参加相互承认和执行民事判决的国际条约，申请人的申请应否予以支持应依照互惠关系原则进行审查。经审查，申请人提交的证据已证实美国有承认和执行我国法院民事判决的先例存在，可以认定双方之间存在相互承认和执行民事判决的互惠关系。同时，上述判决系对申请人与被申请人之间有关股权投资及租赁保证的合同关系所作出，承认该民事判决并不违反我国法律的基本原则或者国家主权、安全、社会公共利益。经审查，上述判决中已明确记载系缺席判决，申请人在美国的委托律师于 2016 年 8 月 26 日办理了判决登记通知手续。因此，对申请人提出的承认和执行美国法院判决的请求，本院予以支持。对申请人主张的自 2016 年 8 月 24 日美国法院判决日的次日至执行终结前的逾期利息，不属于申请承认和执行外国法院判决的范畴，本院依法不予支持。

综上，依照《中华人民共和国民事诉讼法》第一百五十四条第一款第（十一）项、第二百

温晓川、黄科峰、ＷＢＶＩｎｔｅｒｎａｔｉｏｎａｌＬＬＣ申请承认与执行法院判决、仲裁裁决案件其他民事裁定书

八十一条、第二百八十二条,《最高人民法院关于适用〈中华人民共和国民事诉讼法〉的解释》第五百四十三条第一款、第五百四十六条第一款的规定,裁定如下:

一、承认并执行美利坚合众国加利福尼亚州斯坦尼斯洛斯郡高等法院第 2018177 号判决;

二、驳回申请人温晓川的其他请求。

本案申请费人民币 13217 元,公告费人民币 900 元,合计人民币 14117 元,由申请人温晓川负担 217 元,被申请人黄科峰、WBVInternationalLLC 负担 13000 元。

审判长莫爱萍

审判员王亚平

审判员方资南

二〇二〇年九月二十三日

书记员黄琼

Machine Translated by Google

# Wen Xiaochuan, Huang Kefeng, WBV International LLC applied for the

## Recognition and enforcement of court judgments, arbitration awards and other civil rulings

Trial Court: Ningbo Intermediate People's Court, Zhejiang Province

Case No.: (2018) Zhejiang 02 Xiewairen No. 6

Case: Application for recognition and enforcement of court judgments and arbitration awards

Date of judgment: September 23, 2020

Ningbo Intermediate People's Court, Zhejiang Province

Civil ruling

(2018) Zhejiang 02 Xiewai Certification No. 6

Wen Xiaochuan, Huang Kefeng, and WBV International LLC applied for recognition and enforcement of court judgments,

Other civil rulings in arbitration cases

People's Republic of China

Ningbo Intermediate People's Court, Zhejiang Province

Civil ruling

(2018) Zhejiang 02 Xiewai Certification No. 6

Applicant: Wen Xiaochuan, male, born on November 26, 1978, ethnic X, living in Zhuhai, Guangdong, People's Republic of China

Continental area.

Attorney-in-fact: Huang Jianing, lawyer of Beijing DeHeng (Hangzhou) Law Firm.

Attorney-in-fact: Xu Meiqian, lawyer of Beijing DeHeng (Hangzhou) Law Firm.

Respondent: Huang Kefeng, male, born on June 25, 1978, ethnic group X, living in Ningbo, Zhejiang Province, People's Republic of China

Beilun District.

Machine Translated by Google

Wen Xiaochuan, Huang Kefeng, WBV International LLC's application for recognition and enforcement of court judgments, arbitration awards and other civil rulings

Respondent: WBV International LLC. Place of registration: Stanislaus County, California, United States of America

3096 Farrar Ave., Modesto                              ,     Modesto     , County of Stanislaus,

State of California).

Legal representative: Huang Kefeng.

The applicant Wen Xiaochuan and the respondents Huang Kefeng and WBV International LLC applied for recognition and enforcement of a foreign court civil judgment.

This court accepted the case on December 7, 2018, formed a collegial panel in accordance with the law, and organized a hearing on January 8, 2020.

The application was reviewed. Applicant Wen Xiaochuan's attorney Xu Meiqian attended the hearing.

Huang Kefeng and WBV International LLC did not attend the hearing. The case has now been reviewed and concluded.

The applicant, Wen Xiaochuan, claimed that WalGroup, LLC is a limited liability company registered in Los Angeles County, California, USA.

WBV International Limited is a company registered in the People's Republic of China (hereinafter referred to as

WBV International LLC is a company registered in the United States.

A limited liability company in Stanislaus County, California, currently in a frozen state pending liquidation and dissolution.

The applicant Huang Kefeng is the sole shareholder of WBV International Limited and WBV International LLC.

A few years ago, he wanted to do business in the United States and found Wen Xiaochuan for help. Wen Xiaochuan and WBV International Limited established

In January 2000, they jointly established KMK Polymers LLC with a registered capital of US$300,000. Wen Xiaochuan invested US$105,810 and held

The shareholding ratio of the applicant is 35.27%, and the shareholding ratio of WBV International Limited is 64.73%.

KMKPolymersLLC, and agreed that the respondent would return the equity investment of USD 110,000 to the applicant.

Only $24,325.49 has been paid, and the remaining investment amount of $81,484.51 has not yet been paid.

In addition, because the respondent Huang Kefeng lacked credit when he first arrived in the United States, in order to operate KMKPolymersLLC,

The applicant, under the name of WalGroup, LLC, leased the premises from Hermco, Inc. on October 1, 2013 for

The applicant provided a personal guarantee for the lease of the house.

The applicant and WalGroup, LLC paid the rent for the premises until September 2014, when the applicant withdrew from KMKPolymersLLC.

The two parties agreed that from October 2014, the respondent Huang Kefeng and WBV International Limited would pay the lessor

However, the respondent did not pay the rent to the lessor as agreed and caused damage to the leased house due to improper use.

On December 30, 2014, the lessor, Hermco, Inc., filed a lawsuit with the court, requesting the guarantor, Wen Xiaochuan, and the lessee

WalGroup, LLC paid the outstanding rent of USD 144,365.44. The two parties reached a settlement agreement on November 2, 2015.

The applicant and WalGroup, LLC agreed to pay rent of USD 70,000 to Hermco, Inc. in installments. The applicant undertakes to guarantee

Machine Translated by Google

Wen Xiaochuan, Huang Kefeng, WBV International LLC's application for recognition and enforcement of court judgments, arbitration awards and other civil rulings

After the liability, the plaintiff sought to recover from the respondent the rent paid on its behalf to Hermco, Inc., but the respondent has not paid it to date.

On December 28, 2015, the applicant and WalGroup, LLC filed a lawsuit with the Superior Court of Stanislaus County, California, USA.

The court filed a lawsuit, requiring the respondent Huang Kefeng to bear the investment of US$81,484.51, rental fees of US$70,000, lawyer

The total damages were $3,773.49, and the total damages were $155,258. Stanislaus County Superior Court, California, USA

On August 23, 2016, the court issued a default judgment No. 2018177, ruling that Huang Kefeng, WBV International Limited,

WBV International LLC shall pay the applicant US$155,258 in damages and US$490 in litigation fees, totaling US$155,748.

The judgment has come into effect, but the respondent has not performed in accordance with the judgment. The judgment No. 2018177 made by the US court does not violate the People's Republic of China.

The basic principles of the laws of the country or the national sovereignty, security, and social public interests, in order to safeguard the legitimate rights and interests of the applicant, hereby request

Ruling: 1. The judgment of the Superior Court of Stanislaus County, California, U.S.A., No. 2018177, made on August 23, 2016, is recognized.

The judgment is legally binding in the People's Republic of China; 2. According to the Stanislaus County Superior Court of California, the United States

The Court's judgment No. 2018177 ordered the respondent to pay the applicant USD 155,748, or RMB 1,081,716.58 (in RMB).

The foreign exchange rate on November 21, 2018 is 6.9453) and the overdue interest from August 24, 2016 to the end of the execution;

3. The respondent shall bear the application and execution costs of this case.

Huang Kefeng and WBVInternationalLLC did not file a defense.

After review, it was determined that on December 28, 2015, the applicant Wen Xiaochuan and his company WalGroup, LLC, as the plaintiff, filed a lawsuit against the U.S.

The lawsuit was filed in the Superior Court of Stanislaus County, California, requiring Huang Kefeng, WBV International Limited,

WBV International LLC will bear the loss of investment of USD 81,484.51, rent of USD 70,000, and legal fees of USD 3,773.49.

The total compensation loss is 155,258 US dollars. The case number is 2018177. The plaintiff's litigation agent in this case is Ye Zhi of the United States.

Ye Zhiliang, a lawyer from Liang Law Firm. The respondent Huang Kefeng and others received a court summons and indictment on January 14, 2016.

The applicants, Wen Xiaochuan and others, applied to the court for a trial in absentia and, through a third-party legal entity, Ye Zhiliang Law Firm,

Marcos Chinchilla of the Law Firm served the documents for the application for trial in absentia on the respondents Huang Kefeng and others, and issued a

On August 23, 2016, the Superior Court of Stanislaus County, California, USA, issued a default judgment, ruling

Defendants Huang Kefeng, WBV International Limited, and WBV International LLC jointly filed a lawsuit against Wen Xiaochuan and Wal Group.

LLC paid damages of $155,258 and litigation fees of $490, totaling $155,748.

The attorney entrusted by the applicant handled the registration notification procedures for the above judgment. Later, the respondent Huang Kefeng and others failed to perform the monetary

The applicant Wen Xiaochuan's debt claim has not been settled.

Upon investigation, it was found that both the applicant Wen Xiaochuan and the respondent Huang Kefeng are Chinese citizens with Chinese nationality.

Machine Translated by Google

Wen Xiaochuan, Huang Kefeng, WBV International LLC's application for recognition and enforcement of court judgments, arbitration awards and other civil rulings

WBVInternationalLLC is a company registered in California, USA. Huang Kefeng is the sole shareholder of the company.

The company is currently frozen and awaiting liquidation and dissolution. WBV International Limited has been deregistered.

WalGroupLLC is a one-person limited company owned by the applicant Wen Xiaochuan. The registered permanent residence of the respondent Huang Kefeng is in Ningbo City, Zhejiang Province.

and owning a motor vehicle within the city.

This court believes that this case is a dispute over the application for recognition and enforcement of a foreign court judgment.

Article 281 of the Civil Procedure Law of the People's Republic of China provides that a judgment or ruling made by a foreign court that has legal effect requires the

Where a judgment is to be recognized and enforced by a People's Court of the People's Republic of China, the parties may directly apply to the Intermediate People's Court of the People's Republic of China that has jurisdiction over the judgment.

Recognition and enforcement may also be carried out by a foreign court in accordance with the provisions of an international treaty concluded or acceded to by that country and the People's Republic of China.

Or, based on the principle of reciprocity, request the People's Court to recognize and enforce the law.

Article 12 provides that the People's Court shall apply for or request recognition and enforcement of a legally effective judgment or ruling made by a foreign court.

According to the provisions of the International Treaties concluded or acceded to by the People's Republic of China, or in accordance with the principle of reciprocity, after review, it is found that there is no violation of

If it violates the basic principles of the laws of the People's Republic of China or the national sovereignty, security, or social public interests, the court shall recognize its validity.

If it is necessary to execute, an execution order shall be issued and the relevant provisions of this Law shall be followed.

If the case is against the sovereignty, security, or public interest of the state, it shall not be recognized or enforced.

The land and property are both located in Ningbo City, Zhejiang Province, so this court has jurisdiction over this case according to law.

When the applicant Wen Xiaochuan submitted his application for recognition and enforcement to this court, he submitted to this court the certified U.S.

A copy of the judgment No. 2018177 issued by the Superior Court of Stanislaus County, California and its Chinese translation, which meets the requirements of the application

The formal requirements for the recognition and enforcement of foreign court judgments. Since the United States and my country have not concluded or jointly participated in the mutual recognition and enforcement

The international treaty on the enforcement of civil judgments shall determine whether the applicant's application should be supported in accordance with the principle of reciprocity.

The evidence submitted by the applicant has confirmed that there is a precedent in the United States for recognizing and enforcing civil judgments of Chinese courts.

There is a reciprocal relationship of mutual recognition and enforcement of civil judgments. At the same time, the above judgment is a judgment on the relationship between the applicant and the respondent concerning the shares

The recognition of the civil judgment does not violate the basic principles of Chinese law or the state

Sovereignty, security, and social public interests. Upon review, the above judgment clearly states that it is a default judgment.

The attorney handled the registration notification of the judgment on August 26, 2016. Therefore, the applicant's application for recognition and enforcement of the U.S.

The Court supports the applicant's claim that the U.S. court ruled on August 24, 2016, the day after the ruling.

Overdue interest before the completion of execution does not fall within the scope of application for recognition and enforcement of foreign court judgments, and this court will not support it in accordance with the law.

In summary, in accordance with Article 154, paragraph 1, item (11), and Article 200 of the Civil Procedure Law of the People's Republic of China,

Machine Translated by Google

Article 81, Article 282, "Interpretation of the Supreme People's Court on the Application of the Civil Procedure Law of the People's Republic of China"

The provisions of Article 543, paragraph 1, and Article 546, paragraph 1, are ruled as follows:

1. To recognize and enforce Judgment No. 2018177 of the Superior Court of Stanislaus County, California, United States of America;

2. Reject the other requests of the applicant Wen Xiaochuan.

The application fee for this case is RMB 13,217, and the announcement fee is RMB 900, totaling RMB 14,117.

Sichuan shall bear 217 yuan, and the respondents Huang Kefeng and WBVInternationalLLC shall bear 13,000 yuan.

Presiding Judge Mo Aiping

Judge Wang Yaping

Judge Fang Zinan

September 23, 2020

Clerk Huang Qiong

# Exhibit E

*Mingan Chen v. Cal. Inv. Immigration Fund, LLC*

蒋辉、黄骏等申请承认和执行外国法院民事判决、裁定承认与执行申请审查国际司法协助裁定书

# 蒋辉、黄骏等申请承认和执行外国法院民事判决、裁定承认与执行申请审查国际司法协助裁定书

审理法院：  广东省广州市中级人民法院

案　　号：  （2019）粤 01 协外认 58 号

案　　由：  申请承认和执行外国法院民事判决、裁定

裁判日期：  2022 年 03 月 04 日

广东省广州市中级人民法院

民事裁定书

（2019）粤 01 协外认 58 号

蒋辉、黄骏等申请承认和执行外国法院民事判决、裁定承认与执行申请审查国际司法协助裁定书

中华人民共和国

广东省广州市中级人民法院

民 事 裁 定 书

(2018)粤 01 协外认 21、26、27、28、32 号

（2019）粤 01 协外认 58 号

21 号案申请人：蒋辉（英文名：HUIJIANG），女，X 族，1970 年 8 月 3 日出生，住云南省昆明市五华区。

委托诉讼代理人：吕翔，系云南德范律师事务所律师。

委托诉讼代理人：黄柳儒，系广东胜伦律师事务所律师。

26 号案申请人：黄骏（英文名：JUNHUANG），男，X 族，1972 年 11 月 4 日出生，住云南省昆明市五华区。

委托诉讼代理人：吕翔、吴鹏，均系云南德范律师事务所律师。

27 号案申请人：陈燕红（英文名：YANHONGCHEN），女，X 族，1969 年 8 月 17 日出生，住云南省昆明市西山区。

委托诉讼代理人：吕翔、吴鹏，均系云南德范律师事务所律师。

28 号案申请人：兰银山（英文名：YINSHANLAN），男，X 族，1971 年 10 月 16 日出生，住云南省昆明市五华区。

委托诉讼代理人：吕翔、吴鹏，均系云南德范律师事务所律师。

32 号案申请人：蒲治全（英文名：ZHIQUANPU），X 族，1966 年 5 月 20 日出生，住云南省昆明市西山区。

委托诉讼代理人：吕翔、吴鹏，均系云南德范律师事务所律师。

58 号案申请人：王珏(英文名：JUEWANG)，女，1976 年 12 月 13 日出生，X 族，住云南省昆明市五华区。

委托诉讼代理人：吕翔、吴鹏，均系云南德范律师事务所律师。

六案被申请人：曾芳（英文名：FANGZENG），女，X 族，1968 年 8 月 11 日出生，住广东省广州市越秀区。

委托诉讼代理人：申武潮，系广东威戈律师事务所律师。

申请人蒋辉、黄骏、陈燕红、兰银山、蒲治全、王珏与被申请人曾芳申请承认和执行美国加利福尼亚州中区美国地区法院（NTRALDISTRICTOFCALIFORNIA）编号：CaseNo.CV17-7149-MWF（RAOx）民事判决六案，本院受理后，依法分别组成合议庭进行了审查，组织当事人进行了询问，现已审查终结。

申请人蒋辉、黄骏、陈燕红、兰银山、蒲治全、王珏(以下简称：蒋辉等六人)申请称：蒋

辉等六人是美国 CIIF 案（5000 万美元诈骗案）的部分受害人。在该六案中，曾芳以想出国的中国人为目标，通过 EB5 项目为他们提供到美国的机会，策划诱导蒋辉等六人及其他受害人（均系美国民事判决案件的原告）每人投资 5 万美元-50 万美元不等和支付 4 万美元-5 万美元不等的"管理费"到所谓的洛杉矶 EB5 房地产投资项目中，但是，这些项目实际上都是虚假的，投资资金则被 CIIF、曾芳等窃走。申请人蒋辉等六人及其他受害人作为原告向美国加利福尼亚州中区美国地区法院提起了对包括被申请人曾芳在内的多名涉案被告的诉讼，该法院于 2018 年 2 月 27 日作出的编号：CaseNo.CV17-7149-MWF(RAOx)的民事判决，判令曾芳等众被告承担 2,673.04 万美元的共同和连带责任，其中蒋辉等六人均应分别获得 214 万美元赔偿。该美国民事判决已生效，但蒋辉等六人均未获得 214 万美元赔偿。曾芳是美国民事判决案件的被告之一，现居住在广州市越秀区建设大道 8 号之一 3001 房，并有可供执行的财产。美国法院作出的编号：CaseNo.CV17-7149-MWF(RAOx)民事判决不违反我国法律的基本原则和国家主权、领土完整、安全及社会利益，并且根据美国与我国相互承认和执行民事判决的互惠原则，为维护申请人的权益，根据我国《民事诉讼法》等有关法律规定，特申请承认与执行该民事判决。申请人向本院请求：1. 请求承认美国加利福尼亚州中区美国地区法院作出的编号：CaseNo.CV17-7149-MWF(RAOx)民事判决；2.请求根据第 1 项的民事判决内容，强制曾芳分别给付蒋辉、黄骏、陈燕红、兰银山、蒲治全、王珏各 214 万美元赔偿及自 2018 年 2 月 27 日起至赔偿款全部执行完毕的逾期利息；3.判令曾芳承担六案诉讼费、保全费、保全保险费和执行费用。

被申请人曾芳在六案中均答辩称：一、美国法院民事判决不应予以承认和执行。1.该民事判决违反我国法律的基本原则和社会公共利益。该美国法院民事案件是利用合同进行民事欺诈的案件，根据我国合同法，涉案合同均应认定为无效合同。蒋辉等六人除要求曾芳返还财产外，有权请求赔偿损失，但损失应以直接损失和间接损失为限。美国法院民事判决判令曾芳除赔偿蒋辉等六人投资款 5 万至 54 万美元不等外，还需赔偿蒋辉等六人各自数额接近 3 倍的 160 万美元惩罚性赔偿，这明显违背了我国法律规定的基本原则。2.蒋辉等六人在没有先向主要财产所在地、主要责任人所在地的判决作出地即美国加利福尼亚州中区美国地区法院申请执行的情况下，直接向我国法院申请承认判决和执行，违背我国社会公共利益。3.美国法院对在美国没有居所的中国公民曾芳没有司法管辖权。4.美国法院民事判决是在没有经过开庭审理不符合缺席审理的情况下作出的，违反我国民事诉讼制度。5.美国法院的民事判决书在没有依法送达的

情况下违法采用缺席审理的方式进行判决，侵犯曾芳作为外国公民参加诉讼的各种民事法律权利。6. 美国法院民事判决没有告知作为当事人的曾芳的上诉权利。7. 美国法院没有向作为外国人的曾芳依法送达判决书。8. 美国法院判决没有将真正的涉案收款人列为案件被告。二、六申请人提供的证据存在诸多问题，不能证明本案六案的申请人、被申请人与美国民事判决中的原告、被告是否为同一主体的问题。1. 申请人蒋辉、黄骏、陈燕红、兰银山、蒲治全、王珏未能证明其与涉案美国法院判决书中原告 HuiJiang、JunHuang、YanhongChen、YinshanLan、ZhiquanPu、JueWang 是否是同一个人。2. 蒋辉等六人也未能证明曾芳系涉案美国法院判决被告 FANGZENG。3. 蒋辉等六人不能提供美国法院判决书原件。4. 翻译人员张彦龙不能代表云南省翻译工作者协会，其个人翻译不能作为法院认可的翻译文本。5.《民事审判记录—概要》及其在美国法院民事案件的起诉状未经我国使领馆的公证认证，不能作为证据使用。6. 美国加州中区地区法院作出的原告湖北葛洲坝三联实业股份有限公司、湖北平湖旅游船有限公司诉被告美国罗宾逊直升机有限公司一案民事判决虽经我国法院裁定承认和执行，但不能作为认定中国与美国之间存在互惠原则的依据。7. 湖北省武汉市中级人民法院（2015）鄂武汉中民商外初字第 00026 号裁定书承认和执行美国法院判决的案例不能作为本案考虑的问题。

经审理查明：美国加利福尼亚州中区美国地区法院（NTRALDISTRICTOFCALIFORNIA）作出编号：CaseNo.CV17-7149-MWF（RAOx）民事判决。该民事判决于 2018 年 2 月 27 日生效。该民事判决原告为包括蒋辉等六人在内的十五名自然人（Plaintiffs:MINGANCHEN、YANMEIDAI、LIGE、PENGMINGGUAN、HONGJIA、HUIJIANG、YINSHANLAN、ZHIQUANPU、JUEWANG、ZIWANG、YIZHANG、CHANGDINGZHAO、JUNHUANG、YANGHONGCHEN、WEIYANG），被告为加州投资移民基金公司、陈莹莹、美国夏利士律师集团有限公司、陈达、ZhengChang、曾芳、夏利士第三集团有限合伙（Defendants:ND,LLC、VICTORIACHAN、HARRISLAWGROUP,USALLC、TATCHAN、ZHENGCHANG、FANGZENG、THEHARRISGROUPIIILP）。该民事判决记载，针对所有被告缺席判决和禁令。上述事宜根据原告要求缺席判决的动议，提交给居所位于上述法院 5A 审判庭的美国联邦地区法官迈克尔.W.菲茨杰拉德阁下（第 31 号案件进程报告）。被告加州投资移民基金公司、陈莹莹、美国夏利士律师集团有限公司、陈达、ZhengChang、曾芳、夏利士第三集团有限合伙已经按常规方式被送达了文书，没有委托律师并在本诉讼中答辩，所有被告缺席庭审已于 2017 年 12 月 12 日记录在案，原告已要求对缺席被告作出判决；已考虑过原告的动议及支持文件，显示了良好因由，根据《联邦民事诉讼规则》第 54（a）、第 55(b)(2)款、第 58(a)款及第 65(b)款规

则，特此命令、判决并宣告作出如下判决：

1. 被告就总额为 26,730,400.00 美元金额，含 6,730,400 美元特别损害赔偿金及 20,000,000 美元惩罚性损害赔偿金承担连带责任，在 15 名原告之间分配如下：a) 给原告 MinganChen2,140,000 美元，含 540,000 美元特别损害赔偿金及 1,600,000 美元一般及惩罚性损害赔偿金；b) 给原告 YanmeiDai2,140,000 美元，含 540,000 美元特别损害赔偿金及 1,600,000 美元一般及惩罚性损害赔偿金；c) 给原告 PengmingGuan2,140,000 美元，含 540,000 美元特别损害赔偿金及 1,600,000 美元一般及惩罚性损害赔偿金；d) 给原告 HongJia2,140,000 美元，含 540,000 美元特别损害赔偿金及 1,600,000 美元一般及惩罚性损害赔偿金；e) 给原告 HuiJiang2,140,000 美元，含 540,000 美元特别损害赔偿金及 1,600,000 美元一般及惩罚性损害赔偿金；f) 给原告 YinshanLan2,140,000 美元，含 540,000 美元特别损害赔偿金及 1,600,000 美元一般及惩罚性损害赔偿金；g) 给原告 ZhiquanPu2,140,000 美元，含 540,000 美元特别损害赔偿金及 1,600,000 美元一般及惩罚性损害赔偿金；h) 给原告 JueWang2,140,000 美元，含 540,000 美元特别损害赔偿金及 1,600,000 美元一般及惩罚性损害赔偿金；i) 给原告 ZiWang2,140,000 美元，含 540,000 美元特别损害赔偿金及 1,600,000 美元一般及惩罚性损害赔偿金；j) 给原告 JunHuang2,140,000 美元，含 540,000 美元特别损害赔偿金及 1,600,000 美元一般及惩罚性损害赔偿金；k) 给原告 YanhongChen2,140,000 美元，含 540,000 美元特别损害赔偿金及 1,600,000 美元一般及惩罚性损害赔偿金；l) 给原告 WeiYang246,800 美元特别损害赔偿金及 700,000 美元一般及惩罚性损害赔偿金；m) 给原告 YiZhang246,800 美元特别损害赔偿金及 700,000 美元一般及惩罚性损害赔偿金；n) 给原告 ChangdingZhao246,800 美元特别损害赔偿金及 700,000 美元一般及惩罚性损害赔偿金；o) 给原告 LiGe50,000 美元特别损害赔偿金及 300,000 美元一般及惩罚性损害赔偿金。

2. 收到了亲手或其它方式送达的实际通知的被告及其代理人被禁止：(a) 处置任何收入、资产或不动产；(b) 从不动产剥离资产净值；(c) 除非已取得法庭命令授权这种交易或处置，从他们控制的任何银行账户转出任何资金。日期：2018 年 2 月 27 日。

在六案审理过程中，经申请人蒋辉、黄骏、陈燕红、兰银山、蒲治全、王珏申请，本院作出 (2018) 粤 01 协外认 21、26、27、28、32 号民事裁定书，冻结曾芳所有的银行存款或查封、扣押其他等值财产。申请人蒋辉、黄骏、陈燕红、兰银山、蒲治全、王珏分别向本院预交财产

保全费每案人民币 5000 元。

本院认为：六案为申请承认和执行外国民商事判决。六案涉及当事人向我国法院申请承认美国加利福利亚州中区美国地区法院编号:CaseNo.CV17-7149-MWF（RAOx）民事判决。《中华人民共和国民事诉讼法》第二百八十九条（自 2022 年 1 月 1 日起施行）规定："人民法院对申请或者请求承认和执行的外国法院作出的发生法律效力的判决、裁定，依照中华人民共和国缔结或者参加的国际条约，或者按照互惠原则进行审查后，认为不违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，裁定承认其效力……"我国与美国没有缔结或者共同参加关于相互承认和执行民商事判决的国际条约，因此，应当按照互惠原则进行审查。经审查，六案当事人已提交美国法院承认和执行我国法院民商事判决的有效案例，承认本案所涉美国法院判决不违反我国法律的基本原则，也不会损害我国国家主权、安全、社会公共利益，因此，六案可以根据互惠原则承认和执行案涉美国法院民事判决，但对其中明显超出实际损失的惩罚性赔偿金部分，不予承认和执行。即本院针对蒋辉等六人的申请，部分承认和执行美国加利福尼亚州中区美国地区法院（NTRALDISTRICTOFCALIFORNIA）编号：CaseNo.CV17-7149-MWF（RAOx）民事判决，承认和执行该民事判决部分主文：被告加州投资移民基金公司、陈莹莹、美国夏利士律师集团有限公司、陈达、ZhengChang、曾芳、夏利士第三集团有限合伙就 6,730,400 美元特别损害赔偿金承担连带责任：e)给原告 HuiJiang540,000 美元特别损害赔偿金；f）给原告 YinshanLan540,000 美元特别损害赔偿金；g)给原告 ZhiquanPu540,000 美元特别损害赔偿金；h)给原告 JueWang540,000 美元特别损害赔偿金；j)给原告 JunHuang540,000 美元特别损害赔偿金；k)给原告 YanhongChen540,000 美元特别损害赔偿金。

至于申请人蒋辉等六人主张的保全保险费、执行费应由曾芳负担的问题，因保全保险费并非本案必然发生的费用，且执行上述美国民事判决产生的执行费用尚未发生，当事人可在执行阶段另行计付和处理，故本院对申请人蒋辉等六人的该项主张不予支持。

综上所述，申请人蒋辉、黄骏、陈燕红、兰银山、蒲治全、王珏申请承认和执行符合《中华人民共和国民事诉讼法》第二百八十九条（自 2022 年 1 月 1 日起施行）的规定，涉案美国法院民事判决中关于特别损害赔偿金的部分应予承认和执行。依照《中华人民共和国民事诉讼法》第二百八十九条（自 2022 年 1 月 1 日起施行）的规定，经广东省高级人民法院、最高人民法院批复，裁定如下：

对美国加利福尼亚州中区美国地区法院（NTRALDISTRICTOFCALIFORNIA）编号：CaseNo.CV17-7149-MWF（RAOx）民事判决予以部分承认和执行：承认和执行该民事判决部分主文：被告加州投资移民基金公司、陈莹莹、美国夏利士律师集团有限公司、陈达、ZhengChang、曾芳、夏利士第三集团有限合伙就 6,730,400 美元特别损害赔偿金承担连带责任：e)给原告 HuiJiang（21 号案申请人蒋辉）540,000 美元特别损害赔偿金；f）给原告 YinshanLan（28 号案申请人兰银山）540,000 美元特别损害赔偿金；g)给原告 ZhiquanPu(32 号案申请人蒲治全)540,000 美元特别损害赔偿金；h)给原告 JueWang（58 号案申请人王珏）540,000 美元特别损害赔偿金；j)给原告 JunHuang（26 号案申请人黄骏）540,000 美元特别损害赔偿金；k)给原告 YanhongChen（27 号案申请人陈燕红）540,000 美元特别损害赔偿金。

六案申请费各人民币 500 元，(2018)粤 01 协外认 21、26、27、28、32 号五案财产保全费各人民币 5000 元，均由被申请人曾芳负担。

审判长 罗 毅

审判员 陈晓红

审判员 张 宾

二〇二二年三月四日

书记员 黄绍朗

伍静怡

陈蕴琦

International Judicial Assistance Decision on the Application for Recognition and Enforcement of Civil Judgments and Rulings of Foreign Courts by Jiang Hui, Huang Jun, etc.

Jiang Hui, Huang Jun and others applied for recognition and enforcement of foreign court civil judgments and rulings

Please review the international judicial assistance decision

Trial Court: Guangzhou Intermediate People's Court, Guangdong Province

Case No.: (2019) Yue 01 Xie Wai Ren No. 58

Case: Application for recognition and enforcement of civil judgments and rulings of foreign courts

Date of judgment: March 4, 2022

Guangzhou Intermediate People's Court, Guangdong Province

Civil ruling

(2019) Guangdong 01 Xiewai Certification No. 58

Jiang Hui, Huang Jun and others applied for recognition and enforcement of foreign civil judgments and rulings. Review of application for recognition and enforcement of foreign civil judgments and rulings. International judicial assistance

Ruling

People's Republic of China

Guangzhou Intermediate People's Court, Guangdong Province

Civil ruling

(2018) Guangdong 01 Xiewai Certification No. 21, 26, 27, 28, 32

(2019) Guangdong 01 Xiewai Certification No. 58

Applicant in Case No. 21: Jiang Hui (English name: HUIJIANG), female, ethnic X, born on August 3, 1970, living in Yunnan Province

Wuhua District, Kunming City.

Attorney-in-fact: Lv Xiang, a lawyer at Yunnan Defan Law Firm.

Attorney-in-fact: Huang Liuru, lawyer of Guangdong Shenglun Law Firm.

Machine Translated by Google

Applicant in Case No. 26: Huang Jun (English name: JUNHUANG), male, ethnic X, born on November 4, 1972, living in Yunnan

Wuhua District, Kunming City, Guangdong Province.

Attorneys-in-fact: Lv Xiang and Wu Peng, both lawyers from Yunnan Defan Law Firm.

Applicant in Case No. 27: Chen Yanhong (English name: YANHONGCHEN), female, ethnic X, born on August 17, 1969, living in

Xishan District, Kunming City, Yunnan Province.

Attorneys-in-fact: Lv Xiang and Wu Peng, both lawyers from Yunnan Defan Law Firm.

Applicant in Case No. 28: Lan Yinshan (English name: YINSHANLAN), male, ethnic X, born on October 16, 1971, living in

Wuhua District, Kunming City, Yunnan Province.

Attorneys-in-fact: Lv Xiang and Wu Peng, both lawyers from Yunnan Defan Law Firm.

Applicant in Case No. 32: Pu Zhiquan (English name: ZHIQUANPU), ethnic X, born on May 20, 1966, living in Yunnan Province

Xishan District, Kunming City.

Attorneys-in-fact: Lv Xiang and Wu Peng, both lawyers from Yunnan Defan Law Firm.

Applicant in Case No. 58: Wang Jue (English name: JUEWANG), female, born on December 13, 1976, ethnic X, living in Yunnan Province

Wuhua District, Kunming City.

Attorneys-in-fact: Lv Xiang and Wu Peng, both lawyers from Yunnan Defan Law Firm.

Applicant in case 6: Zeng Fang (English name: FANG ZENG), female, ethnic X, born on August 11, 1968, living in Guangzhou, Guangdong Province

Yuexiu District of the city.

Attorney-in-fact: Shen Wuchao, a lawyer at Guangdong Weigo Law Firm.

Applicants Jiang Hui, Huang Jun, Chen Yanhong, Lan Yinshan, Pu Zhiquan, Wang Jue and Respondent Zeng Fang apply for recognition and enforcement of the U.S.

U.S. District Court for the Central District of California Case No. CV17-7149-MWF.

After accepting the six civil judgment cases (RAOx), this court formed a collegial panel to review them and organized the parties to conduct inquiries.

Question: The review has now been completed.

Applicants Jiang Hui, Huang Jun, Chen Yanhong, Lan Yinshan, Pu Zhiquan, and Wang Jue (hereinafter referred to as Jiang Hui and the other six persons) applied for the following:

Machine Translated by Google

International Judicial Assistance Decision on the Application for Recognition and Enforcement of Civil Judgments and Rulings of Foreign Courts by Jiang Hui, Huang Jun, etc.

Hui and six others were some of the victims of the US CIIF case (a $50 million fraud case).

The Chinese were targeted, and the EB5 program was used to provide them with opportunities to come to the United States. The scheme was designed to induce Jiang Hui and six other victims (all

The plaintiffs in the U.S. civil judgment case) invested between $50,000 and $500,000 each and paid between $40,000 and $50,000

The "management fees" of the so-called Los Angeles EB5 real estate investment projects, however, these projects are actually fake and the investors

The investment funds were stolen by CIIF, Zeng Fang and others. Applicant Jiang Hui and six other victims filed a lawsuit against the California

The United States District Court for the Middle District of California filed a lawsuit against several defendants involved in the case, including the respondent Zeng Fang.

The civil judgment numbered Case No. CV17-7149-MWF (RAOx) issued on February 27, 2011 ordered Zeng Fang and other defendants to bear

The joint and several liability of the defendants was US$26.7304 million, of which Jiang Hui and the other six persons were to receive US$2.14 million in compensation.

The civil judgment has come into effect, but Jiang Hui and the other six have not received the $2.14 million in compensation. Zeng Fang is one of the defendants in the U.S. civil judgment case.

1. Currently living in Room 3001, No. 8 Jianshe Avenue, Yuexiu District, Guangzhou, and has property available for execution.

Case No. CV17-7149-MWF (RAOx) The civil judgment does not violate the basic principles of our country's laws and national sovereignty and territorial integrity.

integrity, security and social interests, and in accordance with the reciprocal principle of mutual recognition and enforcement of civil judgments between the United States and my country, in order to protect the applicant

In order to protect the rights and interests of the applicant, in accordance with the relevant laws and regulations of my country's Civil Procedure Law, we hereby apply for recognition and enforcement of the civil judgment.

The person hereby requests: 1. To recognize the judgment rendered by the United States District Court for the Central District of California No.

Case No. CV17-7149-MWF (RAOx) Civil Judgment; 2. Request that Zeng Fang be forced to

Pay Jiang Hui, Huang Jun, Chen Yanhong, Lan Yinshan, Pu Zhiquan, and Wang Jue USD 2.14 million in compensation each and from February 27, 2018

3. Order Zeng Fang to bear the litigation fees, preservation fees, preservation insurance premiums and execution fees for the six cases.

cost.

In all six cases, the respondent Zeng Fang argued that: 1. Civil judgments of U.S. courts should not be recognized and enforced.

The judgment violates the basic principles of our country's laws and the public interest. The civil case in the US court was a civil fraud committed by using a contract

In this case, according to my country's Contract Law, all the contracts involved should be deemed invalid. In addition to requiring Zeng Fang to return the property, Jiang Hui and the other six people also

The U.S. court civil judgment ordered Zeng Fang to pay compensation for losses.

In addition to the investment of 50,000 to 540,000 US dollars by Jiang Hui and the other six people, they also need to compensate Jiang Hui and the other six people for nearly three times the amount of 1.6 million US dollars.

2. Jiang Hui and the other six did not first pay the principal property

The place of the judgment made is the place where the principal responsible person is located, that is, the United States District Court for the Central District of California, United States.

Under such circumstances, directly applying to the Chinese courts for recognition and enforcement of judgments is against the public interest of my country.

Zeng Fang, a Chinese citizen with a residence, has no jurisdiction. 4. The civil judgment of the US court is not in accordance with the lack of trial.

5. The civil judgment of the US court is not served in accordance with the law.

The court illegally adopted the method of trial in absentia to make a judgment, infringing on Zeng Fang's various civil rights as a foreign citizen to participate in the lawsuit.

6. The civil judgment of the U.S. court did not inform Zeng Fang of her right to appeal. 7. The U.S. court did not inform Zeng Fang of her right to appeal.

Zeng Fang served the judgment in accordance with the law. 8. The US court judgment did not list the real recipient of the money involved in the case as the defendant in the case.

There are many problems with the evidence provided by the petitioner, and it cannot prove that the applicants and respondents in the six cases are the same as the original plaintiffs in the U.S. civil judgments.

1. Applicants Jiang Hui, Huang Jun, Chen Yanhong, Lan Yinshan, Pu Zhiquan and Wang Jue failed to

Prove that they are related to the plaintiffs Hui Jiang, Jun Huang, Yanhong Chen, Yinshan Lan,

2. Jiang Hui and the other six people also failed to prove that Zeng Fang was sentenced by the US court involved in the case.

3. Jiang Hui and the other six people cannot provide the original judgment of the US court. 4. Translator Zhang Yanlong cannot represent Yunnan

Provincial Translators Association, whose personal translation cannot be used as a translation text recognized by the court. 5. "Civil Trial Record-Summary" and

The indictment in the civil case in the US court has not been notarized and authenticated by the Chinese embassy or consulate and cannot be used as evidence.

The Central District Court ruled that the plaintiffs Hubei Gezhouba Sanlian Industrial Co., Ltd. and Hubei Pinghu Tourist Boat Co., Ltd. would

Although the civil judgment in the Robinson Helicopter Co., Ltd. case was recognized and enforced by the Chinese court, it cannot be used as a basis for determining whether China

There is a basis for the principle of reciprocity between China and the United States. 7. Wuhan Intermediate People's Court of Hubei Province (2015) Hubei Wuhan Zhongmin Shangwai Chuzi

The cases concerning recognition and enforcement of judgments of the United States courts in Order No. 00026 cannot be considered as issues in this case.

After trial, it was found that the United States District Court for the Central District of California (NTRALDISTRICTOFCALIFORNIA) made

No.: Case No. CV17-7149-MWF (RAOx) Civil Judgment. This civil judgment came into effect on February 27, 2018.

The plaintiffs were fifteen natural persons including Jiang Hui and six others (Plaintiffs: MINGANCHEN, YANMEIDAI, LIGE,

PENGMINGGUANÿHONGJIAÿHUIJIANGÿYINSHANLANÿZHIQUANPÜÿJUEWANGÿZIWANGÿYIZHANGÿ

CHANGDINGZHAO, JUNHUANG, YANGHONGCHEN, WEIYANG), the defendants are California Investment Immigration Fund Company, Chen Ying

Ying, Harris Law Group Limited, Chen Da, Zheng Chang, Zeng Fang, Harris Third Group Limited Partnership

(Defendants: ND, LLC, VICTORIACHAN, HARRISLAWGROUP, USALLC, TATCHAN, ZHENGCHANG,

FANG ZENG, THE HARRIS GROUP III LP). The civil judgment records a default judgment and injunction against all defendants.

The case should be filed with United States District Judge Michael J., sitting in Courtroom 5A of said court, upon plaintiff's motion for default judgment.

Mr. Kerr W. Fitzgerald (Case Progress Report No. 31). Defendants California Investment Immigration Fund, Chen Yingying,

The Harris Law Firm, Chen Da, Zheng Chang, Zeng Fang and the Harris Third Group Limited Partnership have already

The defendants were served with documents in the form of a lawyer and did not appoint a lawyer to defend themselves in this lawsuit. All defendants were absent from the trial in December 2017.

On the record on the 12th, plaintiff has requested judgment against defendant in absentia; plaintiff's motion and supporting documents have been considered, showing

Good cause is required under Federal Rules of Civil Procedure 54(a), 55(b)(2), 58(a), and 65(b)

It is hereby ordered, adjudged, and declared as follows:

1. The defendants are seeking damages in the total amount of US$26,730,400.00, including special damages of US$6,730,400 and US$20,000,000 USD in punitive damages shall be jointly and severally liable and allocated among the 15 plaintiffs as follows: a) to Plaintiff MinganChen: $2,140,000, including $540,000 in special damages and $1,600,000 in general and punitive damages.

b) $2,140,000 to plaintiff YanmeiDai, including $540,000 in special damages and $1,600,000 in general and punitive damages; c) $2,140,000 to plaintiff Pengming Guan, including $540,000 $2,140,000 in special damages and $1,600,000 in general and punitive damages; d) $2,140,000 in special damages to the plaintiff HongJia US$, including US$540,000 in special damages and US$1,600,000 in general and punitive damages; e) Plaintiff Hui Jiang $2,140,000, including $540,000 in special damages and $1,600,000 in general and Punitive damages; f) $2,140,000 to plaintiff YinshanLan, including $540,000 in special damages and $1,600,000 in general and punitive damages; g) $2,140,000 to plaintiff Zhiquan Pu, including $540,000 $1,600,000 in special damages and $1,600,000 in general and punitive damages; h) to Plaintiff JueWang $2,140,000, including $540,000 in special damages and $1,600,000 in general and punitive damages Damages: i) US$2,140,000 to plaintiff ZiWang, including US$540,000 in special damages and US$1,600,000 in j) $2,140,000 to Plaintiff Jun Huang, including $540,000 in special damages. special damages and $1,600,000 in general and punitive damages; k) $2,140,000 to plaintiff Yanhong Chen $540,000, including $1,600,000 in general and punitive damages; l) Plaintiff Wei Yang was awarded $246,800 in special damages and $700,000 in general and punitive damages; m) Plaintiff Yi Zhang was awarded $246,800 in special damages and $700,000 in general and punitive damages; n) Plaintiff Changding Zhao, $246,800 in special damages and $700,000 in general and punitive damages; o) Award to Plaintiff LiGe $50,000 in special damages and $300,000 in general and punitive damages.

2. A defendant and his agents who have received actual notice, whether delivered by hand or otherwise, are prohibited from: (a) disposing of any income, (b) divestment of net assets from real property; (c) unless a court order authorizing such transaction or disposal is obtained, Transfer any funds from any bank account they control. Date: February 27, 2018.

During the trial of the six cases, upon application by the applicants Jiang Hui, Huang Jun, Chen Yanhong, Lan Yinshan, Pu Zhiquan and Wang Jue, this court made The Civil Rulings No. (2018) Yue 01 Xie Wai Ren 21, 26, 27, 28, and 32 were issued to freeze or seal up all of Zeng Fang's bank deposits.

Seize other properties of equal value. Applicants Jiang Hui, Huang Jun, Chen Yanhong, Lan Yinshan, Pu Zhiquan and Wang Jue shall respectively pay their properties in advance to this court.

International Judicial Assistance Decision on the Application for Recognition and Enforcement of Civil Judgments and Rulings of Foreign Courts by Jiang Hui, Huang Jun, etc.

The security fee is RMB 5,000 per case.

This court believes that the six cases are applications for recognition and enforcement of foreign civil and commercial judgments.

Civil judgment of the United States District Court for the Middle District of California, Case No. CV17-7149-MWF (RAOx).

Article 289 of the Civil Procedure Law of the People's Republic of China (effective from January 1, 2022) provides that "the people's court shall

A legally effective judgment or ruling made by a foreign court for which recognition and enforcement is requested or requested shall be made in accordance with the provisions of the Contracting Parties of the People's Republic of China.

international treaties concluded or acceded to by the People's Republic of China, or after review based on the principle of reciprocity, it is considered that the

This principle or national sovereignty, security, social public interests, the ruling recognizes its validity..." my country has not concluded or

The parties jointly participate in the international treaty on mutual recognition and enforcement of civil and commercial judgments, and therefore, should be reviewed in accordance with the principle of reciprocity.

After review, the parties in the six cases have submitted to the U.S. courts effective cases of recognition and enforcement of civil and commercial judgments of Chinese courts, recognizing the

The US court ruling does not violate the basic principles of Chinese law, nor will it harm my country's national sovereignty, security, and social public interests.

Therefore, the six cases can recognize and enforce the civil judgments of the U.S. courts in accordance with the principle of reciprocity, but the civil judgments of the U.S. courts that obviously exceed the actual losses are

The punitive damages awarded by the Court shall not be recognized or enforced. That is, in response to the application of Jiang Hui and six other persons, this Court shall partially recognize and enforce the

U.S. District Court for the Central District of California Case No. CV17-7149-MWF

(RAOx) Civil Judgment, recognizing and enforcing the main text of the civil judgment: Defendants California Investment Immigration Fund, Chen Yingying,

The Harris Law Group Limited, Chen Da, Zheng Chang, Zeng Fang and the Harris Third Group Limited Partnership received 6,730.

$400 special damages and assume joint and several liability: e) $540,000 special damages to plaintiff Hui Jiang; f)

Special damages of US$540,000 to plaintiff YinshanLan; g) Special damages of US$540,000 to plaintiff ZhiquanPu

h) $540,000 in special damages to plaintiff Jue Wang; j) $540,000 in special damages to plaintiff Jun Huang

k) special damages of US$540,000 to plaintiff Yanhong Chen.

As for the claim by the applicants Jiang Hui and other six that the preservation insurance premium and execution fee should be borne by Zeng Fang,

If the costs are not necessarily incurred in this case and the execution costs of the above-mentioned U.S. civil judgment have not yet been incurred, the parties may

The amount will be calculated and handled separately at this stage, so this court does not support the claim made by the applicant Jiang Hui and other five persons.

In summary, the applicants Jiang Hui, Huang Jun, Chen Yanhong, Lan Yinshan, Pu Zhiquan and Wang Jue's application for recognition and enforcement complies with the provisions of the

According to Article 289 of the Civil Procedure Law of the People's Republic of China (effective from January 1, 2022), the U.S.

The part of the court's civil judgment concerning special damages shall be recognized and enforced.

The provisions of Article 289 of the Law on the Administration of the People's Republic of China on the Protection of the People's Republic of China (effective from January 1, 2022) have been reviewed and approved by the Guangdong High People's Court and the Supreme People's Court.

The Civil Court approved the ruling and made the following decision:

IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA No.

Case No.CV17-7149-MWF (RAOx) Civil judgment is partially recognized and enforced: Recognize and enforce part of the main points of the civil judgment

Text: Defendant California Investment Immigration Fund, Chen Yingying, Harris Law Group, Inc., Chen Da, Zheng Chang,

Zeng Fang and Harris Third Group Limited Partnership shall be jointly and severally liable for special damages of US$6,730,400: e) to the plaintiff

Hui Jiang (applicant Jiang Hui in case No. 21) US$540,000 in special damages; f) to plaintiff Yinshan Lan (

g) to plaintiff Zhiquan Pu (applicant Pu Zhi

h) Special damages of US$540,000 to plaintiff Jue Wang (applicant Wang Jue in Case No. 58)

j) Special damages of USD 540,000 to plaintiff Jun Huang (applicant in case No. 26, Huang Jun); k)

Special damages of US$540,000 were awarded to plaintiff Yanhong Chen (Case No. 27 applicant Chen Yanhong).

Application fee for each of the six cases is RMB 500, and property preservation fee for the five cases (2018) Yue 01 Xie Wai Ren 21, 26, 27, 28, 32 is RMB 500.

RMB 5,000 each, both to be borne by the respondent Zeng Fang.

Presiding Judge Luo Yi

Judge Chen Xiaohong

Judge Zhang Bin

March 4, 2022

Secretary Huang Shaolang

Wu Jingyi

Chen Zhenqi

# Exhibit F

*Yeqing Xia v. Fang Zeng*

# 夏叶青、曾芳申请承认和执行外国法院民事判决、裁定承认与执行申请审查国际司法协助裁定书

审理法院：　广东省广州市中级人民法院

案　　号：　（2019）粤 01 协外认 22 号

案　　由：　申请承认和执行外国法院民事判决、裁定

裁判日期：　2022 年 03 月 07 日

广东省广州市中级人民法院

民事裁定书

（2019）粤 01 协外认 22 号

夏叶青、曾芳申请承认和执行外国法院民事判决、裁定承认与执行申请审查国际司法协助裁定书

中华人民共和国

广东省广州市中级人民法院

民 事 裁 定 书

（2019）粤 01 协外认 22 号

申请人：夏叶青（英文名：YEQINGXIA），男，1955 年 12 月 23 日出生，X 族，住云南省昆明市五华区。

委托代理人：吕翔，云南德范律师事务所律师。

委托代理人：吴鹏，云南德范律师事务所律师。

被申请人：曾芳（英文名：FANGZENG），女，1968 年 8 月 11 日出生，X 族，住广东省广州市越秀区。

夏叶青、曾芳申请承认和执行外国法院民事判决、裁定承认与执行申请审查国际司法协助裁定书

委托代理人：申武潮，广东威戈律师事务所律师。

申请人夏叶青（英文名：YEQINGXIA）与被申请人曾芳（英文名：FANGZENG）申请承认和执行美国加利福尼亚州洛杉矶县高等法院（SUPERIORCOURTOFCALIFORNIA,COUNTYOFLOSANGELES）作出的案件号为BC661793民事判决纠纷一案，本院受理后依法组成合议庭进行了审查，组织当事人进行了询问，现已审查终结。

申请人夏叶青申请称，1.请求承认和执行美国加利福尼亚州洛杉矶县高等法院于2018年5月15日作出的案件号为BC661793的民事判决；2.请求依据美国加利福尼亚州洛杉矶县高等法院于2018年5月15日作出的案件号为BC661793的民事判决内容，强制曾芳给付夏叶青206.017375万美元赔偿（按2019年4月1日美元兑人民币汇率6.7057，折合人民币1381.5万元）和自2018年5月15日起至赔偿款全部清偿完毕的逾期利息；3.判令曾芳承担本案的诉讼费、保全费、保全保险费和执行费。事实和理由：夏叶青系美国CIIF移民诈骗案件的受害人之一，曾芳策划诱导夏叶青及其他人每人投资50万美元到所谓的洛杉矶EB-5房地产投资项目中，该些项目实际是假的，投资资金则被加利福尼亚投资移民基金公司（简称CIIF）和曾芳等人窃取、占为己有。2017年5月19日，包括夏叶青在内的多名原告向美国加利福尼亚州洛杉矶县高等法院提起了对包括曾芳在内的多名涉案被告的诉讼，案号为BC661793，美国加利福尼亚州洛杉矶县高等法院对包括曾芳在内的多名被告进行了传唤，于2018年5月15日作出民事判决，判令全部被告向夏叶青承担共同赔偿206.017375万美元的责任。该判决已进行了备案登记，因曾芳及其他被告未在美国相关法律规定的期限内提出上诉或申请撤销，现BC661793号判决已发生法律效力，但夏叶青至今未获得任何赔偿。曾芳宣称其在CIIF担任董事长职务，参与、策划和实施了整个EB-5项目的欺诈行为，且在美国加利福尼亚州拥有大量的不动产，根据美国相关法律规定，美国加利福尼亚州洛杉矶县高等法院对曾芳享有管辖权，该法院作出的BC661793号判决未违反我国法律的基本原则和国家主权、领土完整、安全及社会利益。综上，根据美国与我国相互承认和执行民事判决的互惠原则及《中华人民共和国民事诉讼法》等有关法律的规定，曾芳作为BC661793号判决的被告之一，现居住在广州市越秀区建设大道8号之一3001房，在中国有可供执行的财产，广州市中级人民法院具备管辖本案的法定条件。现夏叶青申请承认和执行美国加利福尼亚州洛杉矶县高等法院作出的案件号为BC661793的民事判决，请求法院予以支持。

被申请人曾芳答辩称：其不同意夏叶青的申请，夏叶青的申请缺乏足够的事实和依据，也不符合我国法律的规定。第一，承认和执行外国法院民事判决、裁定是两个主体，只有先承认以后才能执行，夏叶青在本案中同时提出，这不符合常理，也没有法律依据。第二，夏叶青在本案中要求曾芳承担保全费缺乏依据。第三，夏叶青所提交的BC661793民事判决书，只有认证的复印件，没有提供原件，这不符合常理：因作为案件的一方当事人没有提供原件，其认为，这说明夏叶青不是该美国案件的当事人，要不就是夏叶青有可能就该案已在美国申请执行，相关判决书原件作为主张权利的原始法律凭证被美国收取。BC661793民事判决虽然经过认证，但所有的领事馆认证只对境外形成材料中签字、印章进行认证，对文件的内容不进行认证，其不认可该份判决书。第四，涉案美国法院判决书没有明确的原、被告主体信息资料，不符合我国民诉法关于诉讼案件要有明确的被告（当然包括身份信息）的规定。从BC661793民事判决看，完全无法证实该案的原、被告的基本信息，因此无法确定本案的申请人夏叶青与被申请人曾芳就是BC661793民事判决书中的原、被告。BC661793民事判决没有原告的诉讼请求的内容，也没有美国法院所查明的事实、理由、法律依据，故其对BC661793判决书的结果不予认可。BC661793民事判决也没有有关当事人的上诉权利、期限的告知事项，也没有该判决是否生效的证明。第五，关于涉案美国判决书的翻译问题。翻译牵强地把原、被告的中文名字强行与美国法院判决书的英文对应，这不是唯一的。BC661793民事判决原文中原告英文名称是YeqingXia，而申请人护照上的名字是XIAYEQING；被申请人中文名字是曾芳，与判决书上的FangZeng也无法确定是同一人；翻译件中将VICTORIACHAN直接译为陈莹莹毫无依据。根据BC661793民事判决书的中文翻译件，原告为夏叶青等，被告为加州移民公司等，均显示单一个体；而该份判决的附件却又反映出来原告为多人、被告为包括陈莹莹、陈达、曾芳等对个主体。该美国法院判决书共两页，尾部又有附件，且载明"此附件可能同其他任何司法委员会表格一同使用"，其据此认为该份判决书不符合我国法律的基本原则，不能反映以事实为依据，以法律为准绳。该判决反映出是缺席审理判决，但在该判决书中的被告曾芳被认同为本案的被申请人曾芳，而从该判决书的内容中没有任何反映是否符合缺席审理及依法送达外国人的任何表述。第六，夏叶青申请的事实理由完全与客观事实相违背。事实上，据曾芳了解，夏叶青已取得美国绿卡。夏叶青与昆明劳伦斯中介公司签订中介合约时，双方有约定如果移民不成，夏叶青是可以向昆明劳伦斯公司主张退款。即便夏叶青投资移民不成功，其也是能找劳伦斯公司提出退款要求，而不应在美国法院主张其权利。第七，其认为，中美之间没有签订互惠协议，

也没有互惠原则。从现有的个案看，双方之间有承认对方法院的判决，也有不承认对方法院的判决，不能因单个案件就确认存在互惠原则。最后，中美关系的现状，双方的国家利益、安全多方面显示国家都在保护自己，涉案美国法院判决如果被广州市中级人民法院予以认可，其认为，这不符合现阶段的国家利益和社会公共利益。综上，请求裁决不予承认该份判决。

经审查认定：美国加利福尼亚州洛杉矶县高等法院（SUPERIORCOURTOFCALIFORNIA,COUNTYOFLOSANGELES）作出案件号为 BC661793 关于原告夏叶青等人诉被告加州投资移民基金公司等一案的民事判决。该民事判决于 2018 年 5 月 15 日生效。该民事判决载明：JingWang 律师代理原告夏叶青等人。原告为夏叶青等人（Plaintiffs:YEQINGXIA,anindual。）、被告为加州投资移民基金公司、陈莹莹、陈达、曾芳等（Defendants:nd, LLC, y;VICTORIACHAN, ESQ ,anindual;TATCHAN, anindual;FANGZENG, anindual…）。该法院经缺席审判、考虑了原告的书面说明作出如下生效判决：附录 5a 中所提及被告必须偿付原告夏叶青：赔偿金 1060000 美元、诉讼费 173.75 美元、惩罚性损害赔偿 1000000 美元，总计 2060173.75 美元。附录 5a 载明：此附件可能同其他任何司法委员会表格一同使用。加州投资移民基金公司，一家加利福尼亚州的有限责任公司；陈莹莹律师；陈达，个人；曾芳，个人。[ATTACHMENT（Number）:FUND, LLC, y;VICTORIACHAN, ESQ, anindual;andFANGZENG, anindual]。（如果本附录相关条目是承担伪证罪风险做出的，则本附件中的所有说明都是承担伪证罪风险做出的。）该民事判决由司法官丹尼尔 S. 墨菲签署。

在本案审查过程中，经申请人夏叶青提出财产保全申请，本院作出（2019）粤 01 协外认 22 号民事裁定书，冻结被申请人曾芳所有的银行存款或查封，扣押其他等值财产。夏叶青向本院预交财产保全费人民币 5000 元。

本院认为：本案为申请承认和执行外国民商事判决纠纷。申请人夏叶青向本院申请承认和执行美国加利福利亚州洛杉矶县高等法院作出的案件号为 BC661793 民事判决。《中华人民共和国民事诉讼法》第二百八十九条（自 2022 年 1 月 1 日起施行）规定："人民法院对申请或者请求承认和执行的外国法院作出的发生法律效力的判决、裁定，依照中华人民共和国缔结或者参加的国际条约，或者按照互惠原则进行审查后，认为不违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，裁定承认其效力……"我国与美国没有缔结或者共同

参加关于相互承认和执行民商事判决的国际条约，因此，应当按照互惠原则进行审查。经审查，本案当事人已提交美国法院承认和执行我国法院民商事判决的有效案例，承认本案所涉美国法院民商事判决不违反我国法律的基本原则，也不会损害我国国家主权、安全、社会公共利益，因此，本案可以根据互惠原则承认和执行涉案美国法院民事判决，但对其中明显超出实际损失的惩罚性赔偿金部分，不予承认和执行。本院针对夏叶青的申请，对美国加利福尼亚州洛杉矶县高等法院（SUPERIORCOURTOFCALIFORNIA,COUNTYOFLOSANGELES）BC661793 民事判决中有关损害赔偿金和诉讼费的部分主文予以承认和执行：即被告（加州投资移民基金公司、陈莹莹、陈达、曾芳）必须偿付原告夏叶青损害赔偿金 1060000 美元、诉讼费 173.75 美元。

至于夏叶青关于保全保险费、执行费应由曾芳负担的主张，因保全保险费并非本案必然发生的费用，且执行涉案 BC661793 民事判决产生的执行费用尚未发生，当事人可在执行阶段另行计付和处理，故本院对夏叶青的该项主张不予支持。

综上所述，申请人夏叶青申请承认和执行符合《中华人民共和国民事诉讼法》第二百八十九条（自 2022 年 1 月 1 日起施行）的规定，本院对涉案美国加利福尼亚州洛杉矶县高等法院 BC661793 民事判决中关于损害赔偿金、诉讼费的部分主文予以承认和执行。依照《中华人民共和国民事诉讼法》第二百八十九条（自 2022 年 1 月 1 日起施行）的规定，经报请广东省高级人民法院、最高人民法院批复，裁定如下：

对 美 国 加 利 福 尼 亚 州 洛 杉 矶 县 高 等 法 院 （SUPERIORCOURTOFCALIFORNIA,COUNTYOFLOSANGELES）作出的案件号为 BC661793 民事判决予以部分承认和执行，承认和执行该民事判决部分主文：附录 5a 中所提及被告（加州投资移民基金公司、陈莹莹、陈达、曾芳）必须偿付原告夏叶青：损害赔偿金 1060000 美元、诉讼费 173.75 美元。

本案申请费人民币 500 元、财产保全费人民币 5000 元，均由被申请人曾芳负担。

审判长 罗 毅

审判员 张 宾

审判员 陈晓红

二〇二二年三月七日

书记员 伍静怡

黄绍朗

陈蕴琦

Xia Yeqing and Zeng Fang applied for recognition and enforcement of civil judgments and rulings of foreign courts

Please review the international judicial assistance decision

Trial Court: Guangzhou Intermediate People's Court, Guangdong Province

Case No.: (2019) Yue 01 Xie Wai Ren No. 22

Case: Application for recognition and enforcement of civil judgments and rulings of foreign courts

Date of judgment: March 7, 2022

Guangzhou Intermediate People's Court, Guangdong Province

Civil ruling

(2019) Guangdong 01 Xiewai Certification No. 22

Xia Yeqing and Zeng Fang applied for recognition and enforcement of foreign court civil judgments and rulings. Review of application for recognition and enforcement of foreign court civil judgments and rulings. International judicial assistance

Ruling

People's Republic of China

Guangzhou Intermediate People's Court, Guangdong Province

Civil ruling

(2019) Guangdong 01 Xiewai Certification No. 22

Applicant: Xia Yeqing (English name: YEQINGXIA), male, born on December 23, 1955, ethnic X, living in Kunming, Yunnan Province.

Wuhua District, Ming City.

Attorney-in-fact: Lv Xiang, lawyer of Yunnan Defan Law Firm.

Attorney-in-fact: Wu Peng, lawyer of Yunnan Defan Law Firm.

Respondent: Zeng Fang (English name: FANG ZENG), female, born on August 11, 1968, ethnic group X, living in Guangzhou, Guangdong Province

Yuexiu District of the city.

Machine Translated by Google

Attorney-in-fact: Shen Wuchao, lawyer of Guangdong Weige Law Firm.

Applicant Xia Yeqing (English name: YEQINGXIA) and respondent Zeng Fang (English name: FANGZENG) apply for recognition and

Executed in the Superior Court of California, Los Angeles County, United States (SUPERIOR COURTO FCALIFORNIA, COUNTY OF LOS ANGELES)

The case number is BC661793. This court accepted the case and formed a collegial panel to review it.

The parties have been questioned and the review has now been completed.

Applicant Xia Yeqing applied for recognition and enforcement of the judgment of the Superior Court of Los Angeles County, California, USA, in 2018.

15 May 2011, case number BC661793; 2. Request for a civil judgment under the Los Angeles County Superior Court of California, United States.

The court issued a civil judgment on May 15, 2018, case number BC661793, forcing Zeng Fang to pay Xia Yeqing

206.017375 million US dollars in compensation (based on the exchange rate of US dollar to RMB 6.7057 on April 1, 2019, equivalent to RMB 1381.5

1. The court shall order Zeng Fang to bear the litigation costs of this case.

Litigation fees, preservation fees, preservation insurance premiums and execution fees. Facts and reasons: Xia Yeqing was a victim of the US CIIF immigration fraud case.

Zeng Fang, one of the persons involved, plotted to induce Xia Yeqing and others to invest $500,000 each in the so-called Los Angeles EB-5 real estate investment project.

In fact, these projects were fake, and the investment funds were used by the California Investment Immigration Fund (CIIF) and the former

Fang and others stole and appropriated the property for themselves. On May 19, 2017, several plaintiffs, including Xia Yeqing, filed a lawsuit against the State of California, USA.

The Los Angeles County Superior Court filed a lawsuit against several defendants involved in the case, including Zeng Fang, with case number BC661793.

The Los Angeles County Superior Court in California summoned several defendants, including Zeng Fang, and made a judgment on May 15, 2018.

A civil judgment was issued, ordering all defendants to jointly compensate Xia Yeqing USD 206.017375 million.

Since Zeng Fang and other defendants did not file an appeal or apply for revocation within the time limit prescribed by relevant U.S. laws,

The judgment of BC661793 has come into force, but Xia Yeqing has not received any compensation so far.

He participated in, planned, and implemented the fraud of the entire EB-5 project and has a large number of

According to relevant U.S. laws, the Los Angeles County Superior Court of California has jurisdiction over Zeng Fang.

The judgment No. BC661793 made by the court did not violate the basic principles of our country's laws and the sovereignty, territorial integrity, security and social order of our country.

In summary, according to the principle of reciprocity between the United States and my country in respect of mutual recognition and enforcement of civil judgments and the Civil Law of the People's Republic of China,

According to the provisions of the Civil Procedure Law and other relevant laws, Zeng Fang, as one of the defendants in Judgment No. BC661793, currently resides in Yuexiu District, Guangzhou City.

Room 3001, No. 8 Jianshe Avenue, has properties in China that can be executed. The Guangzhou Intermediate People's Court has jurisdiction over this case.

Statutory conditions. Xia Yeqing now applies to recognize and enforce the case number issued by the Los Angeles County Superior Court of California, USA

The civil judgment of BC661793 is hereby upheld by the court.

The respondent Zeng Fang argued that she disagreed with Xia Yeqing's application, which lacked sufficient facts and basis.

It does not conform to the provisions of Chinese law. First, the recognition and enforcement of foreign court civil judgments and rulings are two different entities.

Xia Yeqing also proposed in this case that it can only be executed later, which is not in line with common sense and has no legal basis.

In this case, there is no basis for requiring Zeng Fang to bear the security fee. Third, the civil judgment of BC661793 submitted by Xia Yeqing only recognized

The copy of the certificate was not provided, which was not reasonable: as one of the parties to the case did not provide the original, he believed that

This means that Xia Yeqing is not a party to the US case, or Xia Yeqing may have applied for enforcement of the case in the US.

The original judgment was collected by the United States as the original legal evidence for claiming rights.

However, all consular certification only certifies the signatures and seals in the documents formed abroad, and does not certify the contents of the documents.

I do not recognize this judgment. Fourth, the judgment of the US court involved in the case does not have clear information about the plaintiff and the defendant, which does not conform to my

The Civil Procedure Law stipulates that litigation cases must have clear defendants (including identity information, of course).

It is impossible to confirm the basic information of the plaintiff and defendant in this case, so it is impossible to determine the applicant Xia Yeqing and the respondent in this case.

Zeng Fang is the plaintiff and defendant in the BC661793 civil judgment. The BC661793 civil judgment does not contain the plaintiff's litigation request.

There are no facts, reasons or legal basis ascertained by the US court, so it does not recognize the result of the BC661793 judgment.

BC661793 The civil judgment does not include any information about the parties' right to appeal, the time limit, or whether the judgment is effective.

Fifth, regarding the translation of the American judgment involved in the case. The translation forcibly merged the Chinese names of the plaintiff and the defendant into the American

The English equivalent of the judgment of the State Court is not the only one. BC661793 The English name of the plaintiff in the original civil judgment is

YeqingXia, while the name on the applicant's passport is XIAYEQING; the Chinese name of the respondent is Zeng Fang, which is different from the name on the judgment.

Fang Zeng is also unable to confirm that they are the same person; the translation of VICTORIACHAN as Chen Yingying is completely groundless.

BC661793 Chinese translation of the civil judgment, the plaintiff is Xia Yeqing et al., the defendant is California Immigration Company et al., both show a single

Individuals; however, the appendix to the judgment shows that the plaintiffs are multiple persons and the defendants include Chen Yingying, Chen Da, Zeng Fang, etc.

The US court judgment is two pages long, with an appendix at the end, and it states that "this appendix may be used in conjunction with any other judicial committee

The judgement was not in line with the basic principles of Chinese law and could not reflect the fact-based judgment.

The judgment reflects that it was a trial in absentia, but the defendant Zeng Fang in the judgment was identified as the defendant in this case.

The respondent is Zeng Fang, but the content of the judgment does not reflect whether it complies with the requirements of trial in absentia and serving foreigners in accordance with the law.

Sixth, the factual reasons for Xia Yeqing's application are completely contrary to the objective facts. In fact, according to Zeng Fang's understanding, Xia Yeqing

When Xia Yeqing signed the agency contract with Kunming Lawrence Agency, the two parties agreed that if immigration failed,

Xia Yeqing can ask for a refund from Kunming Lawrence Company. Even if Xia Yeqing's investment immigration is unsuccessful, he can still ask Lawrence Company for help.

Seventh, it believes that there is no reciprocal agreement between China and the United States.

Machine Translated by Google

Xia Yeqing and Zeng Fang's application for recognition and enforcement of foreign civil judgments and rulings, international judicial assistance ruling on the review of the application for recognition and enforcement of foreign civil judgments and rulings

There is no reciprocity principle. From the existing cases, some parties recognize the judgments of the other party's courts, while others do not recognize the judgments of the other party's courts.

The judgment cannot confirm the existence of the principle of reciprocity based on a single case. Finally, the current state of Sino-US relations, the national interests and security of both sides

Many aspects show that countries are protecting themselves. If the judgment of the US court in the case is recognized by the Guangzhou Intermediate People's Court, its recognition

This is not in line with the national interests and social public interests at this stage. In summary, I request that the judgment not be recognized.

Upon review and determination: Los Angeles County Superior Court, California, United States

(SUPERIOR COURTO FCALIFORNIA, COUNTY OF LO SANGELES) filed case number BC661793 regarding plaintiff Xia Ye

The civil judgment in the case of Qing et al. v. California Investment Immigration Fund, et al. The civil judgment came into effect on May 15, 2018.

The civil judgment states: Attorney JingWang represented the plaintiffs Xia Yeqing and others. The plaintiffs are Xia Yeqing and others.

(Plaintiffs: YEQINGXIA, an independent.), the defendants are California Investment Immigration Fund Company, Chen Yingying, Chen Da, Zeng Fang

wait                         ÿ                                   Defendants:nd,LLC,y;VICTORIACHAN,ESQ                                                                                     ,

aninidual;TATCHAN, aninidual;FANGZENG, aninidual…). The court held a trial in absentia and considered the plaintiff's

The written statement makes the following effective judgment: The defendant mentioned in Appendix 5a must pay the plaintiff Xia Yeqing: compensation of US$1,060,000

$173.75 in litigation costs and $1,000,000 in punitive damages, totaling $2,060,173.75.

Note: This attachment may be used in conjunction with any other Judicial Committee form. California Investment Immigrant Fund, Inc., a California

Limited Liability Company in Asia; Attorney Yingying Chen; Chen Da, individual; Zeng Fang, individual.

(Number): FUND, LLC, y; VICTORIACHAN, ESQ, aninidual; and FANG ZENG, aninidual]. (If this

If the relevant entries are made under the risk of perjury, all statements in this attachment are made under the risk of perjury.

The civil judgment was signed by Attorney Daniel S. Murphy.

During the review of this case, the applicant Xia Yeqing filed an application for property preservation, and this court made a decision (2019) Yue 01 Xie Wai Certification

Civil Ruling No. 22, freezing or sealing all bank deposits of the respondent Zeng Fang and seizing other properties of equal value.

This court prepays a property preservation fee of RMB 5,000.

This court believes that this case is a dispute over the application for recognition and enforcement of a foreign civil and commercial judgment. Applicant Xia Yeqing applied to this court for recognition and

Enforcement of the civil judgment of case number BC661793 issued by the Superior Court of Los Angeles County, California, USA.

Article 289 of the Civil Procedure Law of the People's Republic of China (effective from January 1, 2022) provides that "the people's court shall

A legally effective judgment or ruling made by a foreign court for which recognition and enforcement is requested shall be made in accordance with the

international treaties to which it is a party, or after review based on the principle of reciprocity, it is considered that the treaty does not violate the basic principles of the laws of the People's Republic of China.

or national sovereignty, security, or social public interests, shall rule to recognize its validity..." my country and the United States have not concluded or jointly

Participation in international treaties on mutual recognition and enforcement of civil and commercial judgments should therefore be reviewed in accordance with the principle of reciprocity.

The parties in this case have submitted to the U.S. courts effective cases of recognition and enforcement of civil and commercial judgments of Chinese courts, recognizing that the U.S. law involved in this case

The court's civil and commercial judgments do not violate the basic principles of our country's laws, nor will they harm our country's national sovereignty, security, and social public interests.

Therefore, the civil judgment of the U.S. court involved in this case can be recognized and enforced on the basis of the principle of reciprocity, but the judgment that obviously exceeds the actual loss will be

The punitive damages awarded by the court are not recognized and enforced.

County Superior Court (SUPERIOR COURTO FCALIFORNIA, COUNTY OF LO SANGELES) BC661793 Civil judgment concerning

The partial principal for damages and litigation costs is recognized and enforced: namely, the defendants (California Investment Immigration Fund, Chen Yingying,

Chen Da and Zeng Fang) must pay plaintiff Xia Yeqing damages of US$1,060,000 and litigation costs of US$173.75.

As for Xia Yeqing's claim that the preservation insurance premium and execution fee should be borne by Zeng Fang, since the preservation insurance premium is not necessarily a matter of this case,

If the execution costs of the civil judgment in question BC661793 have not yet occurred, the parties may make another

Therefore, this court does not support Xia Yeqing's claim.

In summary, the applicant Xia Yeqing's application for recognition and enforcement complies with Article 280 of the Civil Procedure Law of the People's Republic of China.

9 (effective from January 1, 2022), this court has decided on the case of the Los Angeles County Superior Court of California, USA

BC661793 The part of the main text of the civil judgment concerning damages and litigation costs shall be recognized and enforced.

According to Article 289 of the Civil Procedure Law of the People's Republic of China (which will come into effect on January 1, 2022), after being reported to the Guangdong Provincial High Court,

The People's Court at the provincial level and the Supreme People's Court replied and ruled as follows:

Superior Court of California, Los Angeles County

The civil judgment in case number BC661793 issued by SUPERIORCOURTOF CALIFORNIA, COUNTY OF LO SANGELES was

By partial recognition and enforcement, recognize and enforce part of the main text of the civil judgment: the defendant mentioned in Appendix 5a (California Investment Immigrant

The fund company, Chen Yingying, Chen Da, and Zeng Fang) must pay plaintiff Xia Yeqing: damages of US$1,060,000, litigation costs

USD 173.75.

The application fee of RMB 500 and the property preservation fee of RMB 5,000 in this case shall both be borne by the respondent Zeng Fang.

Presiding Judge Luo Yi

Judge Zhang Bin

Judge Chen Xiaohong

Machine Translated by Google

March 7, 2022

Clerk Wu Jingyi

Huang Shaolang

Chen Yunqi

# Exhibit G

*Anqin Wang v. Fang Zeng*

# 王安勤、曾芳申请承认与执行法院判决、仲裁裁决案件承认与执行申请审查国际司法协助裁定书

**审理法院：** 广东省广州市中级人民法院

**案　　号：** （2019）粤 01 协外认 3 号

**案　　由：** 申请承认与执行法院判决、仲裁裁决案件

**裁判日期：** 2022 年 03 月 04 日

广东省广州市中级人民法院

民事裁定书

（2019）粤 01 协外认 3 号

王安勤、曾芳申请承认与执行法院判决、仲裁裁决案件承认与执行申请审查国际司法协助裁定书

中华人民共和国

广东省广州市中级人民法院

民 事 裁 定 书

(2019)粤 01 协外认 3 号

申请人：王安勤（英文名：ANQINWANG），男，X 族，1968 年 8 月 15 日出生，住云南省曲靖市麒麟区。

委托诉讼代理人：吕翔、吴鹏，均系云南德范律师事务所律师。

被申请人：曾芳（英文名：FANGZENG），女，X 族，1968 年 8 月 11 日出生，住广东省广州市越秀区。

委托诉讼代理人：申武潮，广东威戈律师事务所律师。

申请人王安勤与被申请人曾芳申请承认和执行美国加利福尼亚州中区美国地区法院（NTRALDISTRICTOFCALIFORNIA）编号：CaseNo.CV-17-08936-MWF（RAOx）民事判决一案，本院于 2019 年 1 月 2 日立案。本院依法组成合议庭进行了审查，组织当事人进行了询问，现已审查终结。

申请人王安勤申请称：王安勤是美国 CIIF 案（5000 万美元诈骗案）的部分受害人。在该案中，曾芳以想出国的中国人为目标，通过 EB5 项目为他们提供到美国的机会，策划诱导王安勤（美国民事判决原告）投资 50 万美元、4 万美元的"管理费"和 2 万美元律师费到所谓的洛杉矶 EB5 房地产投资项目中，但是，这些项目实际上都是虚假的，投资资金则被 CIIF、曾芳等窃走。申请人王安勤作为原告向美国加利福尼亚州中区美国地区法院提起了对包括被申请人曾芳在内的多名涉案被告的诉讼，该法院于 2018 年 7 月 30 日作出的编号：CaseNo.CV-17-08936-MWF(RAOX)的民事判决，判令曾芳等众被告承担 180 万美元的共同和连带责任，该判决已生效，但王安勤未获得 180 万美元赔偿。曾芳是美国民事判决被告之一，现居住在广州市越秀区建设大马路 8 号之一 3001 房，并有可供执行的财产。美国法院作出的编号：CaseNo.CV-17-08936-MWF(RAOX)民事判决不违反我国法律的基本原则和国家主权、领土完整、安全及社会利益，并且根据美国与我国相互承认和执行民事判决的互惠原则，为维护申请人的权益，根据我国《民事诉讼法》等有关法律规定，特申请承认与执行该民事判决。申请请求：1. 请求承认美国加利福尼亚州中区美国地区法院民事判决编号：CaseNo.CV-17-08936-MWF(RAOX)；2.请求根据第 1 项的民事判决内容，强制曾芳给付王安勤 180 万美元赔偿及自 2018 年 2 月 27 日起至赔偿款全部执行完毕的逾期利息；3.判令曾芳承担本案保全费、保全保险费和执行费用。

被申请人曾芳答辩称：一、美国法院民事判决不应予以承认和执行。1.该民事判决违反我国法律的基本原则和社会公共利益。本案是利用合同进行民事欺诈的案件，根据我国合同法，该合同为无效合同。王安勤除要求曾芳返还财产外，有权请求赔偿损失，但损失应以直接损失和间接损失为限。美国民事判决曾芳除赔偿王安勤投资款 56 万美元外，还需赔偿数额接近 3 倍的 124 万美元惩罚性赔偿，明显违背了我国法律规定的基本原则。2.王安勤没有先向主要财产所在地、主要责任人所在地的判决作出地美国加利福尼亚州中区美国地区法院申请执行的情况下，直接向我国法院申请承认判决和执行，违背我国社会公共利益。3.美国法院对在美国没

有居所的中国公民曾芳没有司法管辖权。4. 美国法院民事判决是在没有经过开庭审理不符合缺席审理的情况下作出的，违反我国民事诉讼制度。5. 美国法院的民事判决书在没有依法送达的情况下违法采用缺席审理的方式判决，侵犯曾芳作为外国公民参加诉讼的各种民事法律权利。6. 美国法院判决书没有告知作为当事人的曾芳的上诉权利。7. 美国法院没有向作为外国人曾芳依法送达判决书。8. 美国法院判决没有将真正的涉案收款人列为案件被告。二、申请人提供的证据存在诸多问题，不能证明申请人与被申请人是否是同一个人的问题。1. 申请人王安勤未能证明其与判决书原告 AnqinWang 是否是同一个人。2. 王安勤也未能证明曾芳系该判决被告 FANGZENG。3. 王安勤不能提供美国法院民事判决书原件。4. 翻译人员张彦龙不能代表云南省翻译工作者协会，其个人翻译不能作为法院认可的翻译文本。5. 《民事审判记录-概要》及其在美国法院民事案件的起诉状未经我国使领馆的公证认证，不能作为证据适用。6. 美国加州中区美国地区法院承认和执行"原告湖北葛洲坝三联实业股份有限公司、湖北平湖旅游船有限公司诉被告美国罗宾逊直升机有限公司"案不能作为认定互惠原则的依据。7. 湖北省武汉市中级人民法院（2015）鄂武汉中民商外初字第 00026 号裁定书承认和执行美国法院判决的案例不能作为本案考虑问题。

经审理查明：美国加利福尼亚州中区美国地区法院（NTRALDISTRICTOFCALIFORNIA）作出编号：CaseNo.CV-17-08936-MWF（RAOx）民事判决。该民事判决于 2018 年 7 月 30 日生效。该民事判决原告（Plaintiffs:ANQINWANG）、被告加州投资移民基金有限公司、陈莹莹、美国夏利士律师集团有限公司、陈达、ZHENGCHANG 曾芳、夏利士集团有限合伙（Defendants:ND,LLC、VICTORIACHAN、HARRISLAWGROUP,USALLC、TATCHAN、ZHENGCHANG、FANGZENG、HARRISGROUPLP）。该民事判决记载，修订的针对所有被告的修改缺席判决和禁令。上述事宜根据原告要求缺席判决的申请，提交给上述法院 5A 审判庭的美国地区法官迈克尔.W.菲茨杰拉德阁下（第 31 号、第 45 号案件进程报告）。被告陈莹莹、陈达、曾芳、加州投资移民基金有限公司、美国夏利士律师集团有限公司已经按常规方式被送达了文书，但没有委托律师并在本诉讼中答辩。他们的缺席庭审已于 2018 年 12 月 12 日、2018 年 6 月 20 日和 2018 年 6 月 26 日记录在案，原告现要求对缺席被告作出缺席判决；已考虑过原告的动议及支持文件，显示了良好因由，根据《联邦民事诉讼规则》第 54（a）、第 55（b）（2）款、第 58（a）款及第 65（b）款规则，特此命令、判决并裁定作出如下判决：1. 被告就总额为 1,800,000.00 美元金额，含 560,000 美元特别损害赔偿金及 1,240,000 美元惩罚性损害赔偿金，承担连带责任。2. 收到了亲手或其它方式送

王安勤、曾芳申请承认与执行法院判决、仲裁裁决案件承认与执行申请审查国际司法协助裁定书

达的实际通知的被告及其代理人被禁止：(a)处置任何收入、资产或不动产；(b)从不动产剥离资产净值；(c)除非被告和他们的代理已取得法庭命令授权这种交易或处置，从他们控制的任何银行账户转出任何资金。日期：2018 年 7 月 30 日。

在本案审理过程中，经申请人王安勤申请，本院于 2019 年 3 月 27 日作出(2019)粤 01 协外认 3 号民事裁定书，冻结曾芳名下价值人民币 12312000 元的银行存款或查封、扣押其他等值财产。申请人王安勤预交财产保全费 5000 元。

本院认为：本案为申请承认和执行外国商事判决。本案涉及当事人向我国法院申请承认和执行美国加利福尼亚州中区美国地区法院（NTRALDISTRICTOFCALIFORNIA）作出编号：CaseNo.CV-17-08936-MWF（RAOx）民事判决。《中华人民共和国民事诉讼法》第二百八十九条（自 2022 年 1 月 1 日起施行）规定："人民法院对申请或者请求承认和执行的外国法院作出的发生法律效力的判决、裁定，依照中华人民共和国缔结或者参加的国际条约，或者按照互惠原则进行审查后，认为不违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，裁定承认其效力。"我国与美国没有缔结或者共同参加关于相互承认和执行民商事判决的国际条约，因此，应当按照互惠原则进行审查。经审查，本案当事人已提交美国法院承认和执行我国法院民商事判决的有效案例，承认本案所涉美国法院判决不违反我国法律的基本原则，也不会损害我国国家主权、安全、社会公共利益，因此，本案可以根据互惠原则承认和执行案涉美国法院民事判决，但对其中明显超出实际损失的惩罚性赔偿金部分，不予承认和执行。即部分承认和执行美国加利福尼亚州中区美国地区法院（NTRALDISTRICTOFCALIFORNIA）编号：CaseNo.CV-17-08936-MWF（RAOx）民事判决，承认和执行该民事判决部分主文：被告加州投资移民基金有限公司、陈莹莹、美国夏利士律师集团有限公司、陈达、ZHENGCHANG、曾芳、夏利士集团有限合伙就 560,000.00 美元特别损害赔偿金承担连带责任。

至于申请人王安勤主张的保全保险费、执行费应由曾芳负担的问题，因保全保险费并非本案必然发生的费用，且执行上述美国民事判决产生的执行费用尚未发生，当事人可在执行阶段另行计付和处理，故本院对申请人王安勤的该项主张不予支持。

综上所述，申请人王安勤申请承认和执行符合《中华人民共和国民事诉讼法》第二百八十九条（自 2022 年 1 月 1 日起施行）的规定，案涉美国民商事判决应予部分承认和执行。依照《中华人民共和国民事诉讼法》第二百八十九条（自 2022 年 1 月 1 日起施行）的规定，经报

请广东省高级人民法院、最高人民法院批复，裁定如下：

对美国加利福尼亚州中区美国地区法院（NTRALDISTRICTOFCALIFORNIA）编号：CaseNo.CV-17-08936-MWF（RAOx）民事判决予以部分承认和执行。承认和执行该民事判决部分主文：被告加州投资移民基金有限公司、陈莹莹、美国夏利士律师集团有限公司、陈达、ZHENGCHANG、曾芳、夏利士集团有限合伙就560,000.00美元特别损害赔偿金承担连带责任。

本案申请费人民币500元，财产保全费人民币5000元，均由被申请人曾芳负担。

审判长　罗　毅

审判员　张　宾

审判员　陈晓红

二〇二二年三月四日

书记员　黄绍朗

伍静怡

陈蕴琦

Wang Anqin and Zeng Fang applied for recognition and enforcement of court judgments and arbitration awards

Please review the international judicial assistance decision

Trial Court: Guangzhou Intermediate People's Court, Guangdong Province

Case No.: (2019) Yue 01 Xie Wai Ren No. 3

Case: Application for recognition and enforcement of court judgments and arbitration awards

Date of judgment: March 4, 2022

Guangzhou Intermediate People's Court, Guangdong Province

Civil ruling

(2019) Guangdong 01 Xiewai Certification No. 3

Wang Anqin and Zeng Fang applied for recognition and enforcement of court judgments and arbitration awards. Review of application for recognition and enforcement of cases. International judicial assistance

Ruling

People's Republic of China

Guangzhou Intermediate People's Court, Guangdong Province

Civil ruling

(2019) Guangdong 01 Xiewai Certification No. 3

Applicant: Wang Anqin (English name: ANQINWANG), male, ethnic X, born on August 15, 1968, living in Qu, Yunnan Province

Qilin District, Jing City.

Attorneys-in-fact: Lv Xiang and Wu Peng, both lawyers from Yunnan Defan Law Firm.

Respondent: Zeng Fang (English name: FANG ZENG), female, ethnic X, born on August 11, 1968, living in Yue

Show area.

Attorney-in-fact: Shen Wuchao, lawyer of Guangdong Weigo Law Firm.

Machine Translated by Google

Petitioner Wang Anqin and Respondent Zeng Fang apply for recognition and enforcement of the United States District Court for the Central District of California

(NTRALDISTRICTOFCALIFORNIA) No.: Case No. CV-17-08936-MWF (RAOx) Civil Judgment Case, this

The court filed the case on January 2, 2019. The court formed a collegial panel to conduct an examination and organized the parties to conduct an inquiry.

The review is concluded.

Applicant Wang Anqin claimed that he was a victim of the US CIIF case (a $50 million fraud case).

In the case, Zeng Fang targeted Chinese people who wanted to go abroad and provided them with opportunities to go to the United States through the EB5 program, planning to induce Wang An

Qin (the plaintiff in the U.S. civil judgment) invested $500,000, $40,000 in "management fees" and $20,000 in legal fees into the so-called

However, these projects are actually fake, and the investment funds are used by CIIF,

Fang et al. The applicant, Wang Anqin, as the plaintiff, filed a lawsuit against the defendants, including

The court filed a lawsuit against several defendants including Zeng Fang on July 30, 2018, numbered:

Case No. CV-17-08936-MWF (RAOX) civil judgment, ordering Zeng Fang and other defendants to bear joint and several liabilities of US$1.8 million

The judgment has come into effect, but Wang Anqin did not receive the $1.8 million in compensation. Zeng Fang was one of the defendants in the U.S. civil judgment and now lives in

Lives in Room 3001, No. 8, Jianshe Road, Yuexiu District, Guangzhou, and has property available for execution. Number made by the US court:

Case No. CV-17-08936-MWF (RAOX) The civil judgment does not violate the basic principles of our country's laws and national sovereignty, territorial integrity,

security and social interests, and in accordance with the reciprocal principle of mutual recognition and enforcement of civil judgments between the United States and my country, in order to protect the applicant's

In accordance with the Civil Procedure Law and other relevant laws and regulations of my country, we hereby apply for recognition and enforcement of the civil judgment. Application request:

1. Request for Recognition of Civil Judgment No.:

Case No. CV-17-08936-MWF (RAOX); 2. Request that Zeng Fang be forced to pay Wang Anqin according to the civil judgment in item 1

1.8 million USD in compensation and overdue interest from February 27, 2018 until the full payment of compensation is paid; 3. Zeng Fang is ordered to bear

The preservation fees, preservation insurance premiums and execution costs in this case.

The respondent Zeng Fang argued that: 1. The civil judgment of the US court should not be recognized and enforced. 1. The civil judgment violated our

The basic principles of Chinese law and the public interest of society. This case is a case of civil fraud using a contract. According to my country's Contract Law,

The contract is invalid. In addition to requiring Zeng Fang to return the property, Wang Anqin has the right to request compensation for losses, but the losses should be based on direct losses.

The U.S. civil judgment ordered Zeng Fang to pay nearly $30,000 in addition to the $560,000 in compensation Wang Anqin invested.

1.24 million USD, which is twice the amount of punitive damages, clearly violates the basic principles of Chinese law.

The United States District Court for the Central District of California, the place where the judgment was made, where the property is located and where the main responsible person is located, applies for execution

Under such circumstances, directly applying to the Chinese courts for recognition and enforcement of judgments is against the public interest of my country.

Zeng Fang, a Chinese citizen with a residence, has no jurisdiction. 4. The civil judgment of the US court is not in accordance with the lack of trial.

5. The civil judgment of the US court is not served in accordance with the law.

Under such circumstances, the court illegally adopted a trial in absentia to make a judgment, infringing upon Zeng Fang's various civil law rights as a foreign citizen to participate in the litigation.

6. The U.S. court judgment did not inform Zeng Fang of her right to appeal. 7. The U.S. court did not give Zeng Fang, a foreigner,

The judgment was served in accordance with the law. 8. The US court judgment did not list the real recipient of the payment involved in the case as the defendant in the case.

There are many problems with the evidence, and it is not possible to prove whether the applicant and the respondent are the same person.

1. Prove whether he is the same person as Anqin Wang, the plaintiff in the judgment. 2. Wang Anqin also failed to prove that Zeng Fang is the defendant in the judgment.

FANG ZENG. 3. Wang Anqin cannot provide the original civil judgment of the US court. 4. Translator Zhang Yanlong cannot represent Yunnan Province in translating

The translation of the Civil Trial Records-Summary and its

The indictment of a civil case in a U.S. court cannot be used as evidence if it has notarized and authenticated by a Chinese embassy or consulate.

The U.S. District Court recognized and enforced the "Plaintiffs Hubei Gezhouba Sanlian Industrial Co., Ltd. and Hubei Pinghu Tourist Boat Co., Ltd.

The case of "v. Robinson Helicopter Co., Ltd." cannot be used as a basis for determining the principle of reciprocity.

The case of recognition and enforcement of judgments of the United States court cannot be made into a case of

Consider the issues for this case.

After trial, it was found that the United States District Court for the Central District of California (NTRALDISTRICTOFCALIFORNIA) made

No.: Case No. CV-17-08936-MWF (RAOx) Civil judgment. The civil judgment came into effect on July 30, 2018.

Civil judgment Plaintiffs: ANQINWANG, defendants California Investment Immigration Fund Co., Ltd., Chen Yingying, American Xia

Defendants: ND, LLC,

VICTORIACHAN, HARRISLAWGROUP,USALLC, TATCHAN, ZHENGCHANG, FANGZENG, HARRISGROUPLP).

The civil judgment records the amended default judgment and injunction against all defendants.

The application for adjudication was filed with the Honorable Michael W. Fitzgerald, United States District Judge, in Court Section 5A of said court (No. 31,

Case Progress Report No. 45). Defendants Chen Yingying, Chen Da, Zeng Fang, California Investment Immigration Fund Co., Ltd., and American Harris

Lawyers Group, Inc. has been served with process in the usual manner but has not retained counsel to defend this action.

The hearings in absentia were recorded on December 12, 2018, June 20, 2018 and June 26, 2018.

Request for default judgment against the defaulting defendant; having considered plaintiff's motion and supporting documents, showing good cause, pursuant to the Federal

Pursuant to Rules 54(a), 55(b)(2), 58(a), and 65(b) of the United States Rules of Civil Procedure, it is hereby ordered and declared that

The following judgment is made: 1. The defendant is ordered to pay a total of US$1,800,000.00, including special damages of US$560,000.

1,240,000 USD in punitive damages and bear joint and several liability.

Machine Translated by Google

Wang Anqin and Zeng Fang applied for recognition and enforcement of court judgments and arbitration awards and reviewed the application for recognition and enforcement of international judicial assistance

Defendants who have received actual notice of the termination of the Agreement and their agents are prohibited from: (a) disposing of any income, assets, or real property; (b) divesting any

(c) unless the defendants and their agents have obtained a court order authorizing such transaction or disposition,

No funds were transferred from any bank account. Date: July 30, 2018.

During the trial of this case, upon application by the applicant Wang Anqin, this court made a decision on March 27, 2019 (2019) Yue 01 Xie

The Foreign Recognition No. 3 Civil Ruling freezes the bank deposits worth RMB 12,312,000 in the name of Zeng Fang or seals and seizes other

The applicant Wang Anqin prepaid a property preservation fee of RMB 5,000.

This court believes that this case is an application for recognition and enforcement of a foreign civil and commercial judgment.

and Enforcement of the United States District Court for the Central District of California (NTRALDISTRICTOFCALIFORNIA) No.:

Case No. CV-17-08936-MWF (RAOx) Civil Judgment. Article 289 of the Civil Procedure Law of the People's Republic of China

  (Effective from January 1, 2022) provides that: "The people's court shall make a decision on the application or request for recognition and enforcement by a foreign court.

The legally effective judgments and rulings of the People's Republic of China shall be governed by international treaties concluded or acceded to by the People's Republic of China, or by reciprocity.

After reviewing the principles, it is considered that it does not violate the basic principles of the laws of the People's Republic of China or the national sovereignty, security, social public

my country and the United States have not concluded or jointly participated in any treaty on the mutual recognition and enforcement of civil and commercial judgments.

Therefore, it should be reviewed in accordance with the principle of reciprocity.

and effective cases of enforcement of civil and commercial judgments of Chinese courts, recognizing that the judgment of the US court involved in this case does not violate the basic principles of Chinese law.

It will not harm my country's national sovereignty, security, and social public interests. Therefore, this case can be recognized and enforced on the basis of the principle of reciprocity.

The case involved a civil judgment of a U.S. court, but the punitive damages that clearly exceeded the actual losses were not recognized or enforced.

TO BE RECOGNIZED IN PART AND ENFORCEMENT OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA No.:

Case No. CV-17-08936-MWF (RAOx) Civil Judgment, Recognition and Enforcement of Part of the Civil Judgment: Defendant California Investment

Immigration Fund Co., Ltd., Yingying Chen, Harris Law Group, Inc., Da Chen, Zheng Chang, Fang Zeng, and Xia Li

The Shi Group Limited Partnership is jointly and severally liable for special damages of US$560,000.00.

As for the claim by the applicant Wang Anqin that the preservation insurance premium and execution fee should be borne by Zeng Fang, since the preservation insurance premium is not

The costs that will inevitably be incurred in the case, and the execution costs of the above-mentioned U.S. civil judgment have not yet been incurred, the parties can

The payment and processing will be done separately, so this court does not support the applicant Wang Anqin's claim.

In summary, the applicant Wang Anqin's application for recognition and enforcement complies with Article 280 of the Civil Procedure Law of the People's Republic of China.

According to Article 9 (which will come into effect on January 1, 2022), the U.S. civil and commercial judgment involved in the case should be partially recognized and enforced.

  Article 289 of the Civil Procedure Law of the People's Republic of China (effective from January 1, 2022) stipulates that

Wang Anqin and Zeng Fang applied for recognition and enforcement of court judgments and arbitration awards and reviewed the application for recognition and enforcement of international judicial assistance

Please reply to the Guangdong Provincial High People's Court and the Supreme People's Court and rule as follows:

IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA No.

The civil judgment of Case No. CV-17-08936-MWF (RAOx) is partially recognized and enforced.

Main article: Defendants California Investment Immigration Fund Co., Ltd., Chen Yingying, American Harris Law Group Co., Ltd., Chen Da,

ZHENGCHANG, Zeng Fang and Harris Group Limited Partnership shall bear joint and several liability for special damages of USD 560,000.00.

The application fee in this case is RMB 500 and the property preservation fee is RMB 5,000, both of which shall be borne by the respondent Zeng Fang.

Presiding Judge Luo Yi

Judge Zhang Bin

Judge Chen Xiaohong

March 4, 2022

Secretary Huang Shaolang

Wu Jingyi

Chen Zhenqi