**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CONG TAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 C 5003 |
| | ) | |
| | ) | Magistrate Judge M. David Weisman |
| XIANGHUO, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant moves for a protective order allowing it to designate one document as attorney's-eyes-only. For the reasons stated herein, the motion [95] is granted. Status hearing set for 4/22/26 at 9:15 a.m. and joint status report setting forth the current status of all fact discovery due by noon on 4/21/26.

In response to Plaintiff's Amended Set of Requests for Production and Interrogatories, Defendant produced Document Production 002, which includes a single document containing Defendant's sales data ("Disputed Material"). Defendant marked the document as attorney's-eyes-only ("AEO"), and Plaintiff disputes the designation. Defendant moves for a protective order under Federal Rule of Civil Procedure 26(c)(1)(G), which authorizes a court, for good cause, to issue an order requiring that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." According to Defendant, "the disputed spreadsheet is a non-public compilation of historical, order-level commercial data reflecting Xianghuo's operations, strategy, and performance over time." (Def.'s Reply, Dkt. # 109, at 1.)

"To defend an AEO designation, a party should establish that disclosure of the specific documents at issue, even under non-disclosure and non-use restrictions, presents a risk of disclosure of sensitive competitive information." *K.I.S.S. Pharm LLC v. Becker Prof'l Dev. Corp.*, No. 18-CV-07848, 2020 WL 8093507, at *1 (N.D. Ill. Nov. 30, 2020). The AEO "category [should] only be used on a relatively small and select number of documents where a genuine threat of competitive or other injury dictates such extreme measures." *Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 WL 256476, at *1 (N.D. Ill. Jan. 31, 2005). This is so because "discovery and trial preparation are made significantly more difficult and expensive when an attorney cannot make a complete disclosure of relevant facts to a client and because it leaves the litigant in a difficult position to assess whether the arguments put forward on its behalf are meritorious." *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015).

In support of its motion, Defendant submits two declarations from Lijun Zheng, the manager for Defendant Xianghuo, who has approximately eight years of experience in operating Amazon storefronts. (Zheng Decls., Dkt. ## 95-1, 109-1.) Zheng is familiar with Defendant's internal business operations, including sales data, pricing strategies, product performance metrics, and inventory management practices. According to Zheng,

5. Th[e] information [in the disputed document] is not publicly disclosed and is only accessible internally to a limited number of personnel with a defined business need to know. Xianghuo implements internal controls to restrict access to such data, including limiting access permissions.

6. Xianghuo does not share its product-level sales data with competitors, distributors, or other third parties in the ordinary course of business.

7. Disclosure of this information would reveal highly sensitive commercial insights, including which products perform best, how pricing impacts demand, how promotions are timed, and how sales fluctuate in response to marketplace conditions.

8. Based on my experience in the marketplace, competitors with access to such information could use it to replicate or undercut Xianghuo's pricing strategies, target its most successful products, and adjust their own sales and marketing strategies to compete more effectively.

9. Xianghuo operates in a highly competitive marketplace, including on platforms such as Amazon, where pricing, timing, and product performance data are critical to maintaining a competitive position.

10. Disclosure of Xianghuo's product-level sales data to Plaintiff, Plaintiff's employer, or Plaintiff's licensees would create a substantial risk of competitive harm, including loss of market share, erosion of pricing advantage, and impairment of Xianghuo's business strategy.

11. In my experience, even limited disclosure of such data can materially impact a company's competitive standing, particularly where the information relates directly to the products at issue in litigation.

12. Allowing access to this information by business personnel affiliated with Plaintiff, Plaintiff's employer, or its licensees would significantly increase the risk that the information could be used for competitive purposes.

(Zheng Decl., Dkt. # 95-1, ¶¶ 6-12.)

In the second declaration, Zheng further attests that:

5. While certain individual pieces of information reflected in the Disputed Materials—such as current pricing or product listings—

2

may appear in some form on public platforms, the Disputed Materials aggregate, organize, and correlate this information in a manner that reflects Xianghuo's proprietary operational know-how and internal strategy.

6. Specifically, the Disputed Materials reveal how Xianghuo adjusts pricing over time to influence conversion rates, how conversion rates affect keyword rankings on Amazon, and how those rankings are subsequently leveraged to optimize profitability. This integrated operational strategy is not publicly disclosed and cannot be fully reconstructed from publicly available information alone.

7. The Disputed Materials further reflect detailed relationships between pricing decisions and actual sales performance, including sales volume, sales velocity, and temporal trends. This type of granular, longitudinal data is internal to Xianghuo and is not available through public or third-party sources.

8. In my experience, competitors in the Amazon marketplace may attempt to infer limited information through public-facing data or third-party analytics tools. However, such tools do not provide access to the precise, continuous, and internally validated datasets reflected in Xianghuo's records, nor do they reveal the causal relationships underlying Xianghuo's pricing and operational decisions.

9. The Disputed Materials also contain sensitive operational information, including Amazon Order ID, Seller Order ID, and related transaction-specific data that can reveal non-public details regarding order processing, fulfillment activity, internal tracking practices, and the seller's underlying business operations. This information is strictly confidential and is not disclosed to the public in the ordinary course of business

10. Disclosure of such information would create significant risk of misuse. In my experience, competitors or third parties may use this information to interfere with Xianghuo's operations, including by exploiting Amazon platform mechanisms, initiating complaints, or otherwise disrupting order fulfillment and customer relationships.

11. In the Amazon marketplace, misuse of sensitive seller or order-level information can lead to serious consequences, including customer confusion, negative feedback, account warnings, listing suppression, or even account suspension. Such harm can occur rapidly and may be difficult or impossible to fully remediate after disclosure.

12. Access to the Disputed Materials would also allow a competitor to significantly reduce the trial-and-error normally required to develop a competitive strategy. A competitor may analyze Xianghuo's internal data to replicate successful pricing models, identify optimal promotion timing, avoid unsuccessful strategies, and directly target Xianghuo's market position.

13. In addition, a competitor may use the Disputed Materials to design differentiated competitive strategies, including timing promotions to coincide with or avoid Xianghuo's campaigns, adjusting pricing to undercut Xianghuo's key products, or reallocating resources to exploit perceived weaknesses in Xianghuo's operations.

14. The competitive harm resulting from such use would be substantial. It would erode Xianghuo's competitive advantage, diminish the value of its internally developed strategies, and impair its ability to compete effectively in the marketplace.

15. Importantly, once disclosed, the information contained in the Disputed Materials cannot be "unseen" or effectively clawed back. Any competitive harm resulting from disclosure would therefore be immediate and irreversible in practical terms.

16. For these reasons, although certain isolated elements of the Disputed Materials may resemble information that exists in the public domain, the Disputed Materials as a whole constitute confidential, commercially sensitive information that derives independent value from not being generally known or readily ascertainable.

(Zheng Decl., Dkt. # 109-1, ¶¶ 5-16.)

Amazon is an extremely competitive sales platform with millions of active sellers who compete in several areas, including product, algorithms, price, and marketing, among others.[1] Moreover, the product at issue, described as the "Storage Box" (Compl., Dkt. # 1, ¶ 3, and 1st Am. Compl., Dkt. # 106, ¶ 3), is not particularly complex or seemingly complicated in design or production. Thus, basic business principles suggest that market share and profit are highly influenced by both pricing and marketing strategies.

Given these circumstances, even the most basic knowledge about a competitor's sales results and pricing can provide a significant advantage. Moreover, Defendant has designated only one document as AEO, and, as Defendant notes, Plaintiff's outside counsel and qualified experts can review and use the Disputed Materials in this litigation. Defendant's AEO designation is thus sparingly used, and the Court sees no basis on which to conclude that the designation will significantly impair Plaintiff's ability to prosecute his claims. *See K.I.S.S. Pharm.*, 2020 WL 8093507, at *1. The Court concludes that the document is properly marked attorney's-eyes-only, and Defendant's motion for a protective order is granted. *See Dennis Gromov v. Belkin Int'l, Inc.*, No. 22 C 6918, 2023 WL 12248662, at *5 n.1 (N.D. Ill. Oct. 10, 2023) (ruling that "any sales- or pricing-related documents produced in compliance with this order are hereby directed to be treated

---

[1] Since allowing independent sellers to sell on Amazon in 2000, they have generated more than $2.5 trillion in sales in Amazon's store," and "in the first ten months of 2025, sellers have already generated more sales than in the first ten years of our partnership." https://www.aboutamazon.com/news/small-business/amazon-independent-sellers-growth-sales (last visited Apr. 13. 2026).

as 'attorneys'-eyes-only,' . . . with the Court's intent being to shield the information from the eyes of persons from Defendant's competitors by limiting review only to attorneys and to experts as necessary.").

To the extent Defendant asks the Court to reject Plaintiff's opposition solely on the grounds that Plaintiff's response was filed past the designated deadline, the Court declines to do so. While Plaintiff is again admonished that deadlines are set for a reason and any future failure to abide by court-ordered deadlines may result in sanctions, including striking the late-filed document, the Court's decision here rests only on the merits of Defendant's motion.

Status hearing set for 4/22/26 at 9:15 a.m. and joint status report due by noon on 4/21/26 stand.

**Date**: April 13, 2016

**M. David Weisman**
**United States Magistrate Judge**

5