# EXHIBIT 6

nothing to do with this case.

MR. YANG: Let the record reflect plaintiff's counsel is making speaking objections.

MR. LIU: I'm making a record --

MR. YANG: The speaking objections may coach the witness how to answer and how not to answer.

MR. LIU: You made a record. I'm making my response of a record to you. So I'm not making a speaking objection. Where did I object? I did not object.

BY MR. YANG:

Q. Mr. Tan, any -- I need you to disclose any -- sorry, strike that.

You need to understand, for confidential information, the U.S. court system and the legal system has proper method to protect such confidential information. And you are required to answer any questions, unless your counsel specifically instructs you not to answer.

MR. LIU: Okay. For the record, if Mr. Yang can identify to which defense or counterclaim this question is relevant, then Mr. Tan should answer. But other than that, I will instruct Mr. Tan not to answer because it has nothing to do with any defense or counterclaim in this case.

MR. YANG:  Mr. Liu, I think you are aware the only legal basis you can instruct the witness not to answer under FRCP is about privilege.  So on what grounds you are instructing the witness not to answer now?

MR. LIU:  That's not true.  Attorney/client privilege is nothing in the ground.  There are normal grounds for instructing the witness not to answer.

MR. YANG:  So what ground are you --

MR. LIU:  Those questions is harassing the witness.  It's badgering the witness.  What product the witness is developing has nothing to do with this case.  That's the key here.

Right?  What he was developing in terms of product in this case is relevant.  But what technology --

MR. YANG:  Counsel, your objection is preserved.  Let's move on.

MR. LIU:  Okay.  Thank you.

BY MR. YANG:

Q.  Mr. Tan, I'm now showing you Exhibit 1.

(Exhibit 1 was marked for identification.)

THE INTERPRETER:  Can I also have a screen for the exhibits.

today's deposition?

MR. LIU:  Objection.  Irrelevant.

BY MR. YANG:

Q.   Mr. Tan, you need to answer the question.

A.   Two to three days.

Q.   Did you meet with your counsel to prepare for today's deposition?

A.   No.

Q.   Then how did you prepare for today's deposition?

MR. LIU:  I mean, objection.  Irrelevant.  Attorney/client privilege.

MR. YANG:  Counsel, for the record, this question doesn't concern the substance.  It's only about the factual background, how did the witness prepare for today's deposition.

MR. LIU:  Okay.  My response is the witness has not been shown to be deficient in terms of answering any questions.  So whether he's prepared or not is not an issue right now.  It might become an issue later, I guess.  But it's not an issue right now.  And it does implicate how he communicated with counsel, which is privileged information.

MR. YANG:  For the record, opposing counsel is

instructing the witness not to answer a relevant question without any legal basis.

MR. LIU: Okay. For the record, how is this relevant? To which defense or counterclaim this question is relevant?

MR. YANG: Counsel, you know, this is not for to -- to debate, right?

MR. LIU: Exactly.

MR. YANG: Your responsibility today is to make concise objections.

MR. LIU: Okay.

MR. YANG: This is not a courtroom, all right.

MR. LIU: No. You put your statement on the record. I put my statement on the record.

MR. YANG: Okay. Keep it simple.

BY MR. YANG:

Q. Mr. Tan, were those preparation sessions, were those preparation sessions conducted by telephone or videoconference?

MR. LIU: Objection. Irrelevant. Attorney/client privilege. How he discuss --

MR. YANG: Stop. Please stop. You cannot make speaking objections. You're very clear about that, right?

MR. LIU: Okay. I'm trying to explaining the

basis of my question.

MR. YANG: You are not allowed to make speaking objections.

MR. LIU: Which speaking objection did I make? I'm trying to put on the record the basis --

MR. YANG: You are coaching the witness.

MR. LIU: Not at all.

MR. YANG: You are violating your ethical obligations.

MR. LIU: I don't think so. I respectfully disagree. Go ahead.

MR. YANG: The reason why we ask this question is it's relevant for our preparing -- for the motion for rule 11 section of FRCP.

MR. LIU: Okay. Is there a pending --

MR. YANG: We need to finish --

MR. LIU: Is there a pending --

MR. YANG: Let me finish, Mr. Liu.

We need to discover whether you are coaching your client to perjure himself.

MR. LIU: That's completely baseless, and it's simply attorney/client privilege. You haven't instructed --

MR. YANG: What if -- what if the other person -- the other persons were also present in

the -- in the preparation sessions?  Then you have no --

MR. LIU:  That's not your business.

MR. YANG:  Then you have no privilege.

MR. LIU:  Then as far as you know, is there a third person at all?  Do you know that?

MR. YANG:  Are you the witness, Mr. Liu?

MR. LIU:  Exactly.  You are assuming things. The questions are improper.  I instruct the witness not to answer.

MR. YANG:  Mr. Liu, let me warn you again.

MR. LIU:  You don't need to warn me, okay?

MR. YANG:  You are obstructing this deposition process.

MR. LIU:  Because your question is improper.

MR. YANG:  Why is it improper?

MR. LIU:  Ask a proper question, please.

MR. YANG:  Why is it improper?

MR. LIU:  Because you getting into how counsel communicate with plaintiff, has nothing to do with today's deposition.  The witness has not been shown as deficient in terms of answering any questions. So how did he communicate with me about this case has nothing to do with this case, and it is privileged.  I talk to him in night, I talk to him

in the morning had nothing to do with this case.

That's why.

BY MR. YANG:

Q.   Mr. Tan --

MR. LIU:  Ask relevant question.

BY MR. YANG:

Q.   Mr. Tan, were any other persons other than your U.S. counsel, namely Mr. Liu, present at your deposition preparation sessions?

MR. LIU:  Objection.  Attorney/client privilege.  There could be associate attorney.  So what?  Doesn't destroy the privilege.

MR. YANG:  Mr. Liu, you are violating the most basic and fundamental ethical obligations of a court officer.

MR. LIU:  I respectfully disagree.

MR. YANG:  You are coaching your witness.

MR. LIU:  Not at all.  Your questions are improper, have been improper since the beginning. It's a patent infringement case.  We are 40 minutes into the deposition, you never ask any patent questions.

MR. YANG:  Please stop.

MR. LIU:  No.  I'm making a record.  None of the questions so far is proper.

MR. YANG:  Mr. Liu, are you aware that your obstructive behaviors will expose your witnesses for second deposition?  Are you aware of that?

MR. LIU:  Objection.  That's badgering the witnesses, okay.  Making baseless threats.  Ask a proper question.  It's a patent infringement case. Ask any patent infringement question on the record, please.

MR. YANG:  Are you the witness, Mr. Liu?

MR. LIU:  What's that?

MR. YANG:  Are you the witness today?

MR. LIU:  Not today.

MR. YANG:  Okay.  How many patent cases have you handled before?

MR. LIU:  Objection.  Irrelevant.  Ask the witness a proper question, please.  I am not being deposed today.  How many have you handled?

MR. YANG:  Because you have zero experience.

MR. LIU:  Oh, yeah?  How many do you have, respectfully?  If you want to go that route. Unnecessary.

MR. YANG:  Please behave yourself, Counsel.

MR. LIU:  I don't appreciate your tone.  I've been behaving.  Have you been behaving?  I don't know about that, okay.  Ask a proper questions.

MR. YANG: For the record, Mr. Liu, why do you think my question just now involves attorney/client privilege?

MR. LIU: Because you're asking how the witness communicate with his attorney. Who else was present has nothing to do with this case.

MR. YANG: For the record --

MR. LIU: For the record, my answer is on the record. So what?

MR. YANG: Could you keep your answer simple and brief, concise? All right?

MR. LIU: I'm trying to. But you keep interrupting me.

MR. YANG: My question was not about the substance of the preparation. My question was: Were any other persons present at the preparation?

MR. LIU: Again, same objection. Attorney/client privilege. Whether we use a translator to work with Mr. Tan has nothing to do with anything. So ...

MR. YANG: For the record, defendant reserves our right to motion for compel the witness to answer these questions. Therefore, additional depositions.

BY MR. YANG:

Q. Mr. Tan, did you review any documents to

operations-related work and assisted in product development.

BY MR. YANG:

Q. Thank you, Mr. Tan. So have we now covered all your jobs, including your part-time jobs since your graduation?

A. Yes.

Q. Mr. Tan, in any of your jobs, was creating product designs one of your job responsibilities?

A. Yes.

Q. What's that?

A. Inside Shenzhen Taiweis.

Q. So is that the only job that concerning product designs?

A. Yes.

Q. Before you claim to have created the design involved in this lawsuit, had you ever personally designed any product?

A. No.

Q. Other than what we have discussed just now, do you have any other education, training, or work experience in product design or any design relating to the design patent involved in this lawsuit?

litigation?

MR. LIU: Objection. Calls for a legal conclusion. Irrelevant.

BY MR. YANG:

Q. You still need to answer the question, Mr. Tan.

A. I did not understand.

Q. Mr. Tan, are you the only party who funds this litigation? Namely, bears the litigation cost, including the attorney fees?

MR. LIU: Objection. Irrelevant. Plus attorney/client privilege. How the attorney fee is paid between the client and attorney is attorney/client privilege.

MR. YANG: Mr. Liu -- wait, wait, wait.

Mr. Liu, are you clear about my question?

MR. LIU: Are you? I think I am.

MR. YANG: You're coaching the witness, right?

MR. LIU: No. I'm stating my objection. It's attorney -- how Mr. Tan pays me is attorney/client privilege.

MR. YANG: Have I asked that question?

MR. LIU: You just did.

BY MR. YANG:

Q. The question is: Are you the only party

who funds this litigation?

MR. LIU: Exactly. How Mr. Tan pays for attorney fees is privileged.

MR. YANG: You're not the only attorneys, all right? I'm not -- okay.

BY MR. YANG:

Q. First. Mr. Tan, are you the only person who funds this litigation?

MR. LIU: Objection. Irrelevant. Vague. Attorney/client privilege.

MR. YANG: Mr. Liu, are you instructing the witness not to answer my question based on --

MR. LIU: Yes, I am.

MR. YANG: Based on privilege?

MR. LIU: Yeah. How Mr. Tan pays for attorney fees is privileged. Why that has anything to do with this case?

MR. YANG: Because we have sufficient evidence --

MR. LIU: Okay.

MR. YANG: -- to show your client is a mere holder of the patent.

MR. LIU: Okay. Then talk about that question.

MR. YANG: And the -- so, therefore, we also

believe he is not the real party in interest in this litigation.

MR. LIU: Then --

MR. YANG: There are real parties, or a real party, behind him. That's the reason why we need to do discovery regarding this issue.

MR. LIU: No.

MR. YANG: And you are well aware litigation funding is subject to discovery. For example, you know the very high-profile case recently. The famous writer E. Jean Carroll is now being prosecuted by the DOJ --

MR. LIU: Okay, okay.

MR. YANG: -- for lying about litigation funding.

MR. LIU: Is that a second circuit case or not. It's a second circuit case. It's not even relevant.

MR. YANG: We're talking about the general rule. Litigation funding is subject to --

MR. LIU: Yes, it's circuit specific. Also when you talk about Illinois --

MR. YANG: Let me finish.

MR. LIU: Okay.

MR. YANG: So are you representing litigation

funding is not subject to discovery?

MR. LIU:  No, it's not.  Not at this point, at least.  Because your claim is --

MR. YANG:  What's your legal basis?

MR. LIU:  Your claim is Mr. Tan is somehow a nominal holder of the patent.  So the issue goes to the ownership of the patent.  If you ask a question about that, I think it's fair game.  But you're asking about who is paying for the litigation.  It has nothing to do with anything.

Who's paying for litigation has nothing to do with whether Mr. Tan is a nominal holder of the patent or not.  Those are two separate things. You're talking about ownership versus funding. These are different things.  If you have questions about he's not in ownership, ask a question about that.  It's fair game.  But how do you make the leap from non-ownership to who funds the litigation?

For example, an insurance company could fund litigation too.  There litigation-funding companies.  So what?

BY MR. YANG:

Q.   Mr. Tan, are you aware the real party issue is one of our affirmative defenses or counterclaims?

MR. LIU:  Again --

MR. YANG:  Let me finish.  Are you aware that is our defense?

MR. LIU:  Your affirmative defense is about the patent ownership.  If you ask questions about that, it's fair game.  Which one of your affirmative defenses says the funding is at issue.  Show me that, and then I'll let you ask the question.

MR. YANG:  So are you clear, real party in interest is one of our defenses?

MR. LIU:  No.  Which of your defense is that?

MR. YANG:  Let the record shows -- let the record show -- strike that.

Let the record reflect opposing counsel disputes -- is not aware -- opposing counsel, Mr. Zheng Liu, is not aware real party in interest is an issue of -- is an issue in this case -- disputed in this case.  More specifically, he is not aware that real party in interest is not one of defenses of defendant.  And now, upon his request, deposing counsel is about to show him the real party issue that is -- that is disputed in defendant's answer, affirmative defenses, and counterclaims.

MR. LIU:  You haven't shown me anything.  Let the record reflect that.

think that is translated?  That is system language.

MR. LIU:  Well, are you from Google?  Do you work for Google?  How are you making a foundation, it's system language?  How do you do that?

MR. YANG:  This is -- this is.  Okay, let the record reflect opposing counsel opposes -- objects to this exhibit simply because there are a few Chinese characters generated by the system.

MR. LIU:  First of all, you don't know who generate those.  Why are you claiming it was generated by system?  Also, which system are you talking about?  Are you a Google employee?  Somehow you know it's generated by Google?  How are you -- why are you making the claim?

MR. YANG:  Stop.  Shut up.

MR. LIU:  You need to stop.  You need to shut up.  I don't appreciate your language.  Okay?  You need to be careful.

MR. YANG:  Okay.  Mr. Liu, are you instructing your witness not to read this exhibit simply because there are a few Chinese characters on it?

MR. LIU:  No.  It has a bunch of Chinese characters on it.  On the first page, on the second page.

MR. YANG:  Mr. Liu, please answer my question.

Page 65

Are you instructing your witness not to answer this question?

MR. LIU: Yes. Because your exhibit seems to be invalid. It's supposed to be an email, but where is the email header? It's not even there. It's just some blank page, copy and pasted into some other page. And also the witness itself is not CC'ed on any of these emails, so you're asking about what?

MR. YANG: Because, Mr. Liu, first of all, there is a subject on the email:

"Re: Invalidity of Asserted Patent and Request for Withdrawal ..."

With the case number of this case.

MR. LIU: Okay.

MR. YANG: Do you agree?

MR. LIU: Okay. So what's your proper relevance to any question that can be posed to this witness? You emailed his previous attorney, I get it, potentially. But what's the relevance to him.

MR. YANG: The relevance is we are trying to discover whether Mr. Tan is the real party in interest in this case so that he has the standing to file this litigation.

MR. LIU: Okay. That's what you want to know,

MR. YANG: Mr. Liu, once again, we believe Mr. Tan is even not your client.

MR. LIU: You're entitled to believe a lot of things. I believe your firm is a real party in interest. So tomorrow can I depose your firm?

MR. YANG: Mr. Liu, so that's the reason why we are entitled to depose him with respect to the facts --

MR. LIU: Exactly.

MR. YANG: -- relating to whether he's the real party in interest.

MR. LIU: The allegation you had in your un-authored second amended answer is Mr. Tan is the nominal patent owner. So if you go after ownership, I 100 percent get it. But who pays for his attorney fees today has nothing to do with ownership. Go after him for ownership. Try again. Who pays for the attorney fees today, not a fair game.

MR. YANG: So once again, Mr. Liu, are you instructing your client not to answer my question?

MR. LIU: Yes, I am. Because how much Mr. Tan spends in this case is privileged.

MR. YANG: Mr. Liu --

MR. LIU: How much your client spend on this case?

MR. YANG:  Mr. Liu --

MR. LIU:  How much your firm has advanced attorney fees?  Is your firm a real party in interest or not?

MR. YANG:  As always, we expect professionalism and civility from you.

MR. LIU:  Totally.  The feeling is mutual.

MR. YANG:  Okay.  So I think the record is clear.  Opposing counsel, Mr. Zheng Liu, has instructed his client -- I'm sorry, strike that. The witness not to answer deposing counsel's question --

MR. LIU:  Because the question was --

MR. YANG:  -- relating to --

MR. LIU:  -- about how much Mr. Tan has spent in terms of attorney fees in this case.

MR. YANG:  Could you -- relating to --

MR. LIU:  So attorney's fees has nothing to do so with the case.

MR. YANG:  Relating to one important disputed issue in this case: standing and the real party in interest.

MR. LIU:  Who pays for attorney fees has nothing to do with standing.  Ownership does.  Who pays for attorney fees has nothing to do with

Page 75

anything in this case. So somebody else pays for attorneys, for example, does that invalidate the patent? Answer the question, yes or no? No, it doesn't.

MR. YANG: Mr. Liu, this is not for attorneys debate.

BY MR. YANG:

Q. Okay. Let's move on.

Mr. Tan, have you -- have you paid -- not the amount. I'm simply asking a yes-or-no question.

Have you paid any attorney fees for this case?

MR. LIU: Objection. Irrelevant. Attorney/client privilege. Whether I have a contingency agreement with Mr. Tan or not has nothing to do with this case, period. The fee engagement are between me and Mr. Tan, is not discoverable. That's irrelevant.

MR. YANG: I'm asking the fee payment issue --

MR. LIU: Yeah.

MR. YANG: -- relating to every attorney involved in this case.

MR. LIU: To what?

MR. YANG: So you are not the only attorney being retained by Mr. Tan -- by the real party in

interest.  Right?

MR. LIU:  But your question is asking him to answer you about he -- how much fee he pay me. So ...

MR. YANG:  I'm asking whether -- whether he has paid any attorney fees to the attorneys on the record of this case.

MR. LIU:  Same thing.

MR. YANG:  For the --

MR. LIU:  What fee structure he had with Mr. Robert DeWitty has nothing to do with this case.

MR. YANG:  Okay.

MR. LIU:  Maybe he was --

MR. YANG:  I think the record is clear, Mr. Liu.  Let's move on.

MR. LIU:  Okay.

BY MR. YANG:

Q.  Mr. Tan, you just represent -- you just -- you just answered that you didn't retain Mr. DeWitty.  Instead, you retained Fang Xin and then Fang Xin retained Mr. DeWitty; is that correct?

MR. LIU:  Objection.  Misstatement.

THE WITNESS:  I only know that I have engaged Fang Xin.

Page 77

BY MR. YANG:

Q. Okay. Did you -- did you retain directly any other professional firms, other than Fang Xin?

MR. LIU: Objection. Vague. It's also vague as to what's professional, and also as to the time period.

MR. YANG: Mr. Liu, you are wasting your client's money. Do you know that?

MR. LIU: I think you are.

BY MR. YANG:

Q. Okay. Please answer my question, Mr. Tan.

A. Can I have that one more time.

MR. YANG: The translation?

THE INTERPRETER: (Reinterprets.)

BY MR. YANG:

Q. For this case.

A. Yes, I did.

Q. What are those professional firms?

A. I have engaged lawyer Mr. Liu.

Q. So do you mean you personally directly engage Mr. Liu and Mr. Liu's firm for this case?

MR. LIU: Objection. Irrelevant. Attorney/client privilege.

MR. YANG: Mr. Liu, are you instructing the

witness not to answer the question?

MR. LIU: Yeah. How Mr. Tan came to my firm, how he was introduced --

MR. YANG: Okay. It's preserved there, it's preserved. Okay, don't waste available time.

MR. LIU: No, you asked me a question. I need to answer it.

MR. YANG: For the -- let the record reflect opposing counsel, Mr. Zheng Liu, instructed -- just instructed his client not to answer another question relevant to the standing and the real party in interest issues. And the question is a straightforward question, can be answered "yes" or "no."

MR. LIU: My response is the question is simply irrelevant, and it goes to attorney/client privilege information. How Mr. Tan became -- sorry. How Mr. Tan engaged my firm is attorney/client privilege and has no bearing on any issues in this case. He could have been introduced to me through a friend or --

MR. YANG: Mr. Liu, I think it's more than enough.

MR. LIU: It's has nothing to do with this case.

Page 79

MR. YANG:  Mr. Liu, it's more than enough. You're wasting everybody's time.

MR. LIU:  No.  Because you put it on the record.  I need to put it on the record too.  You can't just cut me off.  I'm entitled to --

BY MR. YANG:

Q.   Okay.  Mr. Tan, other than Mr. Zheng Liu, have you retained any other lawyers, including Chinese lawyers that are not licensed in the U.S., for this case?

MR. LIU:  Objection.  Irrelevant. Attorney/client privilege.

MR. YANG:  Mr. Liu, if Mr. Tan retains a Chinese lawyer who is not licensed to practice law in the U.S., why is that information privileged?

MR. LIU:  Because, for example, Mr. Tan engaged me.  I engaged a Chinese patent expert to analyse your prior art, which is a Chinese patent. So it is attorney/client privilege information. Which expert I engage to analyze your --

MR. YANG:  Okay, keep it short.

MR. LIU:  -- prior art is relevant.

MR. YANG:  Keep it concise, Mr. Liu.  You are professional enough.

MR. LIU:  No, you asked me a question.  I'm

BY MR. YANG:

Q.   Please answer.

A.   Now I do.

MR. LIU:  Move to strike.

BY MR. YANG:

Q.   Were you -- Mr. Tan, were you aware of the contents before today's deposition?

MR. LIU:  Objection.  Attorney/client privilege.

MR. YANG:  For the record, Mr. Liu, you are obstructing this deposition.

MR. LIU:  No.  Because --

MR. YANG:  -- which --

MR. LIU:  -- you keep asking improper questions.

MR. YANG:  Which will warrant us to motion to compel the witness to answer the question, and for another round of deposition of the witness.

MR. LIU:  That's what you want to do, I get it.  But, you know, your questions are improper.

MR. YANG:  Now, let's -- so let me confirm. So you are instructing the witness not to answer the question?

MR. LIU:  Yeah.  Because implicates attorney/client privilege, what I told Mr. Tan --

Page 103

MR. YANG:  You are heard --

MR. LIU:  No.  I need to make the record, okay?

It implicates is attorney/client privilege.

MR. YANG:  Now --

MR. LIU:  He cannot just answer, just say --

MR. YANG:  -- Court Reporter, now, let's go to the next exhibit.

(Exhibit 6 was marked for identification.)

MR. YANG:  The title would be "complaint."

BY MR. YANG:

Q.  Okay.  And this is -- Mr. Tan, is this -- is the exhibit in front of you now?

A.  Yes.

Q.  Do you understand the contents of this complaint?

A.  Concerning this current complaint, I do not understand any of the content.

Q.  So Mr. Tan, you are the plaintiff of this case, and this is the foundation for you, the plaintiff, to bring this lawsuit against defendant.

So are you representing that you do not understand the content of the complaint you filed against the defendant?

Page 134

Q.   And for both paragraphs, you have just answered that there are material mistakes in these two paragraphs; is that correct?

MR. LIU:  Objection.  Misstatement.

THE WITNESS:  It was the lawyer who misunderstood some information I provided.

BY MR. YANG:

Q.   So are you representing that your lawyer didn't verify the relevant allegations in the paragraph with you; is that correct?

MR. LIU:  Objection.  Lack of foundation. There's no verification requirement.  It's not a verified complaint.  Asked and answered.

THE WITNESS:  According to the information I provided or the content I provided, my lawyer put together the pleading materials.  He does not need to seek verification from me.

BY MR. YANG:

Q.   Mr. Tan, that was not my question.  My question is:  After the completion of this complaint, have your lawyers or lawyer -- I think I should say "lawyers" because two lawyers are responsible for this complaint.

After the completion of the original complaint and the first amended complaint, after the

completion, nobody explained the contents to you; is that correct?

MR. LIU: Objection. Attorney/client privilege. Instructing the witness not to answer.

MR. YANG: For the record, deposing counsel's question is a yes-or-no question without -- without asking the substance of the communication.

MR. LIU: My response is the question necessarily implicates what lawyer and client discussed. Therefore, it implicates attorney/client privilege.

MR. YANG: We will seek any appropriate remedy, including motion to compel the witness to answer for the next step.

MR. LIU: Move to strike. The counsel is making another speech, which is improper.

BY MR. YANG:

Q. Mr. Tan, are you aware that we are entitled to file a motion to compel you to answer the questions that should be answered?

MR. LIU: Objection. Irrelevant. Instructing the witness not to answer. You are entitled to do whatever you want to do, but you're asking the witness --

MR. YANG: Let the record reflect opposing

counsel is instructing the witness not to answer the deposing counsel's question based on -- based on what?

MR. LIU: Based on -- it's harassment. You are entitled to move for any relief you are entitled to. And that's fine. But you are trying to intimidate the witness by asking whether the witness knows or not. The witness does not have to know anything about what legal remedies you have.

MR. YANG: For the record, Mr. Liu, we have sufficient reason to believe that this witness is not properly counseled for his right or his obligation, because he is not the real party in interest. So --

MR. LIU: Again, you have no basis about your real party interest argument. You repeat it 2,000 times today, I understand. What's your basis? Who pays for attorney fees? That's the only thing you have mentioned so far.

MR. YANG: For the sake of efficiency, let's move on.

MR. LIU: I thank you.

BY MR. YANG:

Q. Mr. Tan, as the named inventor of the patent, is it fair to say that you are familiar with

Q.   Do you recognize this document?

A.   I do not understand this document.

Q.   Has this document ever been shown to you?

MR. LIU:  Objection.  I mean, attorney/client privilege.

MR. YANG:  Mr. Liu, I'm asking whether the witness has ever seen this document.  So --

MR. LIU:  So?

MR. YANG:  -- you are arguing that that fact is protected by attorney/client privilege?

MR. LIU:  Yeah.  What have I discussed with the witness, yes.

MR. YANG:  I'm not asking about the substance of the discussion.  I'm simply asking whether this document, this document has ever been shown to the plaintiff.

MR. LIU:  Objection.  Attorney/client privilege.  Attorney work product privilege.  How the attorney came up with this work product is privileged.

MR. YANG:  Mr. Liu --

MR. LIU:  If you have a specific factual question, go ahead and ask the witness.  But how an attorney draft a response is privileged.

MR. YANG:  Mr. Liu, I'm not asking about that

question.  I'm asking -- the question is quite simple:  Has the witness seen this document before, before this deposition?

MR. LIU:  Again, attorney/client privilege. How I work with the party is privileged.  If you have a factual question, go ahead and ask.  How I work with my client is privileged.

MR. YANG:  For the record, opposing counsel is asking the witness not to answer this question with respect to simply whether the witness has been shown this document, based on attorney/client privilege.

MR. LIU:  Yeah.  The response is how the attorney works with the client in this case implicates attorney/client privilege.

BY MR. YANG:

Q.  Mr. Tan, when did you first encounter foldable storage box design?

A.  My first encounter?

MR. LIU:  Just to clarify, you asked him to read the letter or ask him the question?

MR. YANG:  I'm asking him the question.

BY MR. YANG:

Q.  Mr. Tan, when did you first -- when did you first learn of the foldable storage box design -- foldable storage box design?

Q.   So Mr. Tan, let me ask you again --

MR. LIU:  Objection.  Asked and answered.

BY MR. YANG:

Q.   What -- what --

MR. LIU:  Objection.  What's the question?
What?

BY MR. YANG:

Q.   What do you mean by existing design
drawings for the product?  What existing drawings
are you referring to?

MR. LIU:  Objection.  It's -- the letter is
written by counsel.  You can ask -- it calls for
speculation.

BY MR. YANG:

Q.   Please answer.

A.   This design drawing is not the same thing
as in my patented design drawing.

Q.   Mr. Tan, did you review the factory's
design?  And did you review -- yes, that's the
question.

Did you review the factory's design?

A.   When you say "factory," are you referring
to Haizhenxin factory?

Q.   Yes.

A.   Yes, I did.

Q.   Do you still have these designs?

A.   Which designs?

Q.   The factory's design you reviewed.

A.   I saw them, but they would not be sent to me.

Q.   And so do you mean you have never possessed or received these designs?

A.   By these designs, do you mean factory's designs --

Q.   Yes, yes.

A.   -- or my own designs?

No.

Q.   So where and on what device did you review the factory's design we are discussing?

A.   On a computer.

Q.   Where and whose computer is that?

A.   It's been too long.  I do not have clear recollection.

Q.   How many times did you review these design?

A.   I do not recall clearly.

Q.   Is it fair to say only once?

MR. LIU:  Objection.  Calls for speculation.

THE WITNESS:  I do not recall clearly how many times I have seen them.

Page 158

question.  My question is:  Other than this change, you cannot recall other changes you made for your asserted design patent?

MR. LIU:  Objection.  That's simply a misstatement.

THE WITNESS:  Can I have the translation one more time?

THE INTERPRETER:  (Reinterprets.)

THE WITNESS:  There were other changes.  But I do not recall exactly what they were.

BY MR. YANG:

Q.  Mr. Tan, let's move on.  Still in this paragraph, it states:

"Mr. Tan then obtained authorization from the manufacturing facility to file for U.S. design patent protection based on the modified design."

My question is:  What kind of authorization did you obtain from the manufacturing facility?

A.  What kind of authorization?

Q.  Yes.  For example, the contents.

A.  I do not recall.

Q.  Who is this manufacturing facility?

A.  In relation to this paragraph, the factory was Shenzhen Haizhenxin.

Q.   Mr. Tan, let's move on to read the following paragraphs.

MR. LIU:  14?

MR. YANG:  From:

"In addition to Mr. Tan, the following individuals had knowledge of or were involved in the design and development process ..."

THE INTERPRETER:  Just this line?

MR. YANG:  Yeah.

BY MR. YANG:

Q.   So Mr. Tan, let's further confirm that the manufacturer, namely Haizhenxin's design was not -- was not your design, and you were not involved in any -- in any work in that factory's design --

MR. LIU:  Objection --

BY MR. YANG:

Q.   -- is that right?

MR. LIU:  Objection.  Move to strike.  That's not a question.  Or, that's argument.

BY MR. YANG:

Q.   Please answer.

A.   (Chinese spoken).

Q.   Okay.  Thank you for your confirmation.

A.   The factory's design originally was not

my design.  My design is my design.  The factory's design is its design.

Q.   In the next paragraph starting with:

"Deng Haichao -- Mr. Deng served as a product selection and development manager and assisted Mr. Tan in identifying and evaluating the product concept."

What product concept it is?

A.   Mr. Deng Haichao provided assistance to me in relation to my patented design.  But his involvement was rather limited.  All design assertions or concepts actually came from me.  So here when it talks about the product, it is referring to my product.

MR. LIU:  The objection -- sorry.  How long are we going to go on?

MR. YANG:  Pardon?

MR. LIU:  How long are we -- how much longer do we need?

MR. YANG:  Do you want a break?

MR. LIU:  Yeah.  I want a break from today. I mean, it's already 4:20.

MR. YANG:  We have seven hours, right?

MR. LIU:  Okay.  So how many minutes to --

MR. YANG:  Seven hours.

A.   I have used one.

(In English) Sorry.

I think I have used one or two, because one of these two I have only used it for a few weeks, so I'm not very certain whether it was one or two.

Q.   Which two companies did these WeCom belong to?

A.   One was Shenzhen Hengchuang.  The other one I only used it for a very short time.  I'm not certain if that was Shenzhen Taiweis or not.

Q.   Mr. Tan, were you instructed to use the WeChat ID of A-Zhen, namely Mr. -- namely, Mr. Weijin Zhen -- Zhen is the family name -- to search your WeChat records?

MR. LIU:  I mean, objection.  Ambiguous.

THE WITNESS:  What?  I did not understand.

BY MR. YANG:

Q.   Were you instructed to search your WeChat records with the WeChat ID number of this A-Zhen, namely Mr. Zhen Weijin, Weijin Zhen.  Zhen is the family name.

A.   I do not know this person.  Why would I do such a search?

Q.   No.  Mr. Tan, that was not my question.

Page 187

ask a question.

BY MR. YANG:

Q.   Please read this message, for the record.

A.   Well, I would like to first state clearly, I can read out the content in this paragraph, but that does not mean I agree to the content.  I actually do not agree with it.

I only say these things in a perfunctory manner to handle strangers or people harassing me. Because when a stranger approaches you out of the blue, you would not tell them the truth right away. And there are too many such people, such harassers. So I was just saying this in a perfunctory way to get them to leave me alone.

So I want to state one more time, I just -- I would say such things to such people to get them off my back.  So I will not be held liable for it, and it would be of no use for you to come after me.

Q.   Mr. Tan, did you state the similar view that you are a mere name holder of the asserted patent to anyone else?

A.   According to my recollection, I have only such -- I have only said such things to people harassing me.  But I do not recall how many such

Page 188

harassers there have been exactly.

Q.  Mr. Tan, is it accurate to say that you -- you once stated the similar view that you are a mere nominal holder of the asserted patent for more than once, in addition to this message?

MR. LIU:  Objection.  The question is ambiguous.

THE WITNESS:  So you mean the content of this sentence?

BY MR. YANG:

Q.  You are a mere nominal holder of the asserted patent.

A.  I do not have clear recollection.

Q.  So Mr. Tan, you -- are you testifying under oath that you are the real owner, the true owner and the only true owner of the asserted patents in this case?

A.  I am the holder of this patent.

Q.  Are you a nominal holder of the patent?

A.  In fact, this is my patent.

Q.  And you are the only owner of this patent; is that correct?

MR. LIU:  Objection.  Asked and answered.

BY MR. YANG:

Q.  Mr. Tan --

A.   I am the only de facto owner.

Q.   Okay.  I'd like to take five minutes' break to make sure that we have covered everything.

MR. LIU:  Okay.  So how much time do we have left?

THE VIDEOGRAPHER:  Let's go off the record first.

And we're going off the record.  This marks the end of the file No. 7.  The time is 5:30 p.m.

(There was a recess in the proceedings.)

THE VIDEOGRAPHER:  And we are back on the record.  This marks the beginning of the file No. 8, and the time is 5:36 p.m.

BY MR. YANG:

Q.   Mr. Tan, now, let's go back to the exhibit about the asserted design patent.  Is that exhibit in front of you?

MR. LIU:  And which number is that, please?

COURT REPORTER:  It's 12, originally marked.

MR. LIU:  Okay.  Thank you.

THE WITNESS:  So it's Exhibit 12, yes?  The one marked 12, yes?

BY MR. YANG:

Q.   Mr. Tan, could you -- could you please