**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**Cong Tan v. Xianghuo, No. 1:25-cv-05003**

# EXHIBIT C

Cong Tan's June 10, 2026 deposition: selected reporter-numbered pages containing the testimony cited in the motion.

Reporter pages reproduced: 41-43, 68-70, 153-154, 157-158, 179-181. All other transcript pages and deposition exhibits are omitted. No change is made to the source-page content.

question.

A. In 2023, it was around 9,000. I don't remember the exact figure. In 2024, it was around 11,000. And then in 2025, around 13,000 to 14,000.

Q. Other than the salary you received from your employment with the company, do you have any other sources of income?

A. No -- yes.

Q. So you have other income other than the salary you received from this company during your employment with the company; is that correct?

A. It is not salary, but it's a kind of personal patent fee.

Q. Do you mean -- strike that.

MR. LIU: Objection. I think it's --

BY MR. YANG:

Q. By "patent fee," do you mean the royalty fees you receive from licensing patents?

A. Yes, licensing fee. Royalty.

Q. Are the fees for the asserted design patent in this lawsuit?

A. Yes.

Q. When did you -- when did you start receiving the patent royalty fees?

A. Concerning the royalty payment, they

started in 2024. But the first batch of money actually got transferred to me in 2025. At the beginning of each year, we would collect the royalty for the previous year.

Q. How much are those fees, Mr. Tan?

A. Each license per year is RMB1 million.

Q. Who are your licensees?

A. Shenzhen Weiteli Technology Co., Ltd., and Ruan Network Technology Co., Ltd.

Q. So which month in 2025 did you start receiving royalty fees from these companies?

A. January.

Q. How do you calculate these royalty fees?

A. It's one-off.

Q. So do you mean you receive one -- 100 -- sorry. 1 million -- RMB1 million per year from two companies respectively since January 2025?

A. Concerning Shenzhen Weiteli Technology Co., Ltd., I received 1 million starting from 2025. But for Wuhan entity, the first batch of royalty came in in 2026. Nothing was collected for the year 2024.

Q. So you have received RMB1 million royalty fee from Shenzhen Weiteli in January 2025, and then you received another RMB1 million in January 2026,

and then you receive another RMB1 million from the Wuhan -- the Wuhan company in January 2026. And in total, you have received RMB3 million from these two companies; is that accurate?

A. Yes.

Q. Do you have any bank record to support your answer just now?

A. Yes.

Q. Could you please produce those bank records to defendant after this deposition?

MR. LIU: Objection. Irrelevant.

BY MR. YANG:

Q. You need to answer this question, Mr. Tan.

A. Yes.

Q. Mr. Tan, could you please produce these bank records within five workdays after this deposition?

MR. LIU: Objection. No. Irrelevant. Counsel is propounding discovery in the middle of a deposition.

MR. YANG: Mr. Liu, you are forbidden to make such objections. Do you understand that?

MR. LIU: No, I don't. You are propounding a discovery document question in a middle of

THE INTERPRETER: Deng is the family name?

MR. YANG: The Chinese name is Qing Denghao. Yeah, very special name.

MR. LIU: Objection. That was added later on. So it's simply incorrect to say that Robert DeWitty filed the complaint, yes, of Mr. Deng.

MR. YANG: Mr. Liu --

BY MR. YANG:

Q. Okay. So do you know -- Mr. Tan, are you aware Mr. Robert DeWitty is your attorney -- is the attorney -- is the counsel for plaintiff, namely you, on the record?

MR. LIU: Objection. He was. Okay. You just stated it yourself.

BY MR. YANG:

Q. Was on the record, okay?

A. I have engaged the law firm. I do not know exactly who this person is.

Q. Mr. Tan, to clarify, did you just say you engaged the law firm of Mr. DeWitty?

Mr. Tan, this is a very straightforward question.

MR. LIU: Objection. Argumentative.

THE WITNESS: Can you repeat the question?

BY MR. YANG:

Q. Mr. Tan, to clarify, did you just say you engaged the law firm of Mr. DeWitty directly?

MR. LIU: Objection. Misstatement.

BY MR. YANG:

Q. You need to answer my question. Yes or no?

A. The one I engaged is in mainland China, Fang Xin.

Q. Is Fang Xin a law firm's name?

A. Fang Xin is a service provider in relation to patents. Who they engaged, I have fully given them the authorization.

Q. So Mr. Tan, what's the full name of this agency called Fang Xin?

A. I have forgotten the full name. I only know it by "Fang Xin." I have added a personnel from Fang Xin who did the interfacing with me on to my WeChat.

Q. Do you know how to -- how to write Fang Xin in Chinese characters?

A. The character Fang is in the word for "square," and the character Xin as the character for "letter."

Q. Did you go to the office of this Fang Xin

firm?

MR. LIU: Objection. Irrelevant.

BY MR. YANG:

Q. You need to answer my question, Mr. Tan.

A. I did not go there.

Q. Whom -- who was your contact for -- from Fang Xin firm?

A. A business personnel.

Q. Could you please tell us the name of this personnel and the sex of this personnel and the age of this personnel?

MR. LIU: Objection. Irrelevant.

BY MR. YANG:

Q. Mr. Tan, you need to answer my question.

A. According to the remarks given, this person bears the name of Li Shuyao. It is a woman. I'm not aware of her age.

Q. Mr. Tan, is this case that you are testifying for an important case for you?

MR. LIU: Objection. Vague. What's "important"?

BY MR. YANG:

Q. You still need to answer the question, Mr. Tan.

A. Can you rephrase your question from

Q. So Mr. Tan, let me ask you again --
MR. LIU: Objection. Asked and answered.
BY MR. YANG:
Q. What -- what --
MR. LIU: Objection. What's the question? What?
BY MR. YANG:
Q. What do you mean by existing design drawings for the product? What existing drawings are you referring to?
MR. LIU: Objection. It's -- the letter is written by counsel. You can ask -- it calls for speculation.
BY MR. YANG:
Q. Please answer.
A. This design drawing is not the same thing as in my patented design drawing.
Q. Mr. Tan, did you review the factory's design? And did you review -- yes, that's the question.
Did you review the factory's design?
A. When you say "factory," are you referring to Haizhenxin factory?
Q. Yes.
A. Yes, I did.

Q. Do you still have these designs?
A. Which designs?
Q. The factory's design you reviewed.
A. I saw them, but they would not be sent to me.
Q. And so do you mean you have never possessed or received these designs?
A. By these designs, do you mean factory's designs --
Q. Yes, yes.
A. -- or my own designs?
No.
Q. So where and on what device did you review the factory's design we are discussing?
A. On a computer.
Q. Where and whose computer is that?
A. It's been too long. I do not have clear recollection.
Q. How many times did you review these design?
A. I do not recall clearly.
Q. Is it fair to say only once?
MR. LIU: Objection. Calls for speculation.
THE WITNESS: I do not recall clearly how many times I have seen them.

this belongs to one part of my design patent.

BY MR. YANG:

Q. What do you mean by "this"?

A. The change in product configuration. This part belongs to part of my design patent.

Q. Other than this change, are there any other changes did you make for the design of your asserted patent?

A. It's been too long. I cannot recall other changes.

Q. Mr. Tan, are you representing the only change you made with respect to the factory design for your design patent, you can recall, is from three units per set to four units per set; is that correct?

MR. LIU: Objection. That's simply a misstatement.

THE WITNESS: Incorrect.

BY MR. YANG:

Q. Then what is --

A. The factory design is not the same as my design. I was talking about the change concerning this part of my design. As for other changes, it's been too long, I can no longer recall.

Q. Mr. Tan, that was actually exactly my

question. My question is: Other than this change, you cannot recall other changes you made for your asserted design patent?

MR. LIU: Objection. That's simply a misstatement.

THE WITNESS: Can I have the translation one more time?

THE INTERPRETER: (Reinterprets.)

THE WITNESS: There were other changes. But I do not recall exactly what they were.

BY MR. YANG:

Q. Mr. Tan, let's move on. Still in this paragraph, it states:

"Mr. Tan then obtained authorization from the manufacturing facility to file for U.S. design patent protection based on the modified design."

My question is: What kind of authorization did you obtain from the manufacturing facility?

A. What kind of authorization?

Q. Yes. For example, the contents.

A. I do not recall.

Q. Who is this manufacturing facility?

A. In relation to this paragraph, the factory was Shenzhen Haizhenxin.

My question is quite straightforward. It's a yes-or-no question. So have you ever searched your WeChat records with this person's WeChat ID number?

MR. LIU: Objection. Ambiguous. Lack of foundation. I mean, which WeChat ID number are we talking about?

BY MR. YANG:

Q. Please answer the question.

A. I do not know how to search for him. I don't know how to do such a search. I did not do it.

Q. Were you instructed to search your WeChat records by any WeChat ID recently?

A. Can I have that one more time?

THE INTERPRETER: (Reinterprets.)

MR. LIU: Objection. Vague.

BY MR. YANG:

Q. Regarding --

A. May I clarify with you. Search what?

Q. Regarding this WeChat message.

A. I did not do such search.

Q. Were you asked to search this message?

MR. LIU: Objection. Vague. Which message? "This message"? Which message?

BY MR. YANG:

Q. Please answer.

A. I -- I did not personally or receive any instructions to do such a search. I have no idea what kind of search for what information you are referring to.

Q. Mr. Tan, have you deleted any WeChat messages relating to the asserted patent since the filing of this case?

A. Information pertaining to my own patent, I have not deleted any.

Q. So Mr. Tan, if this message, the message in front of you as shown in the exhibit, was once indeed sent to you, the WeChat message should be still in your WeChat; is that correct?

A. If we are talking about information or messages in relation to this case, or in relation to the patent in this case, I did not delete any. But if it was someone who I did not know who approached me, then according to my usual practice, I would delete such messages.

Q. In your opinion, Mr. Tan, is this message a relevant message to this case?

MR. LIU: Objection. Calls for a legal conclusion. Calls for expert opinion.

BY MR. YANG:
Q. Please answer.
A. Judging from the time of this chat, this person who was a stranger to me was harassing me. If I did chat with him, I believe I have deleted such exchanges. But I do not have clear recollection.
Q. Mr. Tan, are you representing that you may have deleted this message, the message in front of you, because you didn't know this person; is that correct?
MR. LIU: Objection. Misstatement. The witness said "stranger" and "harasser."
BY MR. YANG:
Q. Please answer.
A. I would only delete the WeChats from people who harass me, and strangers.
Q. Even though that message is about the asserted patent; is that correct?
MR. LIU: Objection. Assumes facts not in evidence. Speculation.
BY MR. YANG:
Q. Please answer.
A. I want to hear the translation one more time.